Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>ALIALIALILL STORE, BABY -SHOPPING STORE, BAZINGA STORE, BBOTTRUOYS TOY STORE, BOBONIU STORE, CHENWANJU STORE, CHILDREN GROWING TREE STORE, CHINESE PLUSH TOY STORE, DONGGUAN SHENGEN HARDWARE PLASTIC CO., LTD., DONGGUAN WOODFIELD BABY PRODUCTS COMPANY LIMITED, DONGGUAN XINGKE GIFT CO., LTD., DROPSHIPPING-TOYS STORE, FAIRYLANDS TOY STORE, FCOT STORE, FOURTRY STORE, FRANCIS 001 STORE, FUN GAME FUN STORE, GUANGDONG SANSAN SUPPLY CHAIN CO., LTD., GUANGZHOU LITTLE TALENT TOYS CO., LTD., GUANGZHOU YIMAI TRADING CO., LTD., HANGZHOU AGREAT IMPORT & EXPORT CO., LTD., HEBEI KUNI ANIMATION INDUSTRY CO., LTD., HENAN YINGHUOZHIGUANG CULTURE MEDIA CO., LTD., MIKECRACK STORE, MONSTER JELLIE CULTURE CO., LTD., MOVING DREAMING STORE, NANJING RUIFUTONG | Civil Action No. 21-cv-8434 (AKH)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DIRECT DEFENDANTS TO COMPLY WITH THE PERMANENT INJUNCTION ORDER, ALIBABA AND ALIEXPRESS TO CEASE AIDING AND ABETTING DEFENDANTS IN VIOLATING THE PERMANENT INJUNCTION ORDER AND HOLD DEFENDANTS, ALIBABA AND ALIEXPRESS IN CONTEMPT FOR THEIR VIOLATIONS OF THE PERMANENT INJUNCTION ORDER** |

ARTS AND TOYS MANUFACTURING CO., LTD., QWJA STORE, SHANGHAI QIANJIU TRADING CO., LTD., SHENZEN TONGFEI INTERNATIONAL TRADE CO., LTD., SHENZHEN HECHUN TECHNOLOGY CO., LTD., SHENZHEN QINGHONG TOYS CO., LTD., SHOP5477120 STORE, SHOP910893006 STORE, SI TING STORE, SZ GTEAK TECHNOLOGY CO., LIMITED, TC XRC STORE STORE, TIKTOK IP STORE, VL STORE, XINXIANG PURUIGE IMPORT AND EXPORT TRADING CO., LTD., YAMONG STORE, YANGZHOU AIXINI INTERNATIONAL TRADE IMPORT AND EXPORT CO., LTD., YANGZHOU AORUNJU GIFTS CO., LTD., YANGZHOU BABYJOY ARTS & CRAFTS CO., LTD., YANGZHOU CUTESHOOT PLUSHIES CO., LTD., YANGZHOU DULALA CRAFTS LTD., YANGZHOU KINGSTONE TOYS CO., LTD., YANGZHOU MARISA TOY GIFTS CO., LTD., YANGZHOU SCS HOMETEXTILE CO., LTD., YANGZHOU WEIHU HANDICRAFT CO., LTD., YANGZHOU WOSEN TOYS CO., LTD., YIWU CHUANYU IMPORT AND EXPORT FIRM, YIWU DUOTONG E-COMMERCE CO., LTD., YIWU FUGUAN HOUSEHOLD SUPPLIES CO., LTD., YIWU HAIPING BAG FACTORY, YIWU QUANFA IMPORT & EXPORT COMPANY LIMITED, YIWU VICTORY IMPORT & EXPORT CO., LTD., YIWU XINTU IMPORT AND EXPORT CO., LTD., YIWU YINWEI HOUSEHOLD PRODUCTS CO., LTD., YIWU ZHENGZHI QIN TRADING FIRM and ZHANJIANG DYNAMIC POINT NETWORK TECHNOLOGY CO., LTD.,

*Defendants*

# I.   TABLE OF CONTENTS

I.    TABLE OF CONTENTS ........................................................................................... i

I.    INTRODUCTION .................................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................................... 2

III.  RELEVANT FACTS ............................................................................................... 3

    A.    DEFENDANTS' VIOLATION OF THE PERMANENT INJUNCTION ORDER AND ALIBABA'S AIDING AND ABETTING OF DEFENDANTS' COUNTERFEITING ACTIVITIES ......... 3

