Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>ALIALIALILL STORE, BABY -SHOPPING STORE, BAZINGA STORE, BBOTTRUOYS TOY STORE, BOBONIU STORE, CHENWANJU STORE, CHILDREN GROWING TREE STORE, CHINESE PLUSH TOY STORE, DONGGUAN WOODFIELD BABY PRODUCTS COMPANY LIMITED, DONGGUAN XINGKE GIFT CO., LTD., DROPSHIPPING-TOYS STORE, FAIRYLANDS TOY STORE, FCOT STORE, FOURTRY STORE, FRANCIS 001 STORE, FUN GAME FUN STORE, GUANGDONG SANSAN SUPPLY CHAIN CO., LTD., GUANGZHOU LITTLE TALENT TOYS CO., LTD., GUANGZHOU YIMAI TRADING CO., LTD., HANGZHOU AGREAT IMPORT & EXPORT CO., LTD., HEBEI KUNI ANIMATION INDUSTRY CO., LTD., HENAN YINGHUOZHIGUANG CULTURE MEDIA CO., LTD., MIKECRACK STORE, NANJING RUIFUTONG ARTS AND TOYS MANUFACTURING CO., LTD., QWJA STORE, SHANGHAI QIANJIU TRADING CO., LTD., SHENZEN TONGFEI INTERNATIONAL TRADE CO., LTD., SHENZHEN HECHUN TECHNOLOGY CO., LTD., SHENZHEN QINGHONG TOYS CO., LTD., SHOP5477120 STORE, SHOP910893006 STORE, SI | **Civil Action No.: 21-cv-8434 (AKH)**<br><br><br><br><br><br>**AMENDED COMPLAINT**<br><br><br>**Jury Trial Requested** |

TING STORE, SZ GTEAK TECHNOLOGY CO.,
LIMITED, TC XRC STORE STORE, TIKTOK IP
STORE, VL STORE, XINXIANG PURUIGE IMPORT
AND EXPORT TRADING CO., LTD., YAMONG
STORE, YANGZHOU AIXINI INTERNATIONAL
TRADE IMPORT AND EXPORT CO., LTD.,
YANGZHOU CUTESHOOT PLUSHIES CO., LTD.,
YANGZHOU MARISA TOY GIFTS CO., LTD.,
YANGZHOU SCS HOMETEXTILE CO., LTD., YIWU
DUOTONG E-COMMERCE CO., LTD., YIWU
FUGUAN HOUSEHOLD SUPPLIES CO., LTD., YIWU
HAIPING BAG FACTORY, YIWU QUANFA IMPORT
& EXPORT COMPANY LIMITED, YIWU XINTU
IMPORT AND EXPORT CO., LTD., ALIBABA.COM
SINGAPORE E-COMMERCE PTE. LTD. and
ALIEXPRESS E-COMMERCE ONE PTE. LTD.,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC |
| **Merchant Defendants** | alialialiLL Store, baby -shopping Store, Bazinga Store, BBOTTRUOYS Toy Store, boboniu Store, chenwanju Store, Children Growing Tree Store, Chinese Plush Toy Store, Dongguan Woodfield Baby Products Company Limited, Dongguan Xingke Gift Co., Ltd., Dropshipping-Toys Store, Fairylands Toy Store, FCOT Store, Fourtry Store, Francis 001 Store, Fun Game Fun Store, Guangdong Sansan Supply Chain Co., Ltd., Guangzhou Little Talent Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hangzhou Agreat Import & Export Co., Ltd., Hebei Kuni Animation Industry Co., Ltd., Henan Yinghuozhiguang Culture Media Co., Ltd., Mikecrack Store, Nanjing Ruifutong Arts And Toys Manufacturing Co., Ltd., QWJA Store, Shanghai Qianjiu Trading Co., Ltd., Shenzen Tongfei International Trade Co., Ltd., Shenzhen Hechun Technology Co., Ltd., Shenzhen Qinghong Toys Co., Ltd., Shop5477120 Store, Shop910893006 Store, SI TING Store, SZ Gteak Technology Co., Limited, TC XRC Store Store, TIKTOK IP Store, VL Store, Xinxiang Puruige Import And Export Trading Co., Ltd., YaMong Store, Yangzhou Aixini International Trade Import And Export Co., Ltd., Yangzhou Cuteshoot Plushies Co., Ltd., Yangzhou Marisa Toy Gifts Co., Ltd., Yangzhou SCS Hometextile Co., Ltd., Yiwu Duotong E-Commerce Co., Ltd., Yiwu Fuguan Household Supplies Co., Ltd., Yiwu Haiping Bag Factory, Yiwu Quanfa Import & Export Company Limited and Yiwu Xintu Import And Export Co., Ltd. |
| **Alibaba Defendants** | Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd. |
| **Defendants** | Merchant Defendants and Alibaba Defendants |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for |

|  | sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
|---|---|
| **Alibaba Platforms** | Alibaba, AliExpress, 1688.com, Taobao.com and Tmall.com |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Kelly Dec.** | Declaration of Jonathan Kelly in Support of Plaintiff's Application |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application |
| **Squishmallows Application** | U.S. Trademark Serial Application No.: 90/676,140 for "ORIGINAL SQUISHMALLOWS" for goods in Class 28 |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos.: 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28 |
| **Squishmallows Marks** | The marks covered by the Squishmallows Registrations and Squishmallows Application |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint |
| **Squishmallows Products** | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys, and have expanded to other styles including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows. |
| **Counterfeit Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks |

| | |
|---|---|
| | and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants |

|  | and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

Plaintiff by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action (the "Action") involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademark in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); contributory trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d) and 1117(b)-(c); direct copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; contributory and vicarious copyright infringement of Plaintiff's federally registered Squishmallows Works in violation of the Copyright Act; and related state and common law claims, arising from Merchant Defendants' direct, and the Alibaba Defendants' contributory and vicarious infringement of the Squishmallows Marks and Squishmallows Works, as further set forth herein.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.     Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.     Upon information and belief, Merchant Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress as well as any and all as yet undiscovered Merchant User Accounts, through which consumers in the U.S., including New York, can view one or more of Merchant Defendants' Merchant Storefronts that each Merchant Defendant operates, uses to communicate with Merchant Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.    Upon information and belief, Merchant Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, the Alibaba Defendants regularly conduct, transact and/or solicit business in the U.S. and New York specifically and derive substantial revenue from goods and/or services used and/or consumed in the U.S. and New York specifically in connection with the unlawful conduct complained of herein, which has caused, and continues to cause, injury to Plaintiff in the U.S. and in New York.

d.    Upon information and belief, the Alibaba Defendants target customers in the United States, including customers located in New York, through online marketing and advertising.

e.    Upon information and belief, all Merchant Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

f.    Upon information and belief, all Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

g.    Upon information and belief, all Defendants are aware of Plaintiff, its Squishmallows Products, Squishmallows Marks and Squishmallows Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury

to Plaintiff in the U.S. and specifically, in New York.

   h. On May 6, 2014, Alibaba Group Holding Limited ("Alibaba Group"), the parent holding company of the Alibaba Defendants, filed its Form F-1 with the U.S. Securities and Exchange Commission for an Initial Public Offering of its shares in the U.S. to be listed on the New York Stock Exchange ("Form F-1").

   i. The Alibaba Defendants operate the Alibaba Platforms, including Alibaba and AliExpress, which facilitate the offering for sale and sale Counterfeit Products, with the knowledge and intent that such Counterfeit Products (i) will ultimately be sold to consumers throughout the U.S., including in New York; (ii) cause substantial consumer confusion among consumers throughout the U.S., including in New York; and (iii) cause harm throughout the U.S., including in New York.

  4. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

  5. Plaintiff is a limited liability company with a principal place of business at 4811 South Alameda Street, Los Angeles, CA 90058.

  6. Upon information and belief, the Merchant Defendants are merchants on the Alibaba and AliExpress (and potentially one or more of the other Alibaba Platforms), through which the Merchant Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of Merchant Defendants' Merchant Storefronts in **Exhibit D**.

  7. Upon information and belief, Alibaba.com Singapore E-Commerce Pte. Ltd. ("Alibaba.com Singapore") is organized and exists under the laws of Singapore, with its principal

address located at 51 Bras Basah Road, #04-08 Lazada One, Singapore, 189554.

8.    Upon information and belief, AliExpress E-Commerce One Pte. Ltd. ("AliExpress E-Commerce") is organized and exists under the laws of Singapore, with its principal address located at 51 Bras Basah Road, #04-08 Lazada One, Singapore, 189554.

9.    Upon information and belief, Alibaba Defendants are related and/or affiliated companies.

10.    Upon information and belief, Alibaba.com Singapore and AliExpress E-Commerce own, control and/or operate Alibaba and AliExpress, respectively.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Squishmallows Products

11.    Plaintiff is one of the world's most influential, leading manufacturers and distributors of high-quality plush toys and gifts, and is known for its best-selling brands, including Pillow Chums, Kellybaby and Kellypet.

12.    Plaintiff sells its Kelly Toys Products in major retailers, department stores and online marketplaces, including, but not limited to: Walmart, Justice, Target and Amazon.

13.    One of the most popular Kelly Toys Brands is Squishmallows, a line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys. The Squishmallows Products have expanded to other styles including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows. Images of the Squishmallows Products are attached hereto as **Exhibit A**.

14.    Since their debut in 2017, over 200 million Squishmallows Products have been sold worldwide.[2]

---

[2]Mark Faithfull, *Squishmallows: Going Viral, Warren Buffet And 2022's Must-Have Christmas Toy*, FORBES (Dec. 13, 2022), https://www.forbes.com/sites/markfaithfull/2022/12/13/squishmallows-going-viral-warren-buffett-and-2022s-must-

15.    In 2020, the Squishmallows Products were awarded "Best Toy of the Year" by Learning Express.[3]

16.    Recently, Squishmallows won the 2022 "Toy of the Year" award as well as the "Plush Toy of the Year" at the Toy of the Year awards ceremony.[4]

17.    The Squishmallows Products are sold by major U.S. retailers and e-commerce sites, such as Amazon, Target and Walmart.

18.    The Squishmallows Products typically retail for between $7.99-44.99.

19.    While Kelly Toys has gained significant common law trademark and other rights in its Squishmallows Products, through its and/or its predecessor's use, advertising and promotion, Kelly Toys has also protected its valuable rights by filing for and/or obtaining federal trademark registrations.

20.    For example, Kelly Toys is the owner of the Squishmallows Registrations (i.e., U.S. Trademark Registration Nos. 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; and 2,029,047 for "KELLYTOY" for goods in Class 28). Kelly Toys also applied for the registration of the Squishmallows Application (i.e. U.S. Trademark Serial Application No. 90/676,140 for "ORIGINAL SQUISHMALLOWS" for goods in Class 28). Copies of the Squishmallows Registrations and Squishmallows Application are attached hereto as **Exhibit B** and incorporated herein by reference.[5]

21.    The Squishmallows Marks are currently in use in commerce in connection with

---

have-christmas-toy/?sh=6330844b22ad.

[3] aNb Media, *Squishmallows Named 2020 Best Toy of the Year by Learning Express*, ANB MEDIA, INC. (Oct. 2020), https://www.anbmedia.com/news/2020/10/squishmallows-named-2020-best-toy-of-the-year-by-learning-express/.

[4] Tessa Clayton, *The Toy Foundation announces 2022 Toy of the Year Award winners*, TOYNEWS (Feb. 21, 2022), https://www.toynews-online.biz/2022/02/21/the-toy-foundation-announces-2022-toy-of-the-year-award-winners/.

[5] Although two of the Squishmallows Registrations list Plaintiff's predecessor, Kellytoy Worldwide, Inc. on the certificates of registration, the assignments on file with the United States Patent and Trademark Office (the "USPTO") unequivocally evidence that Plaintiff is in fact the current true and correct owner of all of the Squishmallows Registrations. True and correct copies of the trademark assignments, as filed with the USPTO, are included as part of **Exhibit B**.

Squishmallows Products.  The Squishmallows Marks were first used in commerce on or before the dates of first use as reflected in the Squishmallows Registrations attached hereto as part of **Exhibit B**.

22.    In addition, Kelly Toys is also the owner of registered copyrights in and related to the Squishmallows Products.

23.    For example, Kelly Toys owns the Squishmallows Works, and the U.S. copyright registrations covering the same, which are listed in **Exhibit C**.[6]

24.    The Squishmallows Products are not sold in China.

25.    The success of the Squishmallows Products is due in part to Plaintiff and its predecessor's marketing and promotional efforts.  These efforts currently include advertising and promotion through social media, the Squishmallows' website (available at https://squishmallows.com/) and other advertising, among other efforts domestically and abroad, including in New York.

26.    Plaintiff's success is also due to its use of the highest quality materials and processes in making the Squishmallows Products, which meet or exceed U.S. standards.

27.    Additionally, Plaintiff owes a substantial amount of the success of the Squishmallows Products to their consumers and word-of-mouth buzz that its consumers have generated.

28.    Plaintiff and its predecessor's efforts, the quality of Squishmallows' products and the word-of-mouth buzz generated by their consumers, the Squishmallows Marks, Squishmallows Works and Squishmallows Products have become prominently placed in the minds of the public.  Members of the public have become familiar with the Squishmallows Marks, Squishmallows Works and Squishmallows Products and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

---

[6] Although the registrations for the Squishmallows Works also list Plaintiff's predecessor Kellytoy Worldwide, Inc. as the copyright claimant, Kellytoy Worldwide, Inc. assigned all rights in and to the Squishmallows Works to Kelly Toys, and Plaintiff is in fact the true and correct owner thereof.

29.     Plaintiff has gone through great lengths to protect its interests in the Squishmallows Marks, Squishmallows Works and Squishmallows Products.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Squishmallows Marks and Squishmallows Works without the express permission of Plaintiff.

### Alibaba Defendants and Merchant Defendants' Merchant User Accounts

30.     Alibaba and AliExpress, which are owned, controlled and operated by Alibaba.com Singapore and AliExpress E-Commerce, respectively, are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

31.     As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[7]  International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress.  For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[8]

32.     In the fiscal year ending on March 31, 2021, Alibaba's revenue was $109.48 billion, an increase of 41% year-over-year.[9]

33.     The press reported that the growth in sales on AliExpress resulted from an increase in

---

[7]See Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.
[8] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.
[9] *Alibaba Group Announces March Quarter and Full Fiscal Year 2021 Results*, SEC.GOV (May 13, 2021) https://www.sec.gov/Archives/edgar/data/1577552/000110465921065916/tm2116252d1_ex99-1.htm

the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[10]

34.    Additionally, according to *Business Insider*, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[11]

35.    In 2021, the Alibaba Defendants, via Alibaba, set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.[12]

36.    The Alibaba Defendants declined to share their total sales for Singles Day 2022; however, it indicated that sales were "in line" with the $84.5 billion reported in 2021.[13]

37.    As recently addressed in the *Wall Street Journal*, *Fortune* and the *New York Times*,[14] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[15] an astronomical number of counterfeit and infringing

---

[10] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[11] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[12] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[13] Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

[14] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[15] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

products are offered for sale and sold on Alibaba and AliExpress, as well as other online marketplace platforms, at a rampant rate.

38.    In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that reportedly facilitate substantial trademark counterfeiting."[16]

39.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market".[17]  The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts.[18]

40.    Merchant Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their Merchant User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

41.    Through their Merchant Storefronts, Merchant Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

42.    Merchant Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

---

[16] *Michelle Toh*, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.
[17] *USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.
[18] *Id*.

43.     The Merchant Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

44.     Merchant Defendants' wrongful and infringing conduct particularly in light of Plaintiff's success with its Squishmallows Products, as well as the reputation they have gained, Plaintiff and its Squishmallows Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Squishmallows Products, Squishmallows Marks and Squishmallows Works and Plaintiff investigates and enforces against such activities.

45.     As part of these efforts, Plaintiff authorized Epstein Drangel to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Alibaba and AliExpress.

46.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of the Merchant Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Merchant Defendants' User Accounts and Merchant Storefronts.  Screenshots of listings for Counterfeit Products from Merchant Defendants' User Accounts and Merchant Storefronts are included in Exhibit D attached hereto and incorporated herein by reference.

47.     Merchant Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Squishmallows Products or to use the Squishmallows Marks and/or Squishmallows Works, or any marks and/or artwork that are confusingly or substantially

similar to the Squishmallows Marks and Squishmallows Works.

48.     Merchant Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Squishmallows Products, only with minor variations that no ordinary consumer would recognize.

49.     During its investigation, Epstein Drangel identified Merchant Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Merchant Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Merchant Defendants' Merchant Storefronts reflecting that the Merchant Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D**.

50.     Epstein Drangel confirmed that each Merchant Defendant is currently offering for sale and/or selling Counterfeit Products through their respective Merchant User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Merchant Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Epstein Drangel's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit D**.

51.     For example, below on the left is an image of one of Plaintiff's Squishmallows Products. Depicted further below is a listing for Merchant Defendant Dropshipping-Toys Store's Counterfeit Product ("Dropshipping-Toy Store Infringing Listing" and "Dropshipping-Toy Store Counterfeit Product," respectively).  The Dropshipping-Toy Store Infringing Listing appears on Defendant Dropshipping-Toy Store's Merchant Storefront, https://www.aliexpress.com/store/912169554, and offers the Dropshipping-Toy Store Counterfeit Product for $8.53 per item, using, featuring and/or incorporating one or more of the Squishmallows Marks and/or Squishmallows Works and/or

confusingly or substantially similar marks or artwork in the listing title "kawaii **Squishmallow**ing stuffed plush toys for children cute mushroom fries plushie doll soft room decor birthday gift for kids" (emphasis added). Further, the Dropshipping-Toy Store Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works. There is no question that the Dropshipping-Toy Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the Dropshipping-Toy Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

<u>**Squishmallows Product**</u>          <u>**Defendant's Counterfeit Product**</u>

          

52.     By way of another example, below on the left is an image of one of Plaintiff's Squishmallows Products. Depicted further below is a listing for Defendant Guangzhou Yimai Trading Co., Ltd.'s Counterfeit Product ("Guangzhou Yimai Trading Co., Ltd. Infringing Listing" and "Guangzhou Yimai Trading Co., Ltd. Counterfeit Product," respectively). The Guangzhou Yimai Trading Co., Ltd. Infringing Listing appears on Defendant Guangzhou Yimai Trading Co., Ltd.'s Merchant Storefront, https://ymai.en.alibaba.com/, and offers the Guangzhou Yimai Trading Co., Ltd. Counterfeit Product for $3.76 - $4.74 per item, using, featuring and/or incorporating one or more of the

Squishmallows Marks and/or Squishmallows Works and/or confusingly or substantially similar marks or artwork in the listing title "20Cm Animal **Squishmallow**ing Plush Toys Custom For Kids" (emphasis added).  Further, the Guangzhou Yimai Trading Co., Ltd. Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works.  There is no question that the Guangzhou Yimai Trading Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the Guangzhou Yimai Trading Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

<table>
<tr><td><strong><u>Squishmallows Product</u></strong></td><td><strong><u>Defendant's Counterfeit Product</u></strong></td></tr>
<tr><td></td><td></td></tr>
</table>

53.    As another example, below on the left is an image of one of Plaintiff's Squishmallows Products.  Depicted further below is a listing for Defendant Guangdong Sansan Supply Chain Co., Ltd.'s Counterfeit Product ("Guangdong Sansan Supply Chain Co., Ltd. Infringing Listing" and "Guangdong Sansan Supply Chain Co., Ltd. Counterfeit Product," respectively).  The Guangdong Sansan Supply Chain Co., Ltd. Infringing Listing appears on Defendant Guangdong Sansan Supply Chain Co., Ltd.'s Merchant Storefront, https://wplayplushtoy.en.alibaba.com/, and offers the Guangdong Sansan Supply Chain Co., Ltd. Counterfeit Product for $2.87 per item, using, featuring

and/or incorporating one or more of the Squishmallows Marks and/or Squishmallows Works and/or confusingly or substantially similar marks or artwork in the listing title "Wholesale customized cute **squishmallow** toys dinosaur plush pillow soft crab devil **squishmallow** plush" (emphasis added). Further, the Guangdong Sansan Supply Chain Co., Ltd. Store Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works. There is no question that the Guangdong Sansan Supply Chain Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the Guangdong Sansan Supply Chain Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

**Squishmallows Product**                    **Defendant's Counterfeit Produc**t

                    

54.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Merchant Defendants violated Plaintiff's exclusive rights in the Squishmallows Marks and/or Squishmallows Works, and have used marks and/or artwork that are confusingly similar to, identical to, substantially similar to and/or constitute

counterfeiting and/or infringement of the Squishmallows Marks and/or Squishmallows Works in order to confuse consumers into believing that such Counterfeit Products are the Squishmallows Products and aid in the promotion and sales of their Counterfeit Products. Merchant Defendants' conduct began long after Plaintiff's adoption and use of the Squishmallows Marks and/or Squishmallows Works, after Plaintiff obtained a federal registration in the Squishmallows Marks and Squishmallows Works, as alleged above, and after Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works became well-known to the purchasing public.

55.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, all Defendants had knowledge of Plaintiff's ownership of the Squishmallows Marks and Squishmallows Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Squishmallows Products, and in bad faith adopted the Squishmallows Marks and/or Squishmallows Works.

56.    Merchant Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Squishmallows Marks, Squishmallows Works and Squishmallows Products.

57.    Merchant Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Merchant Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

58.    By engaging in these actions, Merchant Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to

cause irreparable harm to Plaintiff: infringed and counterfeited the Squishmallows Marks and/or Squishmallows Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

59.     Unless enjoined, Merchant Defendants will continue to cause irreparable harm to Plaintiff.

### The Alibaba Defendants' Wrongful and Infringing Conduct

60.     The Alibaba Defendants were made aware of Plaintiff's Squishmallows Marks and Squishmallows Works at least as early as April of 2021 when Plaintiff brought its first lawsuit against sellers on Alibaba and AliExpress for violating Plaintiff's Squishmallows Marks and Squishmallows Works.[19].

61.     Since April of 2021, Plaintiff has filed six (6) lawsuits against sellers on Alibaba and AliExpress for violating Plaintiff's Squishmallows Marks and Squishmallows Works, with two lawsuits filed prior to the instant matter.[20]

62.     The Alibaba Defendants were made aware of several Merchant Defendants named in this action, and their specific infringing and counterfeiting activities, when they were named in a Previous Action.  Specifically, prior to being named in this lawsuit, Merchant Defendant Dongguan Woodfield Baby Products Company Limited was named in *Squishmallows II*, Shanghai Qianjiu Trading Co., Ltd. was named in *Squishmallows II*, Yangzhou Aixini International Trade Import and Export Co., Ltd. was named in *Squishmallows I*, Yangzhou Dulala Crafts Ltd. was named in *Squishmallows I*, Yangzhou Marisa Toy Gifts Co., Ltd. was named in *Squishmallows II*, Yiwu Quanfa Import & Export Company Limited was named in *Squishmallows II* and Yiwu Zhengzhi Qin Trading Firm was named

---

[19] *See*, *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021).
[20] *See*, *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021) ("*Squishmallows I*"); *Kelly Toys Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., et al.*, Case No. 21-cv-6029 (LGS) (S.D.N.Y. 2021) ("*Squishmallows II*") (hereinafter collectively referred to as "Previous Actions").

in *Squishmallows II*.

63.    In each of the Previous Actions, a Temporary Restraining Order, Preliminary Injunction, and Final Default Judgment and Permanent Injunction Order were entered, which ordered the Alibaba Defendants to *inter alia* cease providing services to Merchant Defendants on Alibaba and AliExpress, including without limitation, services relating to the continued operation of Merchant User Accounts and Merchant Storefronts.  The Alibaba Defendants were served with each and every order entered in the Previous Actions, which identified, with specificity, each and every Merchant Defendant in each case.

64.    The Alibaba Defendants require Plaintiff to pay $25.00 (recently raised to $40.00) per Defendant for processing of any temporary restraining order.

65.    Despite being made specifically aware of many defendants, including the Merchant Defendants identified above and of such defendants' including Merchant Defendants infringing and counterfeiting activities and listings, and being specifically directed by this Court on numerous occasions to restrain all Merchant Defendants' Merchant Storefronts, the Alibaba Defendants not only continued to allow merchants, including the specifically identified Merchant Defendants, to continue to sell Counterfeit Products, but also aided and abetted merchants, including the specifically identified Merchant Defendants in selling Counterfeit Products in various ways, as further alleged herein.

66.    Alibaba.com Singapore has a "three-strike policy" for Alibaba, which states that where a seller engages in three "serious infringements", the penalty is account termination ("Three Strike Policy").[21]    AliExpress E-Commerce has a similar Three Strike Policy for AliExpress.[22]    Upon

---

[21] *Enforcement Actions for Intellectual Property Rights Infringements Claims on Alibaba.com*, ALIBABA.COM, (Nov. 1, 2017), https://rulechannel.alibaba.com/icbu?type=detail&ruleId=2043&cId=763#/rule/detail?cId=763&ruleId=2043.
[22] *Update of Enforcement Actions for Intellectual Property Rights (IPR) Infringement Claims on AliExpress*, ALIEXPRESS.COM,                         (Mar.                         4,                         2021), https://sell.aliexpress.com/zh/__pc/77Y4QdcvjD.htm#:~:text=AliExpress%20has%20the%20right%20to,(iv)%20terminati on%20of%20accounts.

information and belief, the Alibaba Defendants have similar one to three strike policies for Taobao.com, Tmall.com and 1688.com.[23]

67.    On April 14, 2022, Epstein Drangel provided the Alibaba Defendants' outside counsel with a list of the Alibaba Defendants' Three Strike Policy violators, namely, fifty-five (55) merchants that had violated three (3) or more injunction orders entered by this Court in the Previous Actions (among other actions) and requested that their Merchant Storefronts be restrained, as they should have been pursuant to prior court orders in the Previous Actions (among other actions), to prevent these merchants from selling products that infringed Plaintiff's Squishmallows Marks and Squishmallows Works, as well as other brands' intellectual property rights ("April 14, 2022 Communication").

68.    Three of the Merchant Defendants named in this Action, Francis 001 Store, Xinxiang Puruige Import And Export Trading Co., Ltd. and Yangzhou Marisa Toy Gifts Co., Ltd. were named in this action and also specifically included in the April 14, 2022 Communication.

69.    The Alibaba Defendants failed to restrain Defendants Francis 001 Store, Xinxiang Puruige Import And Export Trading Co., Ltd. and Yangzhou Marisa Toy Gifts Co., Ltd.'s Merchant Storefronts and/or prevent them from selling Counterfeit Products despite their specific knowledge of these specific Merchant Defendants' infringing activities on the Alibaba Platforms.

70.    At a bare minimum, the Alibaba Defendants were aware that the following nine (9) Defendants were known counterfeiters prior to Plaintiff filing this action: Dongguan Woodfield Baby Products Company Limited, Francis 001 Store, Shanghai Qianjiu Trading Co., Ltd., Xinxiang Puruige Import And Export Trading Co., Ltd., Yangzhou Aixini International Trade Import and Export Co., Ltd.,  Yangzhou Dulala Crafts Ltd., Yangzhou Marisa Toy Gifts Co., Ltd**.,** Yiwu Quanfa Import &

---

[23]    *Alibaba    Intellectual    Property    Rights    Protection    Handbook*,    available    at http://download.taobaocdn.com/freedom/37886/pdf/Alibaba-Intellectual-Property-Rights-Protection-Handbook-EN.pdf (last accessed Feb. 1, 2023).

Export Company Limited and Yiwu Zhengzhi Qin Trading Firm.

71.    Despite this specific knowledge, the Alibaba Defendants allowed Defendants Dongguan Woodfield Baby Products Company Limited, Francis 001 Store, Shanghai Qianjiu Trading Co., Ltd., Xinxiang Puruige Import And Export Trading Co., Ltd., Yangzhou Aixini International Trade Import and Export Co., Ltd.,  Yangzhou Dulala Crafts Ltd., Yangzhou Marisa Toy Gifts Co., Ltd., Yiwu Quanfa Import & Export Company Limited and Yiwu Zhengzhi Qin Trading Firm to list new Counterfeit Products for sale in direct violation of numerous injunction orders entered by this Court.

72.    Moreover, during the course of communications between Epstein Drangel and counsel for the Alibaba Defendants, Epstein Drangel advised counsel for the Alibaba Defendants that absolutely no authentic Squishmallows Products are sold in China and absolutely no authentic Squishmallows Products are authorized to be sold by anyone on the Alibaba Platforms.

73.    On October 25, 2021, the Court in this Action granted Plaintiff's Application and entered the Temporary Restraining Order ("TRO").

74.    On the same day, October 25, 2021, in accordance with the alternative methods of service authorized by the TRO, Epstein Drangel served the TRO on the Alibaba Defendants.

75.    On October 26, 2021, Epstein Drangel wired $1,525.00 ($25.00 x 61 Merchant Defendants) to the Alibaba Defendants for processing of the TRO in this Action.

76.    On November 12, 2021, the Court entered the Preliminary Injunction Order ("PI Order").

77.    On November 15, 2021, in accordance with the alternative methods of service authorized by the TRO Epstein Drangel served the PI Order on the Alibaba Defendants.

78.    On March 11, 2022, Plaintiff filed its Motion for Default Judgment and a Permanent Injunction Order against the Defaulting Defendants.

79.    On May 19, 2022, Magistrate Judge Robert W. Lehrburger issued a Report and Recommendation recommending relief including, but not limited to, that Plaintiff's request to make the injunctive relief imposed by the PI Order (except for the asset freeze) be made permanent be granted.

80.    On June 9, 2022, the Court entered an Order and Opinion adopting Magistrate Judge Lehrburger's Report and Recommendation, including, making the injunctive relief ordered in the PI Order (except for the asset-freeze provisions) permanent ("Permanent Injunction Order").

81.    On the same day, June 9, 2022, Plaintiff served the Permanent Injunction Order on Defendants and the Alibaba Defendants.

82.    On April 26, 2023, Epstein Drangel began a new investigation of sellers on Alibaba and AliExpress offering for sale and/or selling Counterfeit Products ("2023 Investigation").

83.    In the course of the 2023 Investigation, Epstein Drangel discovered that the following four (4) Defendants named in this action were still selling Counterfeit Products on Alibaba in direct violation of the Permanent Injunction Order: BBOTTRUOYS Toy Store, Shenzen Tongfei International Trade Co., Ltd., Yangzhou Kingstone Toys Co., Ltd. and Yiwu Xintu Import And Export Co., Ltd.

84.    On April 28, 2023, Plaintiff filed a motion to (1) direct Defendants to comply with the directives of the Permanent Injunction Order; (2) direct Alibaba and AliExpress to cease aiding and abetting Defendants in continuing to engage in their illegal counterfeiting activities in violation of the Permanent Injunction Order; and (3) hold Defendants, Alibaba and AliExpress in contempt for their continuing violations of the Permanent Injunction Order and aiding and abetting of the same ("Contempt Motion"). (Dkts. 41-43).

85.    According to counsel for the Alibaba Defendants, the Alibaba Defendants removed Defendants BBOTTRUOYS Toy Store, Shenzen Tongfei International Trade Co., Ltd., Yangzhou nKingstone Toys Co., Ltd. and Yiwu Xintu Import And Export Co., Ltd.'s Infringing Listings after receiving notice of the Contempt Motion.

86.     On May 23, 2023, Epstein Drangel conducted a subsequent search of Defendants'
Merchant Storefronts and discovered that Defendant Yiwu Xintu Import and Export Co., Ltd. relisted
Counterfeit Products for sale after the Alibaba Defendants allegedly removed this Defendants'
Infringing Listing identified in the Contempt Motion ("May 23, 2023 Investigation").

87.     In addition, during the course of the May 23, 2023 Investigation, Epstein Drangel
discovered that another Defendant, Yiwu Fuguan Household Products Co., Ltd.[24] ("Yiwu Fuguan"),
who was not listing Counterfeit Products for sale when Epstein Drangel conducted its 2023
Investigation and thus not identified in the Contempt Motion is presently offering Counterfeit Products
for sale.

88.     On May 25, 2023, Epstein Drangel discovered an additional Defendant, Yangzhou
Dulala Crafts Ltd. ("Yangzhou Dulala"), who was not listing Counterfeit Products for sale when Epstein
Drangel conducted its 2023 Investigation and thus likewise not identified in the Contempt Motion is
presently offering Counterfeit Products for sale.

89.     On July 10, 2023, Epstein Drangel discovered that Yiwu Fuguan is still offering
Counterfeit Products for sale.

90.     Despite the TRO, PI Order and Permanent Injunction Order entered in this Action, the
Alibaba Defendants continue to provide services, including, without limitation marketplace,
advertising, and other essential services necessary for counterfeiters like Merchant Defendants to sell
their Counterfeit Products to customers in the United States to the above-referenced six (6) Merchant
Defendants, among others, thereby allowing them to sell Counterfeit Products.

91.     In its May 6, 2014, Form F-1, Alibaba Group stated that merchants "rely on our platform

---

[24] Defendant Yiwu Fuguan Household Supplies Co., Ltd. changed its seller name to Yiwu Fuguan Household Products Co.,
Ltd. after Plaintiff commenced this action.  Plaintiff is certain that Yiwu Fuguan Household Products Co., Ltd. is the same
entity as the Merchant Storefront link Plaintiff identified in Schedule A for Defendant Yiwu Fuguan Household Supplies
Co., Ltd. now identifies this storefront as Yiwu Fuguan Household Products Co., Ltd.

for a range of essential support services to operate their businesses."[25]  Among other essential services, Alibaba Group provides "[w]eb based and mobile interfaces to manage listings, orders and customer relationship as well as cloud computing services for their enterprise resource planning…and client relationship management…"

92.     The Form F-1 further states that Alibaba Group's "data analytic and data management capabilities allow us to anticipate buyer needs and tailor product offering displays, matching buyers with the most relevant merchants."[26]  Alibaba Group helps its merchants, including Merchant Defendants, attract customers by maintaining databases containing "transactional and user behavior data generated on [the Alibaba Group] marketplaces" that allow Alibaba Group to "construct a powerful search engine that generates personalized results."[27]  Alibaba Group uses this technology to "continuously improve the effectiveness of [their] online marketing services for [the Alibaba Group's] sellers through the use of aggregated behavioral targeting data and analytics."[28]

93.     The Alibaba Group 2022 Annual Report ("AGHAR") states that Alibaba Group "generate[s] revenue from merchants by leveraging our consumer insights and data technologies which enable brands and merchants to attract, engage and retain consumers, complete transactions, improve their branding, enhance operating efficiency, and offer various services."[29]

94.     The AGHAR additionally indicates that it "derive[s] a majority of [its] China commerce retail revenue from customer management, which primarily consists of (a) P4P marketing services, where merchants primarily bid for keywords that match product or service listings appearing in search

---

[25] Alibaba Group Holding Limited Form F-1 Registration Statement, filed with the United States Securities and Exchange Commission on May 6, 2014 ("F-1"), available at https://www.sec.gov/Archives/edgar/data/1577552/000119312514341794/d709111df1a.htm, at p. 138.
[26] F-1 at p. 137.
[27] F-1 at p. 169.
[28] *Id.*
[29] *Alibaba Group Holding Limited Fiscal Year 2022 Annual Report* (last visited March 13, 2023), https://doc.irasia.com/listco/hk/alibabagroup/annual/2022/ar2022.pdf, *see*, p. 117.

results through our online auction system on a cost-per-click (CPC) basis. We provide these services directly on our marketplaces or through collaboration with third-party affiliates." AGHAR, p. 118.

95.     Alibaba Group additionally states that its "revenue from commission is mainly contributed by transactions on AliExpress, where merchants typically pay 5% to 8% of the transaction value…" AGHAR, p. 119.

96.     According to Alibaba's website, a "Gold Supplier is a premium membership for suppliers on Alibaba.com. Members are provided with comprehensive ways to promote their products, maximizing product exposure and increasing return-on-investment."[30]

97.     The AGHAR states that "[s]ellers on Alibaba.com may purchase an annual Gold Supplier membership to reach customers, provide quotations and transact on the marketplace. As of March 31, 2022, Alibaba.com had over 245,000 paying members from China and around the world. Sellers may also purchase additional value-added services to manage product listings and facilitate transaction processes, such as upgraded storefront management tools, CRM SaaS services, P4P marketing services, trade assurance and fulfillment services, mainly including logistics and custom clearing services. In the twelve months ended March 31, 2022, value-added services contributed the majority of Alibaba.com's total revenue." AGHAR, p. 55.

98.     In addition to the services Alibaba continues to provide to its Gold Suppliers, the AGHAR states that Alibaba.com provides merchants with services including "connect[ing] Chinese and overseas suppliers to overseas wholesale buyers, who are typically trade agents, wholesalers, retailers, manufacturers and SMEs engaged in the import and export business, and provides sourcing, online transaction, digital marketing, digital supply chain fulfillment and financial services to them." *Id.*

---

[30] *What is a Gold Supplier?*, ALIBABA.COM (last visited March 1, 2023) https://www.alibaba.com/help/gold_supplier.html.

99.     The following Defendants are "Gold Suppliers": Dongguan Shengen Hardware Plastic Co., Ltd., Dongguan Woodfield Baby Products Company Limited, Dongguan Xingke Gift Co., Ltd., Guangzhou Little Talent Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hangzhou Agreat Import & Export Co., Ktd., Nanjing Ruifutong Arts And Toys Manufacturing Co., Ltd., Shanghai Qianjiu Trading Co., Ltd., Shenzhen Hechun Technology Co., Ltd., Yangzhou Aorunju Gifts Co., Ltd., Yangzhou Babyjoy Arts & Crafts Co., Ltd., Yangzhou Cuteshoot Plushies Co., Ltd., Yangzhou Dulala Crafts Ltd., Yangzhou Kingstone Toys Co., Ltd., Yangzhou SCS Hometextile Co., Ltd., Yangzhou Wosen Toys Co., Ltd., Yiwu Fuguan Household Supplies Co., Ltd., Yiwu Quanfa Import & Export Company Limited and Yiwu Xintu Import And Export Co. Ltd.

100.    The Alibaba Defendants' targeted marketing services include, for example, identifying "Top Ranking" products on the Alibaba homepage.  When visiting the Alibaba homepage, https://www.alibaba.com, there are highlighted sections prominently displayed including, but not limited to, "New arrivals", "Top-ranking" products, "Customizable products" and "Ready-to-ship products".

101.    Counterfeit Products have been included in the Alibaba homepage under the "Top Ranking" products category and have been advertised in banner ads on the Alibaba Platforms.

102.    Certain merchants on Alibaba are listed as "Verified" or "Assessed Suppliers".

103.    The Alibaba Defendants state on Alibaba that "Verified Supplier is the membership tier for high-quality suppliers on Alibaba.com. This exclusive designation is meant to create more trust amongst buyers."  The "Verified Supplier" designation also allows these suppliers to become "4 of 5 star suppliers and receive a traffic boost on featured products for 6 months…They also receive 60 showcase spots to boost product listings in the search results."[31]

---

[31]   *What is a verified Supplier on Alibaba.com?*, ALIBABA.COM (Aug. 29, 2022) https://seller.alibaba.com/businessblogs/px001z0dr-what-is-a-verified-supplier-on-alibabacom.

104.     According to the Alibaba Defendants, "Assessed Suppliers" are suppliers verified by "the world's leading inspection companies" including Bureau Veritas, TuV SuD, SGS and TuV Rheinland.[32]

105.     "Verified" suppliers Merchant Storefronts contain a video and photographs taken at their factories, which note "Verified by Alibaba" at the top left corner.

106.     Several Merchant Defendants named in this action are "Verified" suppliers on Alibaba, including but not limited to, Dongguan Woodfield Baby Products Company Limited, Hangzhou Agreat Import & Export Co., Ltd., Nanjing Ruifutong Arts And Toys Manufacturing Co., Ltd., Shanghai Qianjiu Trading Co., Ltd., Yangzhou Dulala Crafts Ltd., Yangzhou Kingstone Toys Co., Ltd., and Yangzhou SCS Hometextile Co., Ltd.

107.     As of July 2023, a search for "Squishmallows" on Alibaba yields 13 pages of results, with each page containing over forty (40) Infringing Listings for Counterfeit Products.

108.     Upon information and belief, the Alibaba Defendants have sold, and continue to sell, keywords to counterfeiters, including Merchant Defendants, comprised of Plaintiff's Squishmallows Marks.  These keywords have assisted counterfeiters, including Merchant Defendants, in attracting consumers to their Infringing Listings for Counterfeit Products.

109.     When one of the Infringing Listings is clicked, the Alibaba Defendants additionally promote other merchants' Counterfeit Products under a header "You may also like":

---

[32]                                        *Assessed                Suppliers*,                ALIBABA.COM
https://activities.alibaba.com/alibaba/about_assessed_supplier.php?spm=5386.1599790.1998355790.11.nxtJam&tracelog=home_vs_sa (last accessed March 13, 2023).



110.     After the entrance of the TRO and PI Order, the Alibaba Defendants provided services, including, at the very least, the services necessary to re-list Counterfeit Products for sale, keyword and sponsorship services to Merchant Defendants in violation of the TRO and PI Order and after receiving notice of the Contempt Motion.

111.     Epstein Drangel has had ongoing conversations of this nature with Alibaba and Alibaba's outside counsel for over a year to no avail.  Accordingly, in an analogous matter, *Kelly Toys Holdings, LLC v. 19885566 Store, et al.*, Case No. 22-cv-9384 (JMF) (S.D.N.Y. 2022), Plaintiff filed a similar motion contempt motion, which was granted, in part, on June 29, 2023. *See, Kelly Toys Holdings, LLC v. 1988556 Store, et al.*, No. 22-cv-9384 (JMF), 2023 U.S. Dist. LEXIS 113220 (S.D.N.Y. June 29, 2023).

112.     In connection with its investigation in the *Kelly Toys* 22-cv-9384 matter, on March 1,

2023, Epstein Drangel entered the word "Squishmallows" into the Google search engine, and the below sponsored advertisement for Squishmallows on AliExpress appeared:



113.     When clicking the sponsored link, Epstein Drangel was directed to the below page on AliExpress, listing Counterfeit Products for sale:



114.    The same Google search for the word "Squishmallows" also yielded the below sponsored advertisement for "Kelly Toy – Wholesale Suppliers Online" on Alibaba.com:



115.    Generally, the above types of sponsored advertisements only result when third parties, i.e. Alibaba here, bid on and/or purchase keywords, such as "Squishmallows" and "Kelly Toy" here, on Google.

116.    When clicking on the "My Ad Center" option (the three vertical dots next to the sponsored advertisement), Google displays information identifying the advertiser that paid for the keyword.

117.    As depicted below, for the advertisement for "Kelly Toy" on Alibaba.com, the advertiser is identified as Alibaba.com Hong Kong Limited, meaning, Alibaba.com Hong Kong Limited bid and paid for the keyword on Google.



118.    As depicted above, the advertiser, i.e. Alibaba.com Hong Kong Limited, was verified by Google, and for this designation to appear, Google requires the advertiser to provide a "registration document", including, but not limited to, a document issued by the IRS, an SEC filing or a Certificate of Business Incorporation to verify the identity of the company or individual that paid for the advertisement.[33]

119.    When Epstein Drangel clicked on the "My Ad Center" option for the AliExpress.com sponsored advertisement, the advertiser was identified as "Alibaba.com Singapore E-Commerce Private Limited", meaning, Alibaba.com Singapore bid and paid for the keyword on Google.

120.    As of April 26, 2023, a sponsored advertisement for Squishmallows on AliExpress.com was still active, and when Epstein Drangel clicked on the "My Ad Center" option, the advertiser was

---

[33] *Document requirements for advertiser identity verification*, GOOGLE.COM (last visited March 2, 2023), https://support.google.com/adspolicy/answer/9872280#zippy=%2Cacceptable-documents-by-location.

identified as Alibaba.com Singapore E-Commerce Private Limited as depicted below:



121.    On April 26, 2023, when clicking the sponsored link, Epstein Drangel was directed to the below page on AliExpress, listing Counterfeit Products for sale:



122.    In the course of discovery in the *Kelly Toys* 22-cv-9384 matter, Plaintiff received discovery from Google confirming that the Alibaba Defendants purchased keywords using one or more of the Squishmallows Marks.

123.    In addition to providing services to the Merchant Defendants in direct violation of the TRO and PI Order, the Alibaba Defendants are themselves paying for keywords on Google, using the Squishmallows Marks to promote the sale of Counterfeit Products on the Alibaba Platforms.

124.    The Alibaba Defendants also promote Merchant Defendants' Counterfeit Products via daily email advertisements.  Below are screenshots exemplifying such promotional emails, each from April 2023, promoting Merchant Defendant BBOTTRUOYS Toy Store's Counterfeit Products.



125.    Despite Plaintiff's efforts in bringing specific egregious counterfeiters, who are repeat offenders in violation of the Alibaba Defendants' own Three-Strike policies to the Alibaba Defendants' attention along with filing six (6) lawsuits, the Alibaba Defendants have failed, and refused, to restrain Merchant Defendants' Merchant Storefronts and instead, have knowingly continued to provide their services which are essential to Merchant Defendants' continued infringing and counterfeiting activities, to such Merchant Defendants.

126.    The Alibaba Defendants have allowed and encouraged numerous counterfeiters,

including but not limited to the Merchant Defendants herein, to continue to operate on the Alibaba Platforms, even after the Alibaba Defendants were expressly, specifically and repeatedly informed that specific merchants, including several Merchant Defendants, were selling Counterfeit Products.

127.    In addition, the Alibaba Defendants, through AliPay, also process payments for the sale of products, including Counterfeit Products, on the Alibaba Platforms.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting Against Merchant Defendants)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. §**
**1117(b)-(c)/Lanham Act § 35]**

128.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.    Plaintiff is the exclusive owner of all right and title to the Squishmallows Registrations.

130.    Plaintiff and its predecessor have continuously used the Squishmallows Registrations in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

131.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Squishmallows Registrations and with knowledge that Merchant Defendants' Counterfeit Products bear counterfeit marks, Merchant Defendants intentionally reproduced, copied and/or colorably imitated the Squishmallows Registrations and/or used spurious designations that are identical with, or indistinguishable from, the Squishmallows Registrations on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

132.    Merchant Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the

purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Squishmallows Registrations through their participation in such activities.

133.    Merchant Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Squishmallows Registrations to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Merchant Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Merchant Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

134.    Merchant Defendants' unauthorized use of the Squishmallows Registrations on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Squishmallows Registrations.

135.    Merchant Defendants' actions constitute willful counterfeiting of the Squishmallows Registrations in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

136.    As a direct and proximate result of Merchant Defendants' illegal actions alleged herein, Merchant Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Squishmallows Registrations and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for

which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Registrations.

137.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Merchant Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks Against Merchant Defendants)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

138.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

139.    Plaintiff and its predecessor have continuously used the Squishmallows Registrations in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

140.    Plaintiff, as owner of all right, title and interest in and to the Squishmallows Registrations, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

141.    Merchant Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Squishmallows Registrations.

142.    Merchant Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Squishmallows Registrations, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display,

retail, offer for sale and/or sell the Squishmallows Products and/or related products bearing the Squishmallows Registrations into the stream of commerce.

143.    Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Squishmallows Registrations and/or which are identical or confusingly similar to the Squishmallows Registrations.

144.    Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Squishmallows Registrations and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Merchant Defendants' Counterfeit Products.

145.    Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Squishmallows Registrations.

146.    Merchant Defendants' egregious and intentional use of the Squishmallows Registrations in commerce on or in connection with Merchant Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Merchant Defendants' Counterfeit Products are Plaintiff's Squishmallows Products or are otherwise associated with, or authorized by, Plaintiff.

147.    Merchant Defendants' actions have been deliberate and committed with knowledge of

Plaintiff's rights and goodwill in the Squishmallows Registrations, as well as with bad faith and the intent to cause confusion, mistake and deception.

148.    Merchant Defendants' continued, knowing, and intentional use of the Squishmallows Registrations without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Squishmallows Registrations in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

149.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Registrations and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Squishmallows Registrations.

150.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Merchant Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (Infringement of Unregistered Trademarks Against Merchant Defendants)
### [15 U.S.C. § 1125/Lanham Act § 43(a)]

151.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

152.    Plaintiff and its predecessor have continuously used the Squishmallows Applications in

interstate commerce since on or before the dates of first use as reflected in the applications attached hereto as **Exhibit B**.

153.    Plaintiff, as the owner of all right, title and interest in and to the Squishmallows Applications, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

154.    Merchant Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the Squishmallows Applications.

155.    Merchant Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Squishmallows Applications, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Squishmallows Products and/or related products bearing the Squishmallows Applications into the stream of commerce.

156.    Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Squishmallows Applications and/or which are identical or confusingly similar to the Squishmallows Applications.

157.    Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Squishmallows Applications and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Merchant Defendants' Counterfeit Products.

158.    Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the

Squishmallows Applications.

159.    Merchant Defendants' egregious and intentional use of the Squishmallows Applications in commerce on or in connection with Merchant Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Merchant Defendants' Counterfeit Products are Squishmallows Products or are otherwise associated with or authorized by Plaintiff.

160.    Merchant Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Squishmallows Applications, as well as with bad faith and the intent to cause confusion, mistake and deception.

161.    Merchant Defendants' continued, knowing and intentional use of the Squishmallows Applications without Plaintiff's consent or authorization constitutes intentional infringement of the Squishmallows Applications in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

162.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Applications and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Applications.

163.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Merchant Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and

advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition Against Merchant Defendants) [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

164.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

165.    Plaintiff, as the owner of all right, title and interest in and to the Squishmallows Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

166.    The Squishmallows Marks are inherently distinctive and/or have acquired distinctiveness.

167.    Merchant Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Squishmallows Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Merchant Defendants' substandard Counterfeit Products are Squishmallows Products or related products, and/or that Merchant Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Merchant Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Merchant Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Squishmallows Marks,

to Merchant Defendants' substantial profit in blatant disregard of Plaintiff's rights.

168.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Squishmallows Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Squishmallows Marks, Merchant Defendants have traded off the extensive goodwill of Plaintiff and its Squishmallows Products and did in fact induce, and intend to, and will continue to induce customers to purchase Merchant Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Squishmallows Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

169.    Merchant Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Squishmallows Marks would cause confusion, mistake or deception among purchasers, users and the public.

170.    Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Squishmallows Products and Squishmallows Marks.

171.    As a direct and proximate result of Merchant Defendants' aforementioned actions, Merchant Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Squishmallows Products and by depriving Plaintiff of the value of its Squishmallows Marks as

commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Merchant Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Squishmallows Marks.

172.    Based on Merchant Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Merchant Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Direct Federal Copyright Infringement Against Merchant Defendants)
### [17 U.S.C. § 501(a)]

173.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

174.    Plaintiff is the exclusive owner of the Squishmallows Works.

175.    Merchant Defendants had actual notice of Plaintiff's exclusive rights in and to the Squishmallows Works.

176.    Merchant Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Squishmallows Products and/or Squishmallows Works.

177.    Without permission, Merchant Defendants knowingly and intentionally reproduced, copied, and displayed the Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Squishmallows Works, or artwork that is, at a minimum, substantially similar to the

Squishmallows Works.

178.    Merchant Defendants' unlawful and willful actions as alleged herein constitute infringement of the Squishmallows Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Squishmallows Works in violation of 17 U.S.C. § 501(a).

179.    Merchant Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

180.    Based on Merchant Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Merchant Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Unfair Competition Against Merchant Defendants)
### [New York Common Law]

181.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

182.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Merchant Defendants have traded off the extensive goodwill of Plaintiff and its Squishmallows Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

45

183.    Merchant Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Merchant Defendants' Counterfeit Products.

184.    Merchant Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

185.    Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Merchant Defendants.

186.    As a direct and proximate result of Merchant Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Squishmallows Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Squishmallows Marks and Squishmallows Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

187.    As a result of Merchant Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Merchant Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Merchant Defendants'

intentional misconduct.

### SEVENTH CAUSE OF ACTION
**(Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)**
**(Against Alibaba Defendants)**

188.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

189.    Plaintiff is the exclusive owner of all right and title to the Squishmallows Marks.

190.    Plaintiff and its predecessor have continually used the Squishmallows Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

191.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products on the Alibaba Platforms, among other channels of trade, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's Squishmallows Marks and/or which are identical or confusingly similar to Plaintiff's Squishmallows Marks.  As a result, and as detailed above, the Merchant Defendants are liable for direct trademark infringement of the Squishmallows Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful counterfeiting of the Squishmallows Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

192.    Plaintiff and Epstein Drangel specifically put the Alibaba Defendants on repeated notice of Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works in the Prior Actions.

193.    In April and May of 2022, Epstein Drangel specifically identified over fifty-five (55) Defendants (named in this Action and in the Prior Actions) who had violated three (3) or more

temporary restraining orders entered by this Court.

194.    Plaintiff served the TRO and PI Order entered in this Action on the Alibaba Defendants on November 14, 2022 and January 6, 2023, respectively.

195.    With full knowledge (constructive through Plaintiff's federal registrations and actual through Plaintiff and Epstein Drangel's efforts listed above and the Prior Actions) of Plaintiff's rights in the Squishmallows Marks and the goodwill associated therewith, the Alibaba Defendants have encouraged, enabled, facilitated, substantially participated in and/or materially contributed to the Merchant Defendants' illegal, infringing and/or counterfeiting activities by providing their Alibaba Platforms and Alibaba services, which include, without limitation: shipping, marketing, advertising, payment processing, and other essential services, and have generated significant income directly from the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities which include, without limitation, the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

196.    The Alibaba Defendants had and/or have actual knowledge of Merchant Defendants' and other merchants' illegal infringing and counterfeiting activities through, among other notice: the Prior Actions brought by Plaintiff, Plaintiff and Epstein Drangel's communications with the Alibaba Defendants and Alibaba Defendants' outside counsel (including the specific identification of repeat counterfeiters, including certain Merchant Defendants), the TRO and PI Order entered in this Action, the widespread press coverage of the rampant counterfeiting and infringing activities occurring on the Alibaba Platforms and actions taken by multiple brands to curtail the infringement and counterfeiting occurring on the Alibaba Platforms, which collectively put the Alibaba Defendants on notice of specific Counterfeit Products and/or Infringing Listings therefor and of Counterfeit Products and/or Infringing Listings and/or other listings that will infringe in the future, and/or the Alibaba Defendants were, and

are, as a provider of essential services relating to the Alibaba Platforms, in the unique position of having sufficient information to identify Counterfeit Products as well as merchants, including the Merchant Defendants responsible therefor, with specificity, and to control and monitor Merchant Defendants' and other merchants' listings.

197.    Despite overwhelming notice and knowledge of the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities, of particular Counterfeit Products and/or Infringing Listings and of Counterfeit Products and/or listings that will infringe in the future, as well as of its own encouragement, enabling, facilitation, substantial participation in and/or material contribution to the same, the Alibaba Defendants have deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on the Alibaba Platforms and/or declined to exercise their right and ability to stop the same.

198.    By providing essential services relating to the Alibaba Platforms to the Merchant Defendants and other merchants, the Alibaba Defendants supplied and controlled, and continue to supply and control, the instrumentality for the Merchant Defendants' and other merchants' infringing and counterfeiting activities, including the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, and the Alibaba Defendants received a direct financial benefit from providing such services.

199.    The Alibaba Defendants' egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities alleged herein has caused, and is likely to continue to cause, actual confusion, to cause mistake and to deceive the general purchasing public as to the source, origin or sponsorship of the Counterfeit Products, and is

likely to deceive the public into believing that the Counterfeit Products sold by the Merchant Defendants and other merchants on the Alibaba Platforms are Plaintiff's Squishmallows Products or are otherwise associated with, or authorized by, Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

200.    The Alibaba Defendants are therefore contributorily liable for the infringement and counterfeiting of Plaintiff's Squishmallows Marks by the Merchant Defendants and other merchants on the Alibaba Platforms, which have used, and are continuing to use, the Alibaba Defendants' services, such as marketing, shipping and payment processing services, in connection with their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

201.    The Alibaba Defendants' continuing egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities herein constitutes intentional contributory infringement of the federally registered Squishmallows Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful contributory counterfeiting of Plaintiff's Squishmallows Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), 1117(b)-(c), and 1125(a).

202.     As a direct and proximate result of the Alibaba Defendants' egregious, knowing and intentional actions alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and valuable rights in and to Plaintiff's Squishmallows Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, the Alibaba Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Plaintiff's Squishmallows Marks.

203.    Based on the Alibaba Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of the same, and all gains, profits and advantages obtained by the Alibaba Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

### EIGHTH CAUSE OF ACTION
**(Contributory Copyright Infringement Against Alibaba Defendants)**

204.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

205.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally reproduced, copied and displayed Plaintiff's Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products on the Alibaba Platforms, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, or otherwise use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in connection therewith. As a result, such Merchant Defendants and other merchants on the Alibaba Platforms are liable for direct copyright infringement of Plaintiff's Squishmallows Works under 17 U.S.C. § 501(a).

206.    With full knowledge (constructive through Plaintiff's federal registrations and actual through Plaintiff and Epstein Drangel's efforts listed above and the Prior Actions), of Plaintiff's rights in Plaintiff's Squishmallows Works, the Alibaba Defendants have induced, encouraged, enabled, facilitated, substantially participated in and/or materially contributed to Merchant Defendants' and other merchants' unlawful and infringing activities by providing the Alibaba Platforms and the Alibaba Defendants' services relating thereto, such as shipping, marketing, advertising, payment processing,

and other essential services, and has generated significant income directly from Merchant Defendants'
and other merchants' unlawful and infringing activities.

207.    The Alibaba Defendants had, and currently have, actual and constructive knowledge of
the Merchant Defendants' and other merchants' unlawful and infringing activities through, among other
notice: the Prior Actions brought by Plaintiff, Plaintiff and Epstein Drangel's communications with
Alibaba Defendants and Alibaba Defendants' outside counsel (including the specific identification of
repeat counterfeiters), the TRO and PI Order entered in this Action, the widespread press coverage of
the rampant counterfeiting and infringing activities occurring on the Alibaba Platforms and actions
taken by multiple brands to curtail the infringement and counterfeiting occurring on the Alibaba
Platforms, which collectively put the Alibaba Defendants on notice of specific Counterfeit Products
and/or Infringing Listings therefor and of Counterfeit Products and/or Infringing Listings and/or other
listings that will infringe in the future, and/or the Alibaba Defendants was, and are, in the unique
position of having sufficient information to identify Counterfeit Products as well as merchants,
including the Merchant Defendants responsible therefor, with specificity, and to control and monitor
the Merchant Defendants' and other merchants' listings.

208.    Despite overwhelming notice and knowledge of the Merchant Defendants' and other
merchants' illegal, infringing activities, as well as of its own inducement, encouragement, enabling,
facilitation, substantial participation in and/or material contribution to the same, the Alibaba Defendants
have deliberately or recklessly disregarded such notifications and/or such illegal, infringing and
counterfeiting activities, and/or have otherwise been willfully blind to and/or consciously avoided
learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on
the Alibaba Platforms  and/or declined to exercise their right and ability to stop the same.

209.    By providing critical services —services without which Merchant Defendants and other

merchants on the Alibaba Platforms could not advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products on the Alibaba Platforms—to the Merchant Defendants, and encouraging and incentivizing the use of the Alibaba Platforms by Merchant Defendants and other merchants, the Alibaba Defendants induced, encouraged, enabled, facilitated, substantially participated in and/or materially contributed to Merchant Defendants' and other merchants' unlawful and infringing activities, including the reproduction, distribution, display, and/or sale of Counterfeit Products bearing or otherwise utilizing the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and the Alibaba Defendants received a direct financial benefit for providing such services.

210.    As a result of the foregoing, the Alibaba Defendants are contributorily liable for the infringement of Plaintiff's Squishmallows Works by Merchant Defendants and other merchants on the Alibaba Platforms that use the Alibaba Defendants' services in connection with their reproduction, distribution, and/or display of the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and/or sale of Counterfeit Products bearing or otherwise utilizing the Squishmallows Works, or works that are substantially similar thereto.

211.    As a direct and proximate result of the Alibaba Defendants' willful, knowing and intentional contributory copyright infringement alleged herein, Plaintiff has suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, the Alibaba Defendants will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiff.

212.    Based on the Alibaba Defendants' unlawful and infringing actions alleged herein, Plaintiff is entitled to injunctive relief 17 U.S.C. § 502, Plaintiff's actual damages and the Alibaba Defendants' profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or

at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

### NINTH CAUSE OF ACTION
**(Vicarious Copyright Infringement Against Alibaba Defendants)**

213.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

214.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally reproduced, copied and displayed Plaintiff's Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products on the Alibaba Platforms, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, or otherwise use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in connection therewith. As a result, such Merchant Defendants and other merchants on the Alibaba Platforms are liable for direct copyright infringement of Plaintiff's Squishmallows Works under 17 U.S.C. § 501(a).

215.    Through their agreements with Merchant Defendants and otherwise as a result of carrying out their services relating to the Alibaba Platforms—services without which Merchant Defendants and other merchants on the Alibaba Platforms could not advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products on the Alibaba Platforms—the Alibaba Defendants had the legal right and ability to control and supervise the Merchant Defendants' and other merchants' unlawful and infringing activities occurring on the Alibaba Platforms and the Alibaba Defendants were, and are, in the unique position of having sufficient information to identify Counterfeit Products bearing the Squishmallows Works, or designs or artwork that are, at a minimum, substantially

54

similar thereto, and/or Infringing Listings and/or advertisements therefor using the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and the Merchant Defendants, and other merchants responsible therefor, with specificity, and to control and monitor the Merchant Defendants' and other merchants' listings.

216.    The Alibaba Defendants had the right and ability to control Merchant Defendants and other merchants' infringing activities, including their Infringing Listings on the Alibaba Platforms.

217.    Despite having such a right and ability to control and supervise Merchant Defendants' and other merchants' infringing activities occurring on the Alibaba Platforms, and/or committed with the aid of the Alibaba's Defendants' essential services, the Alibaba Defendants either refused and/or failed to exercise their right and ability to stop or limit Merchant Defendants' and other merchants' unlawful infringing activities, and as a direct and proximate result of the Alibaba Defendants' failure to do the same, Merchant Defendants and other merchants are continuing to infringe Plaintiff's Squishmallows Works.

218.    The Alibaba Defendants have derived, and continue to derive, direct and substantial financial benefits directly from Merchant Defendants' and other merchants' unlawful and infringing activities.

219.    As a result of the foregoing, the Alibaba Defendants are vicariously liable for the infringement of Plaintiff's Squishmallows Works by Merchant Defendants and other merchants on the Alibaba Platforms that use Alibaba Defendants' services in connection with their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, and/or use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in

connection therewith.

220.    As a direct and proximate result of the Alibaba Defendants' willful, knowing and intentional vicarious copyright infringement alleged herein, Plaintiff has suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, the Alibaba Defendants will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiff.

221.    Based on the Alibaba Defendants' unlawful and infringing actions alleged herein, Plaintiff is entitled to injunctive relief 17 U.S.C. § 502, Plaintiff's actual damages and the Alibaba Defendants' profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages

pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement and/or contributory trademark infringement of Plaintiff's federally registered Squishmallows Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement, contributory copyright infringement and/or vicarious copyright infringement of the Squishmallows Works under 17 U.S.C. § 501(a);

F.    In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement, contributory copyright infringement and/or vicarious copyright infringement of the Squishmallows Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.    For an award of damages to be proven at trial for common law unfair competition;

H.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives,

directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.   directly or indirectly infringing in any manner any of Plaintiff's Squishmallows Marks and Squishmallows Works;

    iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Squishmallows Marks and Squishmallows Works, to identify any goods or services not authorized by Plaintiff;

    iv.   using any of Plaintiff's Squishmallows Marks or Squishmallows Works, or any other marks or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of

any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued

operation of Defendants' User Accounts and Merchant Storefronts; and

xiii. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works;

J.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works pursuant to 15 U.S.C. § 1118;

K.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully

belong to Plaintiff;

M.      For an award of exemplary or punitive damages in an amount to be determined by the

Court;

N.      For Plaintiff's reasonable attorneys' fees;

O.      For all costs of suit; and

P.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: July 31, 2023                         Respectfully submitted,

                                             EPSTEIN DRANGEL LLP

                                    BY:      _____
                                             Danielle S. Futterman (DY 4228)
                                             dfutterman@ipcounselors.com
                                             Jason M. Drangel (JD 7204)
                                             jdrangel@ipcounselors.com
                                             Ashly E. Sands (AS 7715)
                                             asands@ipcounselors.com
                                             60 East 42nd Street, Suite 1250
                                             New York, NY 10165
                                             Telephone:    (212) 292-5390
                                             Facsimile:    (212) 292-5391
                                             *Attorneys for Plaintiff*
                                             *Kelly Toys Holdings, LLC*