**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KELLY TOYS HOLDINGS, LLC,

Plaintiff,

vs.

ALIALIALILL STORE, et al.,

Defendants.

Civil No. 21-cv-8434 (AKH)

**MEMORANDUM OF LAW IN SUPPORT OF THE ALIBABA DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Jared R. Friedmann
Sarah Ryu
Elizabeth McLean

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
jared.friedmann@weil.com
sarah.ryu@weil.com
elizabeth.mclean@weil.com

*Attorneys for Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND & PROCEDURAL HISTORY ..................................................................... 4

    A.    The Parties ............................................................................................... 4

    B.    The Alibaba Defendants' Intellectual Property Reporting Processes And Anti-Counterfeiting Initiatives ............................................................. 5

    C.    Plaintiff's Use Of TROs To Address Infringement .................................... 6

    D.    This Court Finds Alibaba And AliExpress Did Not Aid And Abet Infringement .............................................................................................. 9

    E.    The Amended Complaint's Repackaging Of Plaintiff's Order To Show Cause Application ........................................................................... 10

    F.    Plaintiff's Withholding Of Information Concerning New Allegedly Infringing Listings .................................................................................... 13

LEGAL STANDARD ........................................................................................................... 14

ARGUMENT ....................................................................................................................... 14

    I.    Plaintiff Fails To Allege That The Alibaba Defendants Had The Requisite Knowledge For Contributory Copyright Or Trademark Infringement ................ 14

    II.    Plaintiff Fails To Allege Other Necessary Elements Of Contributory Infringement ..................................................................................................... 21

        A.    Plaintiff Fails To Allege Substantial Participation In Copyright Infringement ............................................................................................ 21

        B.    Plaintiff Fails To Allege That The Alibaba Defendants Had Sufficient Control Over Or Induced The Alleged Trademark Infringement ............................................................................................ 26

    III.    Plaintiff Fails To Allege Vicarious Copyright Infringement ............................... 27

        A.    Plaintiff Fails To Allege That The Alibaba Defendants Have A Right Or Ability To Control The Allegedly Infringing Conduct ............. 28

        B.    Plaintiff Fails To Sufficiently Allege Any Direct Financial Benefit From The Alleged Infringements To The Alibaba Defendants ............... 31

CONCLUSION .................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
No. 05 CV 7638 (GBD), 2006 WL 2588016 (S.D.N.Y. Sep. 6, 2006) ...................................27

*Arista Records LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011).....................................................................................22

*Arista Recs. LLC v. Usenet.com Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009).....................................................................................28

*Artists Music, Inc. v. Reed Pub.*,
Nos. 93 CIV. 3428 (JFK), 73163, 1994 WL 191643 (S.D.N.Y. May 17, 1994)....................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................14

*Brought to Life Music, Inc. v. MCA Recs., Inc.*,
No. 02 Civ. 1164 (RWS), 2003 WL 296561 (S.D.N.Y. Feb. 11, 2003)............................22, 23

*Business Casual Hldgs., LLC v. YouTube, LLC*,
21-cv-3610 (JGK), 2022 WL 17177970 (S.D.N.Y. Nov. 22, 2022)  .................. 22, 24, 28, 29

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014).........................................................................22, 28, 29

*Capitol Recs. LLC v. ReDigi*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013)................................................................................22, 28

*Erie Grp. LLC v. Guayaba Capital, LLC*,
110 F. Supp. 3d 501 (S.D.N.Y. 2015).....................................................................................14

*Faulkner v. Nat'l Geographic Soc'y*,
211 F. Supp. 2d 450 (S.D.N.Y. 2002).....................................................................................30

*Grossman v. Citrus Assocs. of New York Cotton Exch., Inc.*,
706 F. Supp. 221 (S.D.N.Y. 1989)..........................................................................................14

*Hartmann v. Amazon.com, Inc.*,
No. 20 Civ. 4928 (PAE), 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021).........................15, 28

*Hartmann v. Google LLC*,
No. 20-cv-5778 (JPC), 2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ......................................21

*Kelly Toys Holdings, LLC v. 19885566 Store, et al.*,
Case No. 22-cv-9384-JMF (S.D.N.Y. 2022) ..................................................................24, 25

*Kelly Toys Holdings, LLC v. 27955068 Store, et al.*,
1:21-cv-03081-DLC (S.D.N.Y. 2021) ............................................................................18

*Kelly Toys Holdings, LLC v. Baoding Mi Xiaomai Store, et al.*,
No. 21-cv-6029-LGS (S.D.N.Y. 2021) ...........................................................................18

*Klauber Bros. v. URBN U.S. Retail LLC*,
No. 1:21-cv-4526-GHW 2023 WL 1818472 (S.D.N.Y. Feb. 8, 2023) ..................................31

*Krisko v. Marvel Entertainment, LLC*,
473 F. Supp. 3d 288 (S.D.N.Y. 2020) ...........................................................................32

*Lefkowitz v. John Wiley & Sons, Inc.*,
No. 13 Civ. 6414(KPF), 2014 WL 2619815 (S.D.N.Y. June 2, 2014) ..................................14

*Long v. Dorset*,
854 Fed. App'x. 861 (9th Cir. 2021) ............................................................................32

*Lopez v. Bonzana.com, Inc.*,
No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019).............15, 19, 21, 26

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005).............................................................................................25, 28

*Noland v. Janssen*,
17-CV-5452 (JPO), 2020 WL 2836464 (S.D.N.Y. June 1, 2020).........................................20

*Polymer Tech. Corp. v. Mimran*,
975 F.2d 58 (2d Cir. 1992).......................................................................................20

*Routt v. Amazon.com, Inc.*,
584 Fed. App'x 713 (9th Cir. 2014) .............................................................................30

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
316 F.2d 304 (2d Cir. 1963)................................................................................27, 29

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)................................................................................................24

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 463 (S.D.N.Y. 2008)...........................................................................15

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)..................................................................................2, 14, 15, 20

*Twitter, Inc. v. Taamneh*,
    143 S. Ct. 1206 (2023) ...................................................................................25

*Viacom Int'l, v. YouTube*,
    676 F.3d 19 (2d Cir. 2012)...............................................................................20

*Waiting Room Sols. v. Excelsior Ins. Co.*,
    No. 19-CV-7978 (CS), 2020 WL 5505386 (S.D.N.Y. Sept. 9, 2020) .....................................4

*Warren v. John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013)...................................................................32

*Wolf v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012)..................................................................14

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6)....................................................................................14

17 U.S.C. § 512(c) .........................................................................................25

**Other Authorities**

*Alibaba Group Holding Limited Fiscal Year 2022 Annual Report*,
    https://static.alibabagroup.com/reports/fy2022/ar/ebook/en/index.html ..................................5

*Alibaba Intellectual Property Rights Handbook*,
    download.taobaocdn.com/freedom/37886/pdf/Alibaba-Intellectual-Property-
    Rights-Protection-Handbook-EN.pdf ...................................................................5

Mark Faithfull, *Squishmallows: Going Viral, Warren Buffet And 2022's Must-
    Have Christmas Toy*, FORBES (Dec. 13, 2022),
    https://www.forbes.com/sites/markfaithfull/2022/12/13/squishmallows-going-
    viral-warren-buffett-and-2022s-must- have-christmas-toy/?sh=4be9459c22ad.......................4

Terms of Use, Sec. 7.1, https://terms.alicdn.com/legal-
    agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress202204182115_660
    77.html ....................................................................................................28

Defendants Alibaba.com Singapore E-Commerce Pte. Ltd. ("Alibaba Singapore") and AliExpress E-Commerce One Pte. Ltd. ("AliExpress E-Commerce One," and together, the "Alibaba Defendants") respectfully submit this Motion to Dismiss claims VII (contributory trademark infringement and counterfeiting), VIII (contributory copyright infringement), and IX (vicarious copyright infringement) of Kelly Toys Holdings LLC's ("Plaintiff") Amended Complaint (the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiff alleges that back in 2021, the 61 named Merchant Defendants posted listings on the Alibaba Defendants' e-commerce platforms that allegedly offered counterfeit Squishmallows products. Plaintiff's initial complaint, filed nearly two years ago, sought to hold the Merchant Defendants directly liable for the allegedly infringing listings. This Court ultimately granted Plaintiff a permanent injunction against the Merchant Defendants prohibiting them from further listing infringing Squishmallows products (but not from continuing to otherwise operate their storefronts). More than 18 months later, Plaintiff's counsel discovered that six of the 61 Merchant Defendants had listed new infringing listings in violation of the permanent injunction.

After failing in its attempt to hold the Alibaba Defendants liable as non-parties for purportedly aiding and abetting the Merchant Defendants' violations of the permanent injunction, Plaintiff now seeks a second bite at the apple. Based upon nearly identical factual allegations, the Amended Complaint seeks to hold the Alibaba Defendants liable under theories of secondary infringement. The Amended Complaint, however, demonstrates an utter misunderstanding of the law, or else is a misguided attempt to disrupt well-settled case law on the applicable principles. As a result, Plaintiff fails to state any cognizable claims against the Alibaba Defendants.

First, in order to establish contributory copyright and trademark liability, Plaintiff must allege that the Alibaba Defendants had contemporaneous knowledge of *specific* instances of infringement that they failed to address. But the Amended Complaint contains no such allegations. And, notwithstanding Plaintiff's acknowledgment that the Alibaba Defendants have designated channels for receiving notices of infringement, Plaintiff does not allege that it ever used those channels to report allegedly infringing listings. At most, the facts as pled demonstrate that the Alibaba Defendants only learned of the specific infringing listings identified in this case—whether in Plaintiff's initial complaint and temporary restraining order or in Plaintiff's briefing to support its Order to Show Cause ("OTSC")—when they received copies of those court filings. But, as this Court previously found, upon receipt of such notice, the Alibaba Defendants promptly removed the identified infringing listings. *See* Dkt. No. 54 ("Order") at 3. Accordingly, knowledge in those circumstances does not give rise to contributory liability.

Perhaps cognizant of this pleading deficiency, Plaintiff attempts to muddle the knowledge requirement by alleging that the Alibaba Defendants had sufficient *generalized* knowledge of alleged infringement to "collectively put [them] on notice" of specific infringing listings. Am. Compl. ¶¶ 196, 207. But the Alibaba Defendants have no legal duty to monitor their platforms and block infringing listings without notice from Plaintiff, and binding Second Circuit law is clear that generalized knowledge alone cannot support contributory infringement claims. *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) ("*Tiffany II*"). Therefore, Plaintiff's allegations concerning the Alibaba Defendants' awareness of prior TRO actions by Plaintiff (identifying different listings for different products) and press coverage of alleged infringement on the Alibaba platforms, among other things, do not sufficiently allege knowledge to support contributory liability.

Second, in addition to failing to allege the requisite knowledge, Plaintiff also fails to allege that the Alibaba Defendants had a substantial degree of participation in or sufficient control of the alleged infringement necessary to state claims of contributory copyright and trademark liability.  As noted, upon receiving notice of the allegedly infringing listings identified in this case, the Alibaba Defendants promptly removed those listings—ceasing, not furthering, the alleged infringement.  Plaintiff tries to lift up premium memberships, promotional emails, and keyword advertising as evidence of the Alibaba Defendants' participation in the alleged infringement.  But the Amended Complaint concedes, as it must, that such content-neutral services are available to all sellers on Alibaba.com and AliExpress simply by virtue of operating storefronts on the platforms.  And just as this Court previously found that such "arm's-length" services did not demonstrate that the Alibaba Defendants were "substantially intertwined" with (and, thus, did not aid and abet) the Merchant Defendants (Order at 3), allegations regarding those same services are similarly insufficient to demonstrate the Alibaba Defendants' substantial participation in or sufficient control the alleged infringements.  Plaintiff's contributory infringement claims therefore fail on this basis as well.

Third, with respect to Plaintiff's vicarious copyright infringement claim, Plaintiff does not allege facts necessary to demonstrate that this is the kind of "exceptional case"—similar to cases where the defendants encouraged their users to steal content and provided services used overwhelmingly for copyright infringement—where the Alibaba Defendants had the requisite right and ability to control the Merchant Defendants' alleged infringements while receiving an obvious direct financial benefit from specific infringements.  Rather, the allegations demonstrate only an arm's-length relationship between the Alibaba Defendants and the Merchant Defendants, which is not the type of close relationship required to establish that the Alibaba Defendants had

the right and ability to control the Merchant Defendants' allegedly infringing activities. And Plaintiff's conclusory allegations that the Alibaba Defendants financially benefited directly from specific infringing listings are belied by the Alibaba Defendants' investment of considerable resources in initiatives to affirmatively assist rights holders in protecting their intellectual property as well as their prompt removal of the allegedly infringing listings upon notice. Therefore, Plaintiff's vicarious infringement claim also fails.

For the foregoing reasons and as further explained below, the Amended Complaint against the Alibaba Defendants should be dismissed.

## BACKGROUND & PROCEDURAL HISTORY

### A. The Parties

Plaintiff is a manufacturer and distributor of plush toys and gifts collectively referred to herein as "Squishmallows" or the "Squishmallows Products." Am. Compl. ¶ 13. Squishmallows come in various forms and sizes, ranging from 3.5-inch clip-ons to 24-inch plush toys. *Id.* ¶ 13. There are at least 34 different types of Squishmallows at issue in this case, including bunnies, pigs, cows, and lions (*see id.* Exs. A, D), but there are close to 3,000 types of Squishmallows available on the market.[1] Plaintiff claims that it holds common law and registered trademark rights in the "Squishmallows Marks" and registered copyrights in the "Squishmallows Works." *Id.* ¶¶ 19-23.

---

[1] *See* Mark Faithfull, *Squishmallows: Going Viral, Warren Buffet And 2022's Must-Have Christmas Toy*, *Forbes* (Dec. 13, 2022), https://www.forbes.com/sites/markfaithfull/2022/12/13/squishmallows-going-viral-warren-buffett-and-2022s-must- have-christmas-toy/?sh=6330844b22ad. When deciding a motion to dismiss, this Court can consider "facts alleged in the complaint and documents attached to it or incorporated in it by reference." *See Waiting Room Sols. v. Excelsior Ins. Co.*, No. 19-CV-7978 (CS), 2020 WL 5505386, at *5 (S.D.N.Y. Sept. 9, 2020). Plaintiff cites this article in paragraph 14, note 2 of the Amended Complaint.

Alibaba Singapore and AliExpress E-Commerce One own and operate e-commerce platforms Alibaba.com and AliExpress, respectively, which enable third-party sellers to directly market and sell their products worldwide.  *Id.* ¶ 29; *see also* The Alibaba Group 2022 Annual Report at 22.[2]  The 61 "Merchant Defendants" named in the Amended Complaint are third-party sellers who operate independent storefronts on either Alibaba.com or AliExpress and who, as of November 15, 2021, allegedly posted listings that infringe Plaintiff's intellectual property rights.  Dkt. No. 8; ¶ 6; Am. Compl. ¶¶ 3, 6, 40-41.  As described in more detail below, six of the 61 Merchant Defendants are alleged to have been discovered with subsequent counterfeit Squishmallows listings on their storefronts at some point between April and July 2023.  Am. Compl. ¶¶ 82-83, 86-89.  Plaintiff does not allege that the other 55 Merchant Defendants have posted an infringing listing since November 15, 2021.

**B.  The Alibaba Defendants' Intellectual Property Reporting Processes And Anti-Counterfeiting Initiatives**

In accordance with the Digital Millennium Copyright Act ("DMCA"), the Alibaba Defendants have established notice-and-takedown systems through which rights holders can report infringing listings via email or through an online portal.  *See id.* at ¶ 66 n.23.[3]  In response to takedown notices received through the established channels, the Alibaba Defendants will expeditiously remove reported listings.  Alibaba IPR Handbook at 4.  As the Amended Complaint acknowledges, the Alibaba Defendants have adopted a policy through which repeat

---

[2] *See Alibaba Group Holding Limited Fiscal Year 2022 Annual Report*, https://static.alibabagroup.com/reports/fy2022/ar/ebook/en/index.html (last visited Sept. 25, 2023) ("AGHAR").  The AGHAR is incorporated by reference in paragraphs 93-98 of the Amended Complaint.

[3] *See Alibaba Intellectual Property Rights Handbook*, download.taobaocdn.com/freedom/37886/pdf/Alibaba-Intellectual-Property-Rights-Protection-Handbook-EN.pdf (last visited Sept. 25, 2023) ("Alibaba IPR Handbook").  The Alibaba IPR Handbook is incorporated by reference in paragraph 66, note 23 of the Amended Complaint.

infringers are subject to termination.  Am. Compl. ¶ 66.  In addition, the Alibaba Defendants cooperate offline with rights holders, like Plaintiff, to address alleged infringements on a case-by-case basis and even report information to law enforcement agencies as appropriate.  *See* Alibaba IPR Handbook at 14; *see also* Am. Compl. ¶ 67.

The Alibaba Defendants also have invested considerable resources in initiatives to affirmatively assist rights holders in protecting their intellectual property.  For example, since 2015, the Alibaba Defendants have implemented the Good Faith Program, which offers a simplified and expedited takedown process for "rights holders who consistently demonstrate a record of conscientious notice-and-takedown reporting."  Alibaba IPR Handbook at 2.  And, in 2016, the Alibaba Defendants launched the IP Joint-Force System, which allows rights holders to collaborate with the Alibaba Defendants to engage in proactive monitoring efforts.  *Id.*

The Amended Complaint does not allege that Plaintiff has ever used the Alibaba Defendants' designated IP reporting channels to report infringing listings, including any listings posted by the Merchant Defendants.  In fact, Plaintiff has admitted that it affirmatively chooses not to use the Alibaba Defendants' designated reporting channels because it believes they are "ineffective."  *See* Transcript of May 30, 2023 Hearing, Dkt. No. 60 ("Hearing Tr.") 10:22.

### C.  *Plaintiff's Use Of TROs To Address Infringement*

According to the Amended Complaint, rather than use the Alibaba Defendants' designated IP reporting channels to address allegedly infringing listings on the Alibaba.com and AliExpress platforms, Plaintiff has elected to file multiple *ex parte* requests for temporary restraining orders against third-party merchants (the "Prior TRO Actions").  Am. Compl. ¶ 62.  That is what it did here.  Instead of simply providing notice to the Alibaba Defendants of allegedly infringing listings so that they could be taken down, Plaintiff sued the 61 Merchant Defendants for direct infringement, and sought a temporary restraining order *ex parte* to enjoin

6

the Merchant Defendants from continuing to list and/or sell counterfeit Squishmallows products on Alibaba.com and AliExpress.  *See* Dkt. No. 8.  For the majority of the 61 Merchant Defendants, Plaintiff sued on the basis of a single infringing listing identified on the defendant's storefront.  Am. Compl., Ex. D.  After granting the requested TRO and subsequent preliminary injunction, this Court made the preliminary injunction permanent and closed the case on June 9, 2022.  *See* Am. Compl. ¶¶ 73, 76, 80.  No Merchant Defendant ever appeared.

The Alibaba Defendants were not named parties in the initial complaint (filed on October 13, 2021), nor did the complaint allege that the Alibaba Defendants participated in any way in the alleged infringing activity.  Each of the injunctive orders, however, contained language purporting to enjoin so-called "Third Party Service Providers"—which were defined to include "Alibaba and AliExpress"—from providing the Merchant Defendants with *any* services, including the ability to continue operating their storefronts.  The Alibaba Defendants first received notice of the allegedly infringing listings identified in Plaintiff's initial complaint and TRO when Plaintiff emailed a copy of the same.  *See* Dkt. No. 42 ("Futterman Decl."), Exhibit A.  Plaintiff does not contest that, upon receipt of those filings, the Alibaba Defendants promptly removed the listings.  *See* Am. Compl. ¶ 85; *see also* Order at 3.

On April 26, 2023, almost a year after this case was formally closed, Plaintiff's counsel allegedly conducted an investigation of sellers on Alibaba.com and AliExpress and discovered that four of the 61 Merchant Defendants were allegedly listing infringing products.  Am. Compl. ¶¶ 82-83.[4]  Counsel's April 26 investigation uncovered one allegedly infringing listing on each of the four storefronts.  Futterman Decl., Exhibit A.

---

[4] The four Merchant Defendants identified were BBOTTRUOYS Toy Store; Shenzhen Tongfei International Trade Co., Ltd.; Yangzhou Kingstone Toys Co., Ltd.; and Yiwu Xintu Import And Export Co., Ltd.

Plaintiff does not allege that it provided the Alibaba Defendants with notice of the four listings through any of the Alibaba Defendants' designated IP reporting channels. Instead, Plaintiff used those four listings to support an application for an Order to Show Cause, filed on April 28, 2023, requesting this Court to order, *inter alia*, "Third Party Service Providers Alibaba and AliExpress" to (i) "cease aiding and abetting [Merchant] Defendants in violating the Permanent Injunction" and (ii) hold them in contempt for these violations. *See* Dkt. No. 41; *see also* Am. Compl. ¶ 84. In short, some 18 months after the TRO was entered in this case, Plaintiff sought to have "Alibaba and AliExpress" held in contempt for only taking down the infringing listings rather than terminating the 61 Merchant Defendants' storefronts in their entirety; the basis for Plaintiff's request was that four of the 61 Merchant Defendants had now posted one new allegedly infringing listing each. *See* Dkt. No. 43. Plaintiff also sought to have the Court find that the Alibaba Defendants had "aided and abetted" the four Merchant Defendants' violations of the permanent injunction despite the fact that Plaintiff never reported these infringements to the Alibaba Defendants so that they could remove the listings. Plaintiff does not allege that any of the four newly identified listings were the same listings or offered the same products as those previously identified on those storefronts in the initial complaint and TRO. And Plaintiff does not contest that when it notified the Alibaba Defendants of the allegedly infringing listings through the OTSC application, the Alibaba Defendants promptly removed all four listings. Am. Compl. ¶ 85.

In Plaintiff's OTSC reply briefing, its counsel identified three additional allegedly infringing listings that it claims to have discovered during two May 2023 investigations. *See* Dkt. No. 52 at ¶¶ 10-12; Am. Compl. ¶¶ 86-88. Plaintiff again does not allege that it reported these three listings to the Alibaba Defendants through their designated IP reporting channels.

Plaintiff also does not allege that the three listings were the same as any listings previously identified on those storefronts in the initial complaint or the OTSC application. Upon receipt of Plaintiff's reply papers, the Alibaba Defendants promptly removed the three listings that had been identified for the first time therein. *See* Order at 3.

### D. This Court Finds Alibaba And AliExpress Did Not Aid And Abet Infringement

During the May 30, 2023 hearing on the OTSC (the "Hearing"), this Court recognized that "when [Alibaba and AliExpress] acquire knowledge [of infringement] is the key" and further observed that the evidence showed that "promptly upon notice"—*i.e.*, when Alibaba and AliExpress first obtained knowledge of the alleged infringing listings—"the infringing material was taken down[.]" Hearing Tr. 20:16, 22:12-14. Accordingly, in its May 31, 2023 order, this Court denied Plaintiff's requests for (1) an order directing Alibaba and AliExpress to cease aiding and abetting counterfeiting and (2) a contempt order against Alibaba and AliExpress, holding that Plaintiff "failed to demonstrate that Alibaba and AliExpress are 'in active concert or participation with' the enjoined Defendants." Order at 3. In rejecting Plaintiff's aiding and abetting claim, this Court found that Alibaba and AliExpress had "promptly removed all infringing listings . . . when notified by Plaintiff." *Id.* The Court also rejected Plaintiff's argument that Alibaba and AliExpress "aided and abetted Defendants' activities by continuing to provide services to the Defendants and taking actions to promote the sale of the counterfeit products" (*id.* at 2), finding that "the arm's-length marketplace services provided to Defendants by Alibaba and AliExpress . . . do not demonstrate substantial intertwinement with Defendants." *Id.* at 3 (internal quotations omitted). Plaintiff does not acknowledge the May 30, 2023 Hearing or this Court's May 31, 2023 order in the Amended Complaint.

### E. The Amended Complaint's Repackaging Of Plaintiff's Order To Show Cause Application

Having failed in its effort to hold the Alibaba Defendants liable (or in contempt) on a theory that they aided and abetted the Merchant Defendants' infringing activities, Plaintiff sought a different tactic. On June 27, 2023, Plaintiff moved to reopen the case and file an amended complaint that added claims against the Alibaba Defendants based on essentially the same facts but now sounding in contributory and vicarious infringement. Dkt. No. 58.

The Amended Complaint does not allege that Plaintiff ever gave the Alibaba Defendants notice of any of the specific allegedly infringing listings on the 61 Merchant Defendants' storefronts prior to filing its initial complaint and TRO application or its OTSC application. The Amended Complaint also does not allege that the Alibaba Defendants failed to remove any of the specific infringing listings after receiving copies of Plaintiff's various court filings. And the Amended Complaint does not allege that, once the Alibaba Defendants are notified that a particular seller posted an infringing listing, they have the technological ability to identify all future listings either by that seller or other sellers that infringe the same rights holder's IP.

The Amended Complaint illustrates the practical barriers that prevent the Alibaba Defendants from identifying infringing listings on their own. For instance, even though Plaintiff refers to the listings identified during its counsel's April, May, and July investigations as "re-listings," in fact, none are the same listing that was previously removed, and almost all of the identified listings are for entirely different products. For example, as illustrated below, although all of the listings are plush toys of some type, the more recent listings by Yangzhou Kingstone Toys Co., Ltd., Yangzhou Dulala Crafts Ltd.,[5] and Yiwu Fuguan Household Supplies Co., Ltd.

---

[5] Plaintiff identified Yangzhou Kingstone Toys Co. and Yangzhou Dulala as two of six Merchant Defendants named in the initial complaint that listed infringing products subsequent to the injunctive orders. However, on May 25, 2022, Plaintiff voluntarily dismissed both of these

(as identified in Plaintiff's OTSC briefing) otherwise bear no resemblance whatsoever to the

listings identified in the original complaint.

| **Storefront** | **Listings in Initial Complaint/TRO, Ex. D** | **Listings Allegedly Discovered During Epstein Drangel's April 26, 2023 and May 23, 2023 Investigations** |
|---|---|---|
| Yangzhou Kingstone Toys Co., Ltd**.** | *Squishmallow super soft elastic fabric stuffed unicorn cushion unicorn pillow with soft stuffing polyester fibre*<br> | *Custom Super Soft Elastic Squishy Xmas Toys Squish Mellow Stuffed Christmas Animal Plush Pillow Toy*<br> |
| Yangzhou Dulala Crafts Ltd. | *Animal Sweet Leopard pillow Plush Toy soft Cartoon Stuffed Doll Baby Leopard Pillow squishmallow*<br> | *JA 20cm Plush Toy Animal Shape Birds Kids Girls Gift Home Puppy Cute Plush Toy For Children Gifts Animals Plush Pit*<br> |

---

Merchant Defendants with prejudice (*see* Dkt. No. 39), and neither is named in the Amended

Complaint.

| Storefront | Listings in Initial Complaint/TRO, Ex. D | Listings Allegedly Discovered During Epstein Drangel's April 26, 2023 and May 23, 2023 Investigations |
| --- | --- | --- |
| Yiwu Fuguan Household Supplies Co., Ltd. | *Amazon hot sale Squishmallows burger fries customized soft plush toy*<br> | *Squish squishy mallow mallow Plushie Animal Skin Unstuffed Koala Frog Unicorn Strawberry Pillow Stuffed Plush Toys*<br> |

Plaintiff also claims the Alibaba Defendants should have known that some of the 61 Merchant Defendants—having not been terminated in response to the TRO—would subsequently post infringing listings based on: allegations of infringement in Prior TRO Actions, prior communications between Plaintiff's counsel and the Alibaba Defendants' counsel that mentioned the names of some of the Merchant Defendants (but are not alleged to have identified any specific infringing listings), the injunctive orders entered in this action, and "press coverage" about alleged counterfeiting on the Alibaba platforms generally.  Am. Compl. ¶¶ 62-63, 67, 72, 196, 207.

In support of Plaintiff's claim that the Alibaba Defendants contributed to the Merchant Defendants' alleged infringement, the Amended Complaint points to the Alibaba Defendants' provision of certain content-neutral services such as "premium" memberships, promotional email services, and keyword advertising.  *See, e.g.*, ¶¶ 97, 102-104, 108, 123-124.  These are services which this Court found to be "arm's-length" and insufficient to demonstrate aiding and abetting.

*See* Order at 3.  Plaintiff does not allege that these services are offered specifically to infringing sellers, rather than broadly to all third-party merchants on Alibaba.com and AliExpress.  *See, e.g.*, Am. Compl. ¶ 97 (alleging that Alibaba.com has "over 245,000 paying Gold-Supplier members from . . . around the world," demonstrating that this service is offered broadly and at arm's length).  Nor does Plaintiff allege that the Alibaba Defendants have any control over products listed by any Merchant Defendant.  Plaintiff simply alleges that the Merchant Defendants, *like all other third-party merchants* on Alibaba.com and AliExpress, list products, process payments, and ship merchandise through the platforms (*id.* ¶ 50)—and by virtue of doing so, they receive content-neutral marketplace services.

The Amended Complaint notes that sellers on AliExpress "typically pay 5% to 8% of the transaction value" as a commission on a given transaction, but it does not allege that the Alibaba Defendants specifically received any revenue from the AliExpress listings at issue.  *Id.* ¶ 95.  There also is no allegation that Alibaba Singapore generated commissions or any other revenue from the identified Alibaba.com listings.  Instead, the Amended Complaint alleges that content-neutral services like the "Gold" and "Verified" supplier memberships, not commissions from particular listings, "contributed the majority of Alibaba.com's total revenue."  *Id.* ¶ 97.

### F.  Plaintiff's Withholding Of Information Concerning New Allegedly Infringing Listings

The Amended Complaint alleges that an investigation by Plaintiff's counsel on July 10, 2023 uncovered that one of the Merchant Defendants, Yiwu Fuguan Household Supplies Co., Ltd, was currently offering allegedly infringing products.  *See id.* ¶ 89.  There is no allegation that Plaintiff reported these allegedly infringing listings to the Alibaba Defendants.  The Amended Complaint also lacks any detail regarding these purported listings, such as the URLs or

descriptions of the alleged counterfeit products, which impairs the Alibaba Defendants' ability to remove them.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s] devoid of 'further factual enhancement'" are not enough. *Iqbal*, 556 U.S. at 678. Moreover, "in order to survive a motion to dismiss, [P]laintiff's amended complaint must, at a minimum, assert the elements of the violations alleged." *Grossman v. Citrus Assocs. of New York Cotton Exch., Inc.*, 706 F. Supp. 221, 231 (S.D.N.Y. 1989). Dismissal is required where a complaint "fails to plead the required elements of a claim." *Erie Grp. LLC v. Guayaba Capital, LLC*, 110 F. Supp. 3d 501, 511 (S.D.N.Y. 2015).

## ARGUMENT

### I.  Plaintiff Fails To Allege That The Alibaba Defendants Had The Requisite Knowledge For Contributory Copyright Or Trademark Infringement

In order to state a claim for either contributory copyright infringement or contributory trademark infringement, Plaintiff must allege that, while having the requisite knowledge of the direct infringement, the Alibaba Defendants substantially participated in or had sufficient control of such infringement. *See, e.g.*, *Lefkowitz v. John Wiley & Sons, Inc.*, No. 13 Civ. 6414(KPF), 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (citing *Wolf v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012)); *Tiffany II*, 600 F.3d at 104. Therefore, a critical

element of both claims is contemporaneous knowledge of infringing activity that the Alibaba Defendants failed to address, but the Amended Complaint fails to plead such knowledge.

The requisite knowledge of infringement must be specific, not general. For a contributory copyright infringement claim, "a general awareness that there are infringements" is insufficient; the defendant must have "actual or constructive knowledge of *specific and identifiable infringements* of individual items." *Lopez v. Bonzana.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *25 (S.D.N.Y. Sept. 30, 2019) (emphasis added) (internal quotation marks omitted). Similarly, to hold a defendant liable for contributory trademark infringement, it must have "more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which *particular* listings are infringing or will infringe in the future is necessary." *Tiffany II*, 600 F.3d at 107 (emphasis added). Where, as here, a plaintiff has failed to plead knowledge of specific infringements, dismissal is appropriate. *See, e.g.*, *Lopez*, 2019 WL 5199431, at *15-17 (dismissing trademark infringement claims against Microsoft, Hostway, GoDaddy, and Shopify for failure to allege specific knowledge); *Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, *7 (S.D.N.Y. Aug. 19, 2021) (dismissing contributory copyright infringement claim where complaint failed to allege Amazon knew of the specific alleged infringement).

The Amended Complaint suggests that the Alibaba Defendants should have known of the infringing listings without prior notice from Plaintiff, reflecting either a misunderstanding of the law, or an attempt to a disrupt well-settled precedent and shift the burden of rights enforcement to platforms. The law is clear that service providers such as the Alibaba Defendants have no duty to affirmatively monitor their platforms for infringing content. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 518 (S.D.N.Y. 2008) ("*Tiffany I*") ("Tiffany must ultimately

bear the burden of protecting its trademark"), *aff'd in relevant part*, *Tiffany II*.  As this Court

recognized, online service providers, like the Alibaba Defendants, are not "monitor[s]" for

infringement on their platforms and are only "responsive to takedown orders" from rights

holders.  Hearing Tr. 20:22-25.

 Here, at best, Plaintiff alleges that it provided notice of specific infringing listings via

court filings.  But Plaintiff does not allege that with respect to any of the allegedly infringing

listings at issue, it provided the Alibaba Defendants with notice *prior* to the court filings, which

would have enabled the Alibaba Defendants to remove the listings.  Nor does Plaintiff allege that

in any instance the Alibaba Defendants failed to promptly remove the allegedly infringing

listings once they received notice.  In fact, this Court found that the Alibaba Defendants removed

all of the allegedly infringing listings upon notice from Plaintiff.  Order at 3.  This is insufficient

to sustain a contributory infringement claim.

 Plaintiff's other allegations of knowledge (*i.e.*, other than specific infringing listings

being identified in court filings in this case) relate only to *general* knowledge of infringement,

which also is insufficient.  Plaintiff makes conclusory allegations that the Alibaba Defendants

were "put . . . on notice" of the specific infringing listings through a combination of: (i) two Prior

TRO Actions that included a few overlapping Merchant Defendants; (ii) "Plaintiff and Epstein

Drangel's communications with the Alibaba Defendants and [their] outside counsel"; and (iii)

"press coverage" of infringement on the platforms generally.  Am. Compl. ¶¶ 196, 207.  But

none of these sources of collective "notice" is alleged to contain information regarding the

specific infringing listings at issue in this case.

 <u>First</u>, Plaintiff contends that the Alibaba Defendants should have known that specific

listings were infringing because Plaintiff had named seven of the 61 Merchant Defendants in one

of two Prior TRO Actions regarding the same intellectual property. *Id.* ¶ 62. However, at most, this allegation suggests only that the Alibaba Defendants may have *general* knowledge that certain Merchant Defendants may have infringed in the past—not contemporaneous knowledge of specific infringing listings—which is insufficient for claims of contributory infringement. The Amended Complaint does not allege that the Alibaba Defendants failed to remove the listings identified in the two Prior TRO Actions. And the mere fact that, at some point in the past, a particular Merchant Defendant had an infringing listing identified on its storefront, does not plausibly give the Alibaba Defendants the requisite specific knowledge regarding that merchant's future listings. In fact, according to Plaintiff, since it identified infringing listings on the 61 Merchant Defendants' storefronts in the initial complaint (back in 2021), it has identified a subsequent infringing listing on only six of the 61 Merchant Defendants' storefronts. Am. Compl. ¶¶ 82-83, 86-89. Plaintiff has not alleged that any of the other 55 Merchant Defendants posted any infringing listings in the nearly two years since the initial complaint was filed.

In addition, aside from the fact that all of the listings are for some type of plush toy, the allegedly infringing listings identified in the Prior TRO Actions as posted by the handful of overlapping merchants otherwise bear no resemblance to the listings subsequently identified in the initial complaint in this matter. As illustrated by the exemplars in the chart below, the listings contain different products. *See* Compl., Ex. D, *Kelly Toys Holdings*, *LLC v. 27955068 Store*, *et al.*, 1:21-cv-03081-DLC (S.D.N.Y. 2021) ("*Squishmallows I*"); Compl., Ex. D, *Kelly Toys Holdings, LLC v. Baoding Mi Xiaomai Store*, *et al.*, No. 21-cv-6029-LGS (S.D.N.Y. 2021) ("*Squishmallows II*").

| Storefront | Listings From Prior Actions (*Squishmallows I* And *Squishmallows II* Complaints, Exhibits D) | Listings From This Action (Initial Complaint/TRO, Exhibit D) |
|---|---|---|
| Dongguan Woodfield Baby Products Company Limited | *Custom Squishmallow Plush Toy Baby Dinosaurs Reversible Baby Dino Stuffed Doll Cuddly Animals Plushie*  | *wholesale custom cow avocado plush squishmallow*  |
| Yangzhou Dulala Crafts Ltd. | *Baby Appeasing Toy 13Inch Stuffed Squirrel Super Soft Squishmallow Pillow Peluches Squishmallow Toys*  | *Animal Sweet Leopard pillow Plush Toy Soft Cartoo Stuffed Doll Baby Leopard Pillow Squishmallow*  |
| Yiwu Quanfa Import & Export Company Limited | *Hot Sale Cute Kawaii Stuffed Plush Toy Squishmallow Plush*  | *Cartoon Round 30cm Baby Yoda Plush Toy Unicorn Plush Doll Animals pillow Gifts Stuffed Squishmallow Toy*  |

| | | |
|---|---|---|
| Yiwu Zhengzhi Qin Trading Firm | *Amazon Hot Sale Squishmallow Baby Yoda Plush Toy Baby Yoda Plush New Items for 2021*  | *Hot sale Soft Textured Dinosaur Unicorn Triceratops Plush Animal Toys Stuffed Squishmallow Dolls* |

<u>Second</u>, Plaintiff alleges that, in discussions between Plaintiff's counsel and the Alibaba Defendants' outside counsel in April and May 2022, Plaintiff's counsel identified the names of certain merchants on Alibaba.com and AliExpress who had allegedly violated injunctive orders in Prior TRO Actions, including three Merchant Defendants named in this action; Plaintiff does not allege, however, that its counsel identified any specific infringing listings on any of those merchants' storefronts.  Am. Compl. ¶¶ 67, 68.  Again, the identification of those three Merchant Defendants who may have previously infringed does not give the Alibaba Defendants contemporaneous knowledge of specific listings that needed to be addressed.  The law requires notice of specific infringing content.  *See Lopez*, 2019 WL 5199431, at *15, *35.  Merely reminding the Alibaba Defendants (whether directly or through outside counsel) that certain merchants previously posted infringing listings is not sufficient to provide notice of future infringing listings.

Plaintiff also alleges that Epstein Drangel categorically advised counsel for the Alibaba Defendants that "no authentic Squishmallows Products are authorized to be sold by anyone on the Alibaba Platforms."  Am. Compl. ¶ 72.  But regardless of whether Plaintiff has authorized the

sale of its products, purchasers of those products can resell authentic Squishmallows without infringing Plaintiff's trademark or copyright, including on the Alibaba Defendants' platforms. *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992) ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner."); *see also Noland v. Janssen*, 17-CV-5452 (JPO), 2020 WL 2836464, at *4 (S.D.N.Y. June 1, 2020) ("The first sale doctrine permits the lawful purchaser of a copy . . . to resell . . . that copy without violating the copyright holder's exclusive right of distribution.") (internal quotations omitted).  Accordingly, Plaintiff's general allegation that no sales of Squishmallows are authorized on the Alibaba Defendants' platforms cannot impute to the Alibaba Defendants the requisite knowledge that any particular listing is infringing.  And because the "Merchant Defendants' [allegedly] Counterfeit Products are nearly indistinguishable from Plaintiff's Squishmallows Products, only with minor variations that no ordinary consumer would recognize" (Am. Compl. ¶ 47 ), it is not plausible that the Alibaba Defendants would have reason to know whether a particular Squishmallows listing is infringing without prior notice from Plaintiff.

Third, Plaintiff's allegation that the Alibaba Defendants were aware of "press coverage" of purported counterfeiting on their platforms does not equate to knowledge of specific infringements.  At most, it suggests that the Alibaba Defendants might have had reason to know of generalized infringement occurring on Alibaba.com or AliExpress, which, again, is insufficient for claims of contributory infringement.  *See Tiffany II*, 600 F.3d at 109; *see also Viacom Int'l, v. YouTube*, 676 F.3d 19, 33 (2d Cir. 2012) (finding that YouTube's knowledge that 75-80% of all YouTube streams contained copyrighted material did not constitute the requisite specific knowledge).

As for Plaintiff's allegations that the injunctive orders in this action provided or should have provided the Alibaba Defendants with knowledge of post-TRO infringements, those also fail to establish the requisite knowledge.  Although Plaintiff misleadingly uses the term "re-list" (Am. Compl. ¶ 110) when referring to the listings identified in its OTSC filings or alluded to (but not specifically identified) in the Amended Complaint, Plaintiff does not—nor could it—allege that any of those listings are the same listings it identified in the initial complaint and TRO.  In fact, many of the alleged subsequent listings posted by certain Merchant Defendants look nothing like the listings at issue in the initial complaint and TRO.  *See supra* 10-12.

In sum, the Court should dismiss Plaintiff's claims for contributory copyright and trademark infringement because Plaintiff fails to allege that the Alibaba Defendants had knowledge of any specific infringing listings that they failed to address.

## II.    Plaintiff Fails To Allege Other Necessary Elements Of Contributory Infringement

While Plaintiff's failure to allege the requisite knowledge of infringing listings is dispositive of its contributory infringement claims, Plaintiff's claims also fail because the Amended Complaint does not sufficiently allege that the Alibaba Defendants had the requisite substantial participation in or control of the direct infringement.

### A.    Plaintiff Fails To Allege Substantial Participation In Copyright Infringement

A contributory copyright infringement claim requires that the defendant, with the requisite knowledge, "induce, cause, or materially contribute to the infringing conduct of another." *Lopez*, 2019 WL 5199431, at *24.  "An allegation that a defendant 'merely provid[ed] the means to accomplish an infringing activity' is insufficient to establish . . . contributory infringement." *Id*.  "Rather participation in the infringement must be 'substantial'" with a "direct relationship to the infringing acts such that the contributory infringer . . . acted in concert with the direct infringer." *Hartmann v. Google LLC*, No. 20-cv-5778 (JPC), 2022 WL 684137, at *6

(S.D.N.Y. Mar. 8, 2022) (internal citation omitted); *Brought to Life Music, Inc. v. MCA Recs., Inc.*, No. 02 Civ. 1164 (RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003).

Courts have found substantial participation adequately pled where plaintiffs allege that the direct infringers "act 'under [Defendants'] direction . . . and are 'encourage[d]' by Defendants to steal content." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 357 (S.D.N.Y. 2014); *see also Capitol Recs. LLC v. ReDigi*, 934 F. Supp. 2d 640, 659 (S.D.N.Y. 2013) (finding substantial participation where defendant "is intimately involved in examining the [third-party] content that will be sold and supervising the steps involved in making the [content] available for sale and selling it"). By contrast, a party that is "peripherally involved in infringement, such as one who provides online payment services for transactions involving infringement, does not 'materially contribute' to infringement." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011).

Plaintiff's conclusory claim that the Alibaba Defendants induced, encouraged, enabled or otherwise "substantially participated" in the infringing activities (Am. Compl. ¶ 206) is not supported by any plausible factual allegations. As an initial matter, Plaintiff does not contest that, upon receiving notice of any specific infringing listings in this case, the Alibaba Defendants promptly removed them. *See id.* ¶ 85. In other words, rather than furthering the alleged direct infringement, they put an end to it. This "does not permit an inference that [the Alibaba Defendants] acted in concert with" the Merchant Defendants in the alleged infringements. *Business Casual Hldgs., LLC v. YouTube, LLC*, 21-cv-3610 (JGK), 2022 WL 17177970, at *6 (S.D.N.Y. Nov. 22, 2022) (denying motion for leave to amend and dismissing contributory copyright claim with prejudice where the amended complaint "contain[ed] no allegation that YouTube knew of the allegedly infringing . . . videos before [plaintiff] lodged its DMCA

takedown notices" but rather, upon receiving such notice, YouTube promptly removed them) (appeal pending).

The Amended Complaint also is devoid of any facts that would suggest that the Alibaba Defendants somehow induced or encouraged the Merchant Defendants to post infringing listings; any such facts, if they were pled, would also be belied by the Alibaba Defendants' investment of considerable resources in initiatives to affirmatively assist rights holders in protecting their intellectual property. *See supra* 6. Instead, Plaintiff's material contribution theory appears to be based on the Alibaba Defendants' provision of arm's-length services to the Merchant Defendants, including shipping, marketing, advertising, payment processing, keyword services, and promotional emails—all of which are merely incidental to having storefronts on Alibaba.com and AliExpress. Am. Compl. ¶¶ 110, 195.

None of Plaintiff's allegations demonstrate that the Alibaba Defendants' arm's-length services bore any "direct relationship to the [alleged] infringing acts," as required for material contribution. *Brought to Life Music*, 2003 WL 296561, at *2. For example, there are no allegations that the Alibaba Defendants promoted their platforms as a way to circumvent copyright or that they otherwise encouraged Merchant Defendants to infringe. In fact, Plaintiff alleges that the Merchant Defendants are in constant communication with *each other* about counterfeiting activities (Am. Compl. ¶ 43)—but there are no allegations that the Merchant Defendants communicate with the Alibaba Defendants regarding infringement. Nor does Plaintiff allege that the Alibaba Defendants offer the Merchant Defendants direct assistance or editorialize the content of specific listings. At most, the Alibaba Defendants have "merely provid[ed] the means" for Merchant Defendants "to accomplish an infringing activity," which is insufficient to plead substantial participation. *Brought to Life Music*, 2003 WL 296561, at *2-3

(dismissing contributory copyright claim where there was "no allegation of any participation in the alleged infringement"); *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) (sale of copying equipment that is "capable of noninfringing uses" does not constitute copyright infringement).

To the extent the Merchant Defendants have utilized the Alibaba Defendants' arm's-length services to post infringing listings, Plaintiff also claims that the Alibaba Defendants are liable because they did not terminate the 61 Merchant Defendants' storefronts in their entirety upon learning of (in most cases) a single infringing listing on each storefront. *See* Am. Compl. ¶¶ 90, 110.[6] But Plaintiff has not alleged any facts showing that once the Alibaba Defendants removed the specific infringing content, they would have reason to know Merchant Defendants would post infringing content again. To the contrary, as noted above, based on Plaintiff's own allegations, 55 of the 61 Merchants Defendants appear not to have posted any infringing content during the nearly two years since the initial complaint. Accordingly, in removing the identified infringing listings but not terminating the Merchant Defendants' storefronts, the Alibaba Defendants merely continued providing the same services available to all other merchants on their platforms. And, as discussed above, this is not substantial participation in infringement.

In addition, to the extent Plaintiff seeks to hold the Alibaba Defendants liable for any alleged failure to terminate storefronts consistent with their own repeat infringer policies, "an ISP's compliance with the DMCA's safe harbor provisions does not come into play until a plaintiff pleads a viable copyright infringement claim against the ISP in the first instance, at

---

[6] Plaintiff has previously conceded that because no Alibaba entity was joined as a party when the Permanent Injunction was entered, "the Court may have lacked the power [under the injunction] to require Alibaba to restrain Defendants' Merchant Storefronts and User Accounts [*i.e.*, terminate the storefronts]." Dkt. No. 43 at 9 (citing *The N. Face Apparel Corp. v.Fujian Sharing Imp. & Exp. Ltd. Co.*, No. 10 Civ. 1630 (AKH), 2011 WL 12908845 (S.D.N.Y. June 24, 2011)).

which point, the ISP may assert its eligibility for a safe harbor as a defense to liability." *Business Casual Hldgs.*, 2022 WL 17177970, at *7. Plaintiff "cannot transform the DMCA's prerequisites"—*i.e.*, reasonable implementation of a repeat infringer policy—"into the basis for an affirmative claim" against the Alibaba Defendants. *Id.* at *8.[7]

Notably, the Supreme Court has expressly recognized that the standard for contributory copyright liability stems, at least in part, from the theory of liability for aiding and abetting. *See, e.g.*, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (noting that liability for inducement exists where one "actively and knowingly aids and abets another's direct infringement"). And, in the context of aiding and abetting liability, the Supreme Court recently recognized that the mere provision of internet platforms, without knowing, substantial assistance to the wrongdoing at issue, is not culpable:

> [W]e generally do not think that internet or cell service providers incur culpability merely for providing their services to the public writ large. Nor do we think that such providers would normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—***even if the provider's conference-call or video-call features made the sale easier***. . . . [As for defendants' 'recommendation' algorithms,] [a]ll the content on their platforms is filtered through these algorithms, which allegedly sort the content by information and inputs provided by users and found in the content itself. As presented here, the algorithms appear agnostic as to the nature of the content, matching any content (including ISIS' content) with any user who is more likely to view that content. ***The fact that these algorithms matched some ISIS content with some users thus does not convert defendants' passive assistance into active abetting***. . . . [B]oth tort and criminal law have long been leery of imposing aiding-and-abetting liability for mere passive nonfeasance.

*Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1226 (2023) (emphasis added).

Accordingly, it is instructive that in its Order on Plaintiff's OTSC application, this Court recognized that the arm's-length services that the Alibaba Defendants offer to all merchants—

---

[7] Should this matter proceed beyond the pleadings stage, the Alibaba Defendants will be covered by the safe harbor in section 512(c) of the DMCA and can therefore not be held liable for contributory or vicarious copyright infringement.

including "premium" membership services, promotional emails, and keyword advertising (*see* Dkt. No. 43)—do not show "substantial intertwinement" with the Merchant Defendants and were not a basis for finding that the Alibaba Defendants aided and abetted the Merchant Defendants' alleged infringements.  Order at 3 (internal quotations omitted).  For the same reasons, Plaintiff's reliance on a nearly identical list of services that the Alibaba Defendants provide to the Merchant Defendants is insufficient to demonstrate that the Alibaba Defendants substantially participated in the Merchant Defendants' allegedly infringing activities.[8]

### B.  Plaintiff Fails To Allege That The Alibaba Defendants Had Sufficient Control Over Or Induced The Alleged Trademark Infringement

For a contributory trademark claim, in addition to knowledge, a plaintiff must also allege that defendant either had "sufficient control over infringing activity to merit liability" or "intentionally induce[d] another to infringe a trademark."  *Lopez*, 2019 WL 5199431, at *14. Here, Plaintiff has alleged neither.  First, Plaintiff's allegations simply recite the legal standard: "the Alibaba Group supplied and controlled, and continues to supply and control, the instrumentality for the Merchant Defendants' . . . infringing and counterfeiting activities."  Am. Compl. ¶ 198; *see Lopez*, 2019 WL 5199431, at *16 (finding the "control" prong insufficiently alleged where the "allegations [were] nothing more than restatements of the legal standard").  Second, as noted above, the Amended Complaint does not allege that the Alibaba Defendants "intentionally induced" the Merchant Defendants to engage in trademark infringement.  In fact,

---

[8] Plaintiff mentions the order granting a contempt motion in part in *Kelly Toys Holdings, LLC v. 19885566 Store, et al.*, Case No. 22-cv-9384 (JMF) (S.D.N.Y. 2022).  However, it fails to include the fact that the order is subject to a pending motion for reconsideration on the basis that the Court made erroneous findings of fact based on mere assertions in Plaintiff's brief (while overlooking unrebutted sworn testimony submitted by Alibaba) and that, critically, the Court also failed to analyze Alibaba's *knowledge* of misconduct as a required element of aiding and abetting under Rule 65(d)(2)(C).  *See generally* Mot. for Reconsideration, *Kelly Toys Holdings, LLC v. 19885566 Store, et al.*, Case No. 22-cv-9384 (JMF) (S.D.N.Y. 2022), Dkt. No. 105.

the opposite is true:  Plaintiff concedes that the Alibaba Defendants employ measures to combat infringement (Am. Compl. ¶ 66 & nn.22-23), and, as this Court has found, the Alibaba Defendants removed all of the infringing listings once they finally received notice of the listings (Order at 3; *see also* Hearing Tr. 22:13-17).

If anything, Plaintiff itself is the party responsible for contributing to the infringement of its own intellectual property.  Plaintiff's strategy of withholding knowledge of specific infringements from the Alibaba Defendants (who would take them down) in order to use those infringements to support its legal filings, has the perverse effect of allowing the infringing merchants to continue selling counterfeit products.  Most recently, on July 10, 2023, Plaintiff allegedly discovered that Yiwu Fuguan Household Supplies Co., Ltd. had posted infringing listings on its storefront.  *See* Am. Compl. ¶ 89.  However, Plaintiff does not allege that it ever notified the Alibaba Defendants of those listings aside from vaguely referencing them in its Amended Complaint.  And even there, Plaintiff chose not to identify the specific allegedly infringing listings.  Without knowledge of the details of specific infringing listings, such as URLs, the Alibaba Defendants cannot identify and promptly remove infringing content.  Accordingly, by failing to notify the Alibaba Defendants of the infringing listings when identified, Plaintiff has prevented the expeditious removal of allegedly infringing listings and potentially facilitated further infringement of its own intellectual property.

## III.    Plaintiff Fails To Allege Vicarious Copyright Infringement

Plaintiff's claim for vicarious copyright infringement fares no better and also should be dismissed.  Vicarious copyright infringement is found in "exceptional cases" where a defendant had a "right and ability to supervise [the direct infringer, which] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials."  *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, No. 05 CV 7638 (GBD), 2006 WL 2588016, at *3 (S.D.N.Y. Sep. 6, 2006);

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).  Put another way, "a plaintiff must allege plausibly that the defendant 'profit[ed] from [the] direct infringement while declining to exercise a right to stop or limit it.'"  *See Business Casual Hldgs.*, 2022 WL 17177970, at *6 (quoting *Grokster*, 545 U.S. at 930).  But where the facts as pled demonstrate that, upon receiving notice of specific infringing content, the service provider promptly removed the identified content, "the plaintiff's allegations foreclose an inference that [the service provider] declined to exercise its right to stop [the] alleged infringement."  *Id.*  Here, Plaintiff's vicarious liability claim cannot survive a motion to dismiss because the Amended Complaint is devoid of plausible allegations showing that (1) the Alibaba Defendants had the requisite right and ability to control the conduct of Merchant Defendants and that (2) the Alibaba Defendants received a financial benefit directly attributable to the specific allegedly infringing conduct.

### A.  Plaintiff Fails To Allege That The Alibaba Defendants Have A Right Or Ability To Control The Allegedly Infringing Conduct

The "right and ability to control" prong typically examines whether the defendant has a sufficiently strong relationship with a direct infringer.  *See Hartmann v. Amazon*, 2021 WL 3683510, at *3 ("[V]icarious infringement rests on the defendant's relationship to the direct infringer.").  Courts have found a right and ability to control where a service provider "is intimately involved in . . . supervising the steps" for making the infringing material available on its platform, including having "complete control" over a "website's content, user access, and sales."  *Capitol Records, LLC*, 934 F. Supp. 2d at 659-60.[9]  Courts also have found that close

---

[9] Courts in this district have found that the "ability to block infringers' access to a particular environment . . . is evidence of the right and ability to supervise."  *See, e.g.*, *Arista Recs. LLC v. Usenet.com Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (emphasis added); *BWP*, 69 F. Supp. 3d at 357.  But the mere ability to block alleged infringers—a standard capability for any e-marketplace—is just evidence, and by no means dispositive, of the ability to supervise.  Furthermore, the cases that have found it to be sufficient are inapposite because they involved service providers engaging in egregious behavior far beyond anything Plaintiff alleges here.  *See*

business relationships between a defendant and the infringer, such as one having decision-making power over the other, evidences a right and ability to control. *See, e.g.*, *Shapiro*, 316 F.2d at 309 (finding vicarious infringement where direct infringer was defendant's licensee and defendant "had the power to police carefully the [direct infringer's] conduct").

Here, Plaintiff fails to allege that the Alibaba Defendants have any role that allows them to control or supervise the Merchant Defendants' actions and decisions. This Court expressly characterized the services provided by the Alibaba Defendants as "arm's-length" and held that these services do not demonstrate "substantial intertwinement with Defendants," let alone supervisory authority or control. Order at 3. Further, as this Court also found, upon learning of the infringing listings, the Alibaba Defendants removed them. *Id.* If that is the "control" that Plaintiff seeks to rely on for its vicarious liability claim, such an allegation is insufficient, because it demonstrates only that the Alibaba Defendants did *not* decline to exercise any alleged right to stop infringement. *See Business Casual Hldgs.*, 2022 WL 17177970, at *6. In addition, removal of the listings is detrimental to the Alibaba Defendants' financial interests, which also undermines any claim of direct financial benefit necessary to support a vicarious infringement claim. *See infra* 31-32.

Plaintiff makes conclusory allegations that the Alibaba Defendants had the "legal" right and ability to control the Merchant Defendants' conduct "[t]hrough their agreements." Am. Compl. ¶ 215.[10] But the Terms of Use for Alibaba.com and AliExpress, which all users agree to,

---

*Usenet.com* 633 F. Supp. 2d at 131 ("Defendants' services were used overwhelmingly for copyright infringement."); *BWP*, 69 F. Supp. 3d at 357 (alleging that defendants had encouraged users to steal content).

[10] Plaintiff neglects to include any details of these agreements, including which agreements it refers to and how they give the Alibaba Defendants the right to supervise the Merchant Defendants.

expressly state that the Alibaba Defendants "do[] not control and [are] not liable or responsible for the quality, safety, lawfulness or availability of the products or services offered for sale."[11] *See, e.g., Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 472 (S.D.N.Y. 2002) (finding no vicarious infringement where the terms of an "agreement gave [the defendant] no supervisory authority").

This claim is also inconsistent with other allegations in the Amended Complaint. Plaintiff alleges that the Merchant Defendants designed and manufactured the allegedly infringing products, and that the Merchant Defendants—not the Alibaba Defendants—then listed the allegedly infringing products, communicated with potential buyers, and eventually shipped the allegedly infringing goods. Am. Compl. ¶¶ 41, 49, 50. There are no allegations that the Alibaba Defendants examined the products, pre-screened or approved the content of the Merchant Defendants' listings, or were involved in the buyer communications. This kind of arm's-length relationship cannot support a finding of vicarious liability. *See, e.g., Routt v. Amazon.com, Inc.*, 584 Fed. App'x 713, 715-16 (9th Cir. 2014) (finding no right or ability to control where Amazon had the "ability to terminate the accounts of the infring[ers]" but did not "exercise . . . control" over [the infringers'] activities); *Artists Music, Inc. v. Reed Pub.*, Nos. 93 CIV. 3428 (JFK), 93 CIV. 73163, 1994 WL 191643, at *1-2, 65 (S.D.N.Y. May 17, 1994) (finding on summary judgment that trade show organizer was not vicariously liable for exhibitors' infringement because its relationship with exhibitors was similar to that of landlords

---

[11] Terms of Use, Sec. 7.1, https://terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress202204182115_66077.html (last visited Sept. 25, 2023) (emphasis added). The Terms of Use are incorporated by reference in paragraph 215, where Plaintiff refers to the Alibaba's agreements with the Merchant Defendants.

and tenants, and landlords "have a limited ability to control a tenant's use of the leased premises" or "to supervise [their] activities").

### B. Plaintiff Fails To Sufficiently Allege Any Direct Financial Benefit From The Alleged Infringements To The Alibaba Defendants

Plaintiff also does not plead sufficient facts to show a "causal relationship" between the Merchant Defendants' infringing activities and the financial benefit reaped by the Alibaba Defendants. *See Klauber Bros. v. URBN U.S. Retail LLC*, No. 1:21-cv-4526-GHW, 2023 WL 1818472, at *7 (S.D.N.Y. Feb. 8, 2023) (finding that for a defendant to be vicariously liable for a third party's infringement, "there must have been a 'causal relationship' between the infringing activity and a financial benefit reaped by the defendant").

Plaintiff makes a single conclusory allegation that the Alibaba Defendants "ha[ve] derived, and continue[] to derive direct and substantial financial benefits from the . . . unlawful and infringing activities." Am. Compl. ¶ 218. And Plaintiff's sole support for this barebones assertion is Alibaba Group's 2022 Annual Report, which generally notes that its "revenue from commission is mainly contributed by transactions *on AliExpress*, where merchants typically pay 5% to 8% of the transaction value." *Id.* ¶ 95 (emphasis added). The report, however, says nothing about commissions received *from Alibaba.com* transactions. In fact, for Alibaba.com, Plaintiff implicitly concedes that the purchase of content-neutral, arm's-length services—not commissions from listings—"contributed the majority of Alibaba.com's total revenue." *Id.* ¶ 97. Vicarious infringement requires that Alibaba.com derive a financial benefit directly from the infringing *activities*, not the particular *infringers*. Alibaba.com's general revenue model cannot support a finding of vicarious liability, and without any other factual support, the vicarious infringement claim against Alibaba Singapore should be dismissed.

Even for AliExpress E-Commerce One, this lone allegation of commission revenue is insufficient.  Courts have dismissed claims of vicarious infringement where, as here, allegations of direct financial benefit are not supported with sufficient facts.  In *Krisko v. Marvel Entertainment, LLC*, the court found that plaintiff's threadbare allegation that certain defendants "profited directly from their licensing of the X-Men theme" did not support a claim for vicarious liability as to those defendants.  473 F. Supp. 3d 288, 308 (S.D.N.Y. 2020); *see Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 619-20 (S.D.N.Y. 2013) (dismissing vicarious infringement claim where complaint did not "in any way indicate that [the Defendants] profited from the alleged infringement").

Plaintiff does not allege that AliExpress E-Commerce One receives commissions on all sales or, critically, from any of the allegedly infringing sales at issue.  *See Long v. Dorset*, 854 Fed. App'x. 861, 864 (9th Cir. 2021) (holding that the plaintiff must allege that Facebook "made money from Dorset's infringing posts on that page specifically" for a direct financial benefit).  The Alibaba Defendants provide services for thousands of merchants—the vast majority of which are selling non-infringing products.  As this Court acknowledged, the sale of counterfeit goods generally only account for a "fraction[al] element of [the Alibaba Defendants'] income" so "it's hard to say Alibaba was an aider and abettor."  Hearing Tr. 12:14-15.  For the same reason, the Amended Complaint insufficiently alleges that a direct financial benefit stemming from the allegedly infringing sales at issue—and Plaintiff's vicarious liability claim fails.

## CONCLUSION

For the reasons set forth above, the Alibaba Defendants respectfully request that this Court dismiss Plaintiff's claims against the Alibaba Defendants in their entirety.

Dated:  New York, New York
         September 29, 2023

                  Respectfully submitted,

                  /s/ *Jared R. Friedmann*
                  Jared R. Friedmann
                  Sarah Ryu
                  Elizabeth McLean
                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone:  (212) 310-8000
                  Facsimile:  (212) 310-8007
                  jared.friedmann@weil.com
                  sarah.ryu@weil.com
                  elizabeth.mclean@weil.com

                  *Attorneys for Alibaba.com Singapore E-Commerce*
                  *Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.*