IV.  ARGUMENT ............................................................................................................ 6

    A.    DEFENDANTS AND ALIBABA SHOULD BE DIRECTED TO COMPLY WITH THE PERMANENT INJUNCTION ORDER AND BE HELD IN CONTEMPT FOR THEIR FAILURE TO COMPLY ............. 6

        1.    Alibaba Is Undeniably on Notice of the TRO, PI Order and Permanent Injunction Order ...................................................................... 7

        2.    Alibaba is in Active Concert or Participation with Defendants .................. 8

V.    CONCLUSION ....................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 788 (N.D. Ohio 2005) ......................................... 8

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F. 3d 1345 (Fed. Cir. 1995) ........................................................................................................................................ 8

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) .................................................................. 7

*Arista Records, LLC v. Vita Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015) ................................. 8, 9

*Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237 (S.D.N.Y. 1999) ....................................................... 7

*Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35 (1st Cir. 2000) ................... 8

*NML Cap., Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013) ........................................ 7

*South Cent. Bell Tell. Co. v. Constant, Inc.*, 304 F. Supp. 732 (D. La. 1969) ................................. 9

*The North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd Co.*, No. 10 Civ. 1630 (AKH), 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011) ................................... 9

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) ............................................................... 9

**Statutes**

Fed. R. Civ. P. 65(d)(2) .................................................................................................................. 7

**GLOSSARY**

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC | N/A |
| **Defendants** | alialialiLL Store, baby -shopping Store, Bazinga Store, BBOTTRUOYS Toy Store, boboniu Store, chenwanju Store, Children Growing Tree Store, Chinese Plush Toy Store, Dongguan Shengen Hardware Plastic Co., Ltd., Dongguan Woodfield Baby Products Company Limited, Dongguan Xingke Gift Co., Ltd., Dropshipping-Toys Store, Fairylands Toy Store, FCOT Store, Fourtry Store, Francis 001 Store, Fun Game Fun Store, Guangdong Sansan Supply Chain Co., Ltd., Guangzhou Little Talent Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hangzhou Agreat Import & Export Co., Ltd., Hebei Kuni Animation Industry Co., Ltd., Henan Yinghuozhiguang Culture Media Co., Ltd., Mikecrack Store, Monster Jellie Culture Co., Ltd., Moving Dreaming Store, Nanjing Ruifutong Arts And Toys Manufacturing Co., Ltd., QWJA Store, Shanghai Qianjiu Trading Co., Ltd., Shenzen Tongfei International Trade Co., Ltd., Shenzhen Hechun Technology Co., Ltd., Shenzhen Qinghong Toys Co., Ltd., Shop5477120 Store, Shop910893006 Store, SI TING Store, SZ Gteak Technology Co., Limited, TC XRC Store Store, TIKTOK IP Store, VL Store, Xinxiang Puruige Import And Export Trading Co., Ltd., YaMong Store, Yangzhou Aixini International Trade Import And Export Co., Ltd., Yangzhou Aorunju Gifts Co., Ltd., Yangzhou Babyjoy Arts & Crafts Co., Ltd., Yangzhou Cuteshoot Plushies Co., Ltd., Yangzhou Dulala Crafts Ltd., Yangzhou Kingstone Toys Co., Ltd., Yangzhou Marisa Toy Gifts Co., Ltd., Yangzhou SCS Hometextile Co., Ltd., Yangzhou Weihu Handicraft Co., Ltd., Yangzhou Wosen Toys Co., Ltd., Yiwu Chuanyu Import And Export Firm, Yiwu Duotong E-Commerce Co., Ltd., Yiwu Fuguan Household Supplies Co., Ltd., Yiwu Haiping Bag Factory, Yiwu Quanfa Import & Export Company Limited, Yiwu Victory Import & Export Co., Ltd., Yiwu Xintu Import And Export Co., Ltd., Yiwu Yinwei Household Products Co., Ltd., Yiwu Zhengzhi Qin Trading Firm and Zhanjiang Dynamic Point Network Technology Co., | N/A |

|  |  |  |
|---|---|---|
|  | Ltd. |  |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York | N/A |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York | N/A |
| **Sealing Order** | Order to Seal File entered on October 6, 2021 | 1 |
| **Complaint** | Plaintiff's Complaint filed on October 13, 2021 | 8 |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on October 13, 2021 | 14-16 |
| **Kelly Dec.** | Declaration of Jonathan Kelly in Support of Plaintiff's Application | 15 |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application | 16 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on October 25, 2021 | 17 |
| **PI Show Cause Hearing** | November 12, 2021 hearing to show cause why a preliminary injunction should not issue | N/A |

| **PI Order** | Preliminary Injunction Order entered on November 12, 2021 | 10 |
|---|---|---|
| **User Account(s)** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Squishmallows Applications** | U.S. Trademark Serial Application No.: 88/471,796 for "SQUISHMALLOWS HUGMEES" for goods in Class 28 and 90/676,140 for "ORIGINAL SQUISHMALLOWS," for goods in Class 28 | |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos.: 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; and 2,029,047 for "KELLYTOY" for goods in Class 28 | N/A |
| **Squishmallows Marks** | The Squishmallows Registrations and Squishmallows Applications | N/A |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint | N/A |
| **Squishmallows Products** | A line of collectable plush toys and pillows made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5 inch clip-ons to extra large 24 inch plush toys, and include styles such as Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows | N/A |
| **Counterfeit Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the | N/A |

vi

| | | |
|---|---|---|
| | Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products | |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) | N/A |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | N/A |
| **Permanent Injunction Order** | Order and Opinion adopting Magistrate's Report and Recommendations and granting Plaintiff's Motion for Default Judgment and a Permanent Injunction entered on June 9, 2022 | 40 |

## I. INTRODUCTION

Despite Defendants, Alibaba and AliExpress ("Alibaba" and "AliExpress" are hereinafter collectively referred to as "Alibaba") receiving and acknowledging the TRO, PI Order and Permanent Injunction Order, at least four (4) Defendants are presently offering for sale and selling Counterfeit Products on Alibaba and AliExpress in violation of the Permanent Injunction Order. Alibaba, with knowledge of the Permanent Injunction Order has aided and abetted Defendants' counterfeiting activities by (1) continuing to provide Defendants with the services necessary to operate Defendants' User Accounts and Merchant Storefronts, thereby aiding and abetting Defendants in selling Counterfeit Products in violation of the Permanent Injunction Order; (2) promoting the sale of at least one Defendant's Counterfeit Products on Alibaba and AliExpress via email marketing; (3) providing "Gold Supplier" services to Defendants who are selling Counterfeit Products in exchange for a fee; and (4) bidding and paying for keywords on Google.com to promote the sale of Counterfeit Products on Alibaba and AliExpress.

Alibaba has notoriously aided and abetted Defendants' counterfeiting activities by, *inter alia*, refusing to cease providing services to Defendants, even after Plaintiff has presented it with evidence of Defendants' violations of restraining orders in this action and similarly filed actions, which has made it nearly impossible for Plaintiff and other brand owners to stop repeat offenders from engaging in illegal counterfeiting on Alibaba. Because of Alibaba's refusal to, for example, restrain Defendants' Merchant Storefronts in actions filed subsequently to this one, in March of 2022, Epstein Drangel requested a call with Alibaba's outside counsel to discuss the repercussions of Alibaba's failure to restrain Defendants' Merchant Storefronts and knowingly continue to provide services to Defendants after being put on notice of this Court's injunctions. (Futterman Dec., ¶¶ 17-18). Namely, Epstein Drangel discovered that numerous defendants continued to sell Counterfeit Products despite having injunctions entered against them in previously filed lawsuits.

After bringing this issue to Alibaba's attention and specifically identifying many repeat offenders, Alibaba continued to provide services to the majority of these Defendants, allowing them to sell counterfeit products. In fact, Epstein Drangel discovered that out of the four (4) Defendants in this action who are currently offering for sale and selling Counterfeit Products on Alibaba, Alibaba is providing Gold Supplier services to three (3) of these Defendants in exchange for a fee. *Id.* at ¶¶ 12-13. Providing services to Defendants after being put on notice of the Permanent Injunction Order amounts to Alibaba's aiding and abetting of Defendants' counterfeiting operations.[1]

Accordingly, Plaintiff respectfully requests that this Court enter an Order directing Defendants to comply with the directives of the Permanent Injunction Order, directing Alibaba to cease aiding and abetting Defendants from continuing to engage in their illegal counterfeiting activities in violation of the Permanent Injunction Order and holding Defendants and Alibaba in contempt for their continuing violations of the Permanent Injunction Order.

## II.   PROCEDURAL HISTORY

In light of Defendants' illegal counterfeiting activities on Alibaba and AliExpress, on October 25, 2021, this Court granted Plaintiff's Application and entered the TRO. Thereafter, on November 12, 2021, the Court converted the TRO into a PI Order". Both the TRO and PI Order prohibited, *inter alia*, the Third Party Service Providers and Financial Institutions, including Alibaba and AliExpress, from "providing services to Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts…" PI Order at 1(c)(i). On June 9, 2022, the Court entered the Permanent Injunction Order granting Plaintiff's motion for default judgment and a permanent

---

[1] Notably, Alibaba has repeatedly ignored its own "three-strike policy" which clearly states that where a merchant on Alibaba engages in three "serious infringements", the penalty is account termination. https://rulechannel.alibaba.com/icbu?type=detail&ruleId=2043&cId=763#/rule/detail?cId=763&ruleId=2043.
Epstein Drangel specifically reminded Alibaba of its own policy in an email to Alibaba's outside counsel dated May 19, 2022. Futterman Dec., ¶ 23.

2

injunction, including, making the injunctive relief ordered in the PI Order (except for the asset freeze provisions) permanent. On the same day, June 9, 2022, Plaintiff served a copy of the Permanent Injunction Order on Defendants and on Alibaba.

### III. RELEVANT FACTS

**A. DEFENDANTS' VIOLATION OF THE PERMANENT INJUNCTION ORDER AND ALIBABA'S AIDING AND ABETTING OF DEFENDANTS' COUNTERFEITING ACTIVITIES**

In April of 2023, in the course of conducting an investigation into merchants on Alibaba selling Counterfeit Products, Epstein Drangel discovered that four (4) Defendants, BBOTTRUOYS Toy Store, Shenzhen Tongfei International Trade Co., Ltd., Yangzhou Kingstone Toys Co., Ltd. and Yiwu Xintu Import and Export Co., Ltd., are presently in violation of the Permanent Injunction Order, and Alibaba is presently aiding and abetting Defendants by knowingly providing the services necessary for these Defendants to offer for sale and complete sales of their Counterfeit Products on the Alibaba and AliExpress platforms. Alibaba is further aiding and abetting Defendants' counterfeiting operations by promoting products, including Counterfeit Products, via marketing emails and sponsored Google advertisements. Epstein Drangel served Alibaba with the TRO entered in this Action on October 25, 2021. (Futterman Dec., ¶ 6). Alibaba requires Epstein Drangel to pay a TRO processing fee of $25 per Defendant, accordingly, on October 26, 2021, Epstein Drangel wired the $1,525.00 TRO processing fee to Alibaba. *Id*. at ¶ 7. Thereafter, on November 12, 2021, the Court entered the PI Order, which Epstein Drangel served on Alibaba on November 15, 2021. *Id.* at ¶¶ 8-9. Alibaba partially complied with the TRO and PI Order in (1) providing Epstein Drangel with Defendants' email addresses necessary to serve Defendants; (2) taking down some of Defendants' Infringing Listings; and (3) restraining Defendants' Assets on AliPay. *Id*. at ¶ 10. Alibaba, however, declined to restrain Defendants' Merchant Storefronts, thus, because Defendants rarely if ever comply with

3

this Court's injunctions on their own volition, Defendants were free to sell products, including as detailed further herein, Counterfeit Products, despite the directives of the TRO and PI Order.

In addition to serving the TRO, PI Order and Permanent Injunction Order on Alibaba in this case, Epstein Drangel has had numerous ongoing conversations with Alibaba directly and with Alibaba's outside counsel requesting that Alibaba cease aiding and abetting Defendants by, *inter alia*, providing Defendants with the necessary services to offer for sale and sell Counterfeit Products, including allowing Defendants to operate their Merchant Storefronts. *Id.* at ¶ 29. On April 14, 2022, Epstein Drangel provided Alibaba and Alibaba's outside counsel with a list of over fifty-five (55) defendants named across various lawsuits filed by Epstein Drangel on behalf of Plaintiff as well as other brands who had violated three (3) or more temporary and preliminary injunction orders entered by this Court for the purpose of establishing that if Alibaba merchants' storefronts are not restrained after an injunction order is entered, they will continue to sell counterfeit products with little or no penalty. *Id.* at ¶ 32. Epstein Drangel made it clear to Alibaba and Alibaba's outside counsel that the only way to prevent these sellers from relisting Counterfeit Products for sale would be to comply with this Court's numerous injunctions and restrain Defendants' Merchant Storefronts as Defendants have notoriously failed and refused to comply with this Court's injunctions and instead, Alibaba has knowingly aided and abetted Defendants in violating such injunctions, including the Permanent Injunction Order. Additionally, the following six (6) Defendants named in this lawsuit were named in previous lawsuits brought by Plaintiff against sellers on Alibaba and AliExpress ("Prior Actions"): Chinese Plush Toy Store, Fourtry Store, Francis 001 Store, Guangdong Sansan Supply Chain Co., Ltd., Xinxiang Puruige Import And Export Trading Co., Ltd. and Yangzhou Marisa Toy Gifts Co., Ltd. *Id*. at ¶¶ 25-26. Thus, even after Alibaba was put on notice of these Defendants' counterfeiting activities in the Prior

Actions, Alibaba continued to allow these Defendants to sell Counterfeit Products, and Plaintiff was left with no choice but to name them in this lawsuit.

Despite receiving numerous temporary and preliminary injunction orders and specifically being put on notice by Epstein Drangel of Defendants BBOTTRUOYS Toy Store, Shenzhen Tongfei International Trade Co., Ltd., Yangzhou Kingstone Toys Co., Ltd. and Yiwu Xintu Import and Export Co., Ltd. among hundreds of other repeat counterfeiters, Alibaba is presently allowing these Defendants to sell Counterfeit Products in direct violation of the Permanent Injunction Order and is itself promoting at least one Defendant's Counterfeit Products, causing further damages to Plaintiff. Screenshots of Defendants' current Infringing Listings taken on April 26, 2023 are attached to the Futterman Dec. as Exhibit D. Not only is Alibaba presently allowing these Defendants to sell Counterfeit Products in direct violation of the Permanent Injunction Order, but three (3) of the four (4) aforementioned Defendants are designated as "Gold Suppliers" on Alibaba: Shenzen Tongfei International Trade Co., Ltd., Yangzhou Kingstone Toys Co., Ltd. and Yiwu Xintu Import And Export Co., Ltd. Futterman Dec., ¶ 17. According to Alibaba's website, a "Gold Supplier is a premium membership for suppliers on Alibaba.com. Members are provided with comprehensive ways to promote their products, maximizing product exposure and increasing return-on-investment."[2] As detailed in the Futterman Dec., sellers on Alibaba.com may purchase an annual Gold Supplier membership for a fee in exchange for Alibaba providing the Gold Suppliers with such services. *Id*. at ¶¶ 18-19. Thus, even after receiving the TRO, PI Order and Permanent Injunction Order, Alibaba is providing, at minimum, Defendants Shenzen Tongfei International Trade Co., Ltd., Yangzhou Kingstone Toys Co., Ltd. and Yiwu Xintu Import And Export Co., Ltd. with the Gold Supplier services in exchange for a membership fee.

---

[2] *What is a Gold Supplier?*, ALIBABA.COM (last visited March 1, 2023) https://www.alibaba.com/help/gold_supplier.html.

5

In addition to allowing Defendants to sell Counterfeit Products on the Alibaba and AliExpress platforms and providing certain Defendants with the Gold Supplier services, Alibaba itself is also actively promoting the sale of Counterfeit Products. Alibaba has sent at least two promotional emails promoting Defendant BBOTTRUOYS Toy Store's Counterfeit Products, and has bid on and/or purchased keywords on Google.com to promote the sale of Counterfeit Products on Alibaba and AliExpress, using Plaintiff's Squishmallows Marks, including "Squishmallows" and Kelly Toy". *Id*. at ¶¶ 36, 38-48.

Alibaba is specifically on notice of the Defendants' illicit activities by virtue of (1) the TRO; (2) the PI Order; (3) the Permanent Injunction Order; and (4) the fact that several Defendants in this action have been named in Prior Actions brought by Epstein Drangel. Accordingly, Defendants are in violation of the Permanent Injunction Order and Alibaba's actions in providing services to Defendants amounts to aiding and abetting of Defendants' counterfeiting operations.

## IV.   ARGUMENT

### A. DEFENDANTS AND ALIBABA SHOULD BE DIRECTED TO COMPLY WITH THE PERMANENT INJUNCTION ORDER AND BE HELD IN CONTEMPT FOR THEIR FAILURE TO COMPLY

The aforementioned four (4) Defendants are in violation of the Permanent Injunction Order and should be directed to fully comply with this Order and/or should be held in contempt for their failure and refusal to do so. Likewise, Alibaba should be directed to cease aiding and abetting Defendants' counterfeiting operations and/or be held in contempt for its failure to do so. Defendants and Alibaba are unquestionably on notice of the Permanent Injunction Order and aware of Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works.[3]

---

[3] The instant action is the third of six actions Plaintiff has brought against sellers on the Alibaba and AliExpress platforms for selling Counterfeit Products and infringing Plaintiff's Squishmallows Marks and/or Squishmallows Works. *See*, *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021); *Kelly Toys Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., et al.*, Case No. 21-cv-6029 (LGS) (S.D.N.Y. 2021); *Kelly Toys Holdings, LLC v. Children 777 Store, et al.*, Case No. 22-cv-2032 (ALC) (S.D.N.Y. 2022); *Kelly Toys Holdings, LLC v. 880925 Store, et al.*, Case No. 22-cv-3737 (JPO) (S.D.N.Y. 2022); *Kelly Toys Holdings, LLC v.*

Alibaba is further aware of the specific Defendants named in this action who have been named in several other lawsuits brought by Plaintiff and who have been allowed to continue selling Counterfeit Products in violation of the Permanent Injunction Order entered in this action and in others.

Rule 65(d) forbids nonparties "'in active concert or participation' with an enjoined party…from assisting in a violation of the injunction." *NML Cap., Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013). "To establish a nonparty's contempt, the moving party must show that: (1) the nonparty had 'actual notice' of the injunction, Fed. R. Civ. P. 65(d)(2); and (2) the nonparty…was 'in active concert or participation' with the enjoined party or the party's 'officers, agents, servants, employees, or attorneys,' in violating the injunction". *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 246 (S.D.N.Y. 1999) quoting Fed. R. Civ. P. 65(d)(2). By continuing to provide services to Defendants with clear knowledge of Defendants' counterfeiting activities, Alibaba is aiding and abetting their illegal conduct and should be held in contempt of this Court's orders. *See, Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, *J.*) (to hold a nonparty in contempt of a court order, the nonparty "must either abet the defendant, or must be legally identified with him").

1. **Alibaba Is Undeniably on Notice of the TRO, PI Order and Permanent Injunction Order**

In accordance with the alternative methods of service authorized by both the TRO and PI Order, Plaintiff served the TRO, PI Order and Permanent Injunction Order on Alibaba. (Futterman Dec., ¶¶ 6, 9). Epstein Drangel wired Alibaba its required processing fee of $1,525.00 ($25.00 per Defendant). *Id.* at ¶ 7. Moreover, Epstein Drangel has notified Alibaba on numerous occasions

---

*19885566 Store, et al.*, Case No. 22-cv-9384 (JMF) (S.D.N.Y. 2022). Plaintiff is forced to continuously file these lawsuits against the same sellers on the same platforms because of Alibaba's failure and refusal to fully comply with injunction orders.

that some of the Defendants in this action are repeat counterfeiters and that the only means to cease their counterfeiting operations on Alibaba and AliExpress is to restrain their Merchant Storefronts in their entirety. *Id*. at ¶¶ 28-29. Accordingly, Alibaba indisputably had notice of the TRO, PI Order and Permanent Injunction Order entered in this action and in similar actions naming some of the same Defendants named herein.

### 2. **Alibaba is in Active Concert or Participation with Defendants**

By continuing to allow Defendants to operate their Merchant Storefronts and providing Gold Supplier services to certain Defendants with knowledge that Defendants have the ability and motivation to continue to sell Counterfeit Products in violation of numerous injunctions, Alibaba is now in active concert and participation with Defendants and should immediately be directed to comply with the Permanent Injunction Order. "[A]ctive concert or participation' exists if the third party 'aided and abetted' the party subject to the injunction…[which] requires 'showing that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree." *Arista Records, LLC v. Vita Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) (quoting *Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 788, 794 (N.D. Ohio 2005) (citing *Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F. 3d 1345, 1353 (Fed. Cir. 1995)). "[F]or the purpose of determining whether [a non-party] is in active concert or participation with the Defendants, it is not determinative that [the non-party]…lacks a specific desire or motivation to help the Defendants violate the injunction, or that the [Defendants' websites] would continue to exist even without [the non-party's] assistance." *Arista Records*, 122 F. Supp. 3d at 38.

This Court and others have found that third parties providing comparable technological services fell within an injunction's reach "if those services are knowingly used to facilitate

8

injunction violations." *Id.* at 36 citing *The North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd Co.*, No. 10 Civ. 1630 (AKH), 2011 U.S. Dist. LEXIS 158807, *7 (S.D.N.Y. June 24, 2011) ("Public Interest Registry, for example, cannot continue to make the connections that enable customers attracted to defendants' websites to access those websites."); *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985) ("Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order."); *South Cent. Bell Tell. Co. v. Constant, Inc.*, 304 F. Supp. 732, 736 (D. La. 1969) ("As soon as South Central Bell was apprised of the fact that the subscriber, Constant, was, by use of South Central Bell's equipment, violating the injunction imposed by this Court, it had a duty not to act in any way in concert with Constant to effectuate or perpetuate the violation. South Central Bell had the means to prevent its equipment from being used to violate the injunction, and its failure to do so would, at the very least, have amounted to a passive participation in the violation.").

As held by Your Honor in *The North Face*, while this Court may have "lacked the power, under the [injunction] orders to require [the third party service provider] to take down defendants' websites, [the Court] had the power and authority to enjoin it from aiding and abetting, or participating, in defendants' unlawful activities." *The North Face Apparel Corp.*, No. 10 Civ. 1630 (AKH), 2011 U.S. Dist. LEXIS 158807, *7. Likewise, here, while the Court may have lacked the power to require Alibaba to restrain Defendants' Merchant Storefronts and User Accounts in the Permanent Injunction Order, this Court has the power and authority to enjoin Alibaba from aiding and abetting or participating in Defendants' counterfeiting activities. Here, by (1) providing services to Defendants, namely by allowing Defendants to continue to operate their Merchant Storefronts to sell products, including Counterfeit Products; (2) using email marketing to promote

9

the sale of at least one Defendant's Counterfeit Products on AliExpress; (3) providing Gold Supplier services to at least three (3) Defendants who are presently selling Counterfeit Products for a fee; and (4) bidding and paying for sponsored advertisements on Google to promote the sale of Counterfeit Products on Alibaba and AliExpress, Alibaba is knowingly aiding and abetting or participating Defendants' injunction violations.  Accordingly, Plaintiff respectfully requests that this Court (1) direct Defendants to comply with the Permanent Injunction Order; (2) direct Alibaba to cease aiding and abetting Defendants in continuing to engage in their illegal counterfeiting activities in violation of the Permanent Injunction Order; and (3) hold Defendants, Alibaba and AliExpress in contempt for their continuing violations of the Permanent Injunction Order.

### V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court (1) direct Defendants to comply with the Permanent Injunction Order; (2) direct Alibaba to cease aiding and abetting Defendants from continuing to engage in their illegal counterfeiting activities in violation of the Permanent Injunction Order; and (3) hold Defendants, Alibaba and AliExpress in contempt for their continuing violations of the Permanent Injunction Order.

Dated:  April 28, 2023                                    Respectfully submitted,

                                                          EPSTEIN DRANGEL LLP

                                                    BY:   *Danielle Futterman*
                                                          Danielle S. Futterman (DY 4228)
                                                          dfutterman@ipcounselors.com
                                                          Jason M. Drangel (JD 7204)
                                                          jdrangel@ipcounselors.com
                                                          Ashly E. Sands (AS 7715)
                                                          asands@ipcounselors.com
                                                          Gabriela N. Nastasi
                                                          gnastasi@ipcounselors.com
                                                          EPSTEIN DRANGEL LLP
                                                          60 East 42nd Street, Suite 1250

10

New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*