Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KELLY TOYS HOLDINGS, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> ALIALIALILL STORE, BABY -SHOPPING STORE, BAZINGA STORE, BBOTTRUOYS TOY STORE, BOBONIU STORE, CHENWANJU STORE, CHILDREN GROWING TREE STORE, CHINESE PLUSH TOY STORE, DONGGUAN SHENGEN HARDWARE PLASTIC CO., LTD., DONGGUAN WOODFIELD BABY PRODUCTS COMPANY LIMITED, DONGGUAN XINGKE GIFT CO., LTD., DROPSHIPPING-TOYS STORE, FAIRYLANDS TOY STORE, FCOT STORE, FOURTRY STORE, FRANCIS 001 STORE, FUN GAME FUN STORE, GUANGDONG SANSAN SUPPLY CHAIN CO., LTD., GUANGZHOU LITTLE TALENT TOYS CO., LTD., GUANGZHOU YIMAI TRADING CO., LTD., HANGZHOU AGREAT IMPORT & EXPORT CO., LTD., HEBEI KUNI ANIMATION INDUSTRY CO., LTD., HENAN YINGHUOZHIGUANG CULTURE MEDIA CO., LTD., MIKECRACK STORE, MONSTER JELLIE CULTURE CO., LTD., MOVING DREAMING STORE, NANJING RUIFUTONG ARTS AND TOYS MANUFACTURING CO., LTD., QWJA STORE, SHANGHAI QIANJIU TRADING CO., LTD., SHENZEN TONGFEI INTERNATIONAL TRADE CO., LTD., SHENZHEN HECHUN TECHNOLOGY CO., LTD., | **CIVIL ACTION NO.:** <br> **21-cv-8434 (AKH)** |

SHENZHEN QINGHONG TOYS CO., LTD., SHOP5477120
STORE, SHOP910893006 STORE, SI TING STORE, SZ
GTEAK TECHNOLOGY CO., LIMITED, TC XRC STORE
STORE, TIKTOK IP STORE, VL STORE, XINXIANG
PURUIGE IMPORT AND EXPORT TRADING CO., LTD.,
YAMONG          STORE,          YANGZHOU          AIXINI
INTERNATIONAL TRADE IMPORT AND EXPORT CO.,
LTD., YANGZHOU AORUNJU GIFTS CO., LTD.,
YANGZHOU BABYJOY ARTS & CRAFTS CO., LTD.,
YANGZHOU CUTESHOOT PLUSHIES CO., LTD.,
YANGZHOU DULALA CRAFTS LTD., YANGZHOU
KINGSTONE TOYS CO., LTD., YANGZHOU MARISA
TOY GIFTS CO., LTD., YANGZHOU SCS HOMETEXTILE
CO., LTD., YANGZHOU WEIHU HANDICRAFT CO.,
LTD., YANGZHOU WOSEN TOYS CO., LTD., YIWU
CHUANYU IMPORT AND EXPORT FIRM, YIWU
DUOTONG E-COMMERCE CO., LTD., YIWU FUGUAN
HOUSEHOLD SUPPLIES CO., LTD., YIWU HAIPING
BAG FACTORY, YIWU QUANFA IMPORT & EXPORT
COMPANY LIMITED, YIWU VICTORY IMPORT &
EXPORT CO., LTD., YIWU XINTU IMPORT AND
EXPORT CO., LTD., YIWU YINWEI HOUSEHOLD
PRODUCTS CO., LTD., YIWU ZHENGZHI QIN TRADING
FIRM and ZHANJIANG DYNAMIC POINT NETWORK
TECHNOLOGY CO., LTD.,

*Defendants*

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ALIBABA.COM SINGAPORE E-COMMERCE PTE. LTD. and ALIEXPRESS E-COMMERCE ONE PTE. LTD.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................. 5

III.  ARGUMENT ......................................................................................................... 5

   A.    PLAINTIFF ADEQUATELY PLED ITS CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT AGAINST ALIBABA DEFENDANTS ........................... 5

      *1.   Contributory Trademark Infringement Under Inwood and Tiffany II* ............................ 5

      *2.   Plaintiff Has Sufficiently Pled Alibaba Defendants' Requisite Knowledge* ..................... 7

          **i.**    Plaintiff Has Sufficiently Pled Alibaba Defendants' Contemporary Knowledge ...... 8

          **ii.**   Plaintiff Has Sufficiently Pled Alibaba Defendants' Willful Blindness.................. 15

      *3.   Plaintiff Has Sufficiently Pled Alibaba Defendants' Direct Control* ............................ 17

   B.    PLAINTIFF HAS ADEQUATELY ALLEGED ITS CLAIMS FOR CONTRBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT ............................................. 19

      *1.   Plaintiff Sufficiently Alleges that Alibaba Defendants Are Liable for Contributory Copyright Infringement* ........................................................................................... 20

      *2.   Plaintiff Sufficiently Alleges that Alibaba Defendants Are Liable for Vicarious Copyright Infringement* ........................................................................................... 24

IV.  CONCLUSION ................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................. 9, 20, 25

*Arista Records, Inc. v. MP3Board, Inc.,* 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165
(S.D.N.Y. Aug. 28, 2002) ......................................................................................................... 25

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 5

*BMW of N. Am., LLC v. S.F. Express Corp.*, Case No. 2:20-cv-01574-AB-JPRx, 2020 U.S. Dist.
LEXIS 257520 (C.D. Cal. Aug. 6, 2020)................................................................................... 19

*Bus. Casual Holdings, LLC v. YouTube, LLC*, 2023 U.S. App. LEXIS 27511 (2d Cir. N.Y., Oct.
17, 2023) .................................................................................................................................... 23

*Business Casual Hldgs., LLC v. YouTube, LLC*, 21-cv-3610 (JGK), 2022 WL 17177970
(S.D.N.Y. Nov. 22, 2022) .......................................................................................................... 23

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014) passim

*Capitol Recs. LLC v. ReDigi*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013).................................... 21, 25

*Chloe SAS v. Sawabeh Information Services Co.,* 2013 U.S. Dist. LEXIS 187398 (C.D. Cal. Oct.
8, 2013) ........................................................................................................................................ 6

*Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-1272 (DRH)(SIL), 2016 U.S. Dist. LEXIS 36249
(E.D.N.Y. Mar. 21, 2016) ............................................................................................................ 9

*Ferring B.V. v. Fera Pharms., LLC*, 2015 U.S. Dist. LEXIS 100553 (E.D.N.Y. July 6, 2015)... 10

*Graham Hanson Design LLC v. 511 9th LLC*, 2011 U.S. Dist. LEXIS 18623 (S.D.N.Y. Feb. 24,
2011) ............................................................................................................................................. 5

*Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010)....... 7, 8, 15

*Hand & Nail Harmony, Inc. v. Lenguyen*, No. SACV 13-1021 JLS, 2013 WL 7389424 (C.D.
Cal. Nov. 19, 2013)...................................................................................................................... 7

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992)........ 7

*Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 U.S. Dist. LEXIS 157035, 2021
WL 3683510 (S.D.N.Y. Aug. 19, 2021) .................................................................................... 20

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)................................................... 5, 6, 7

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542 (S.D.N.Y. 2011)............... 5

*Lockeed Martin Corp. v. Network Solutions, Inc.*, 194 F 3d. 980 (9th Cir. 1999) ....................... 17

*Lopez v. Adidas Am.*, No. 19-cv-7631 (LJL), 2020 U.S. Dist. LEXIS 88375 (S.D.N.Y. May 19,
2020) ............................................................................................................................................. 8

*Lopez v. BigCommerce, Inc.*, No. 16-cv-8970 (JPO), 2017 U.S. Dist. LEXIS 120842 (S.D.N.Y.
Aug. 1, 2017) ............................................................................................................................... 8

*Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715 (S.D.N.Y.
Sept. 30, 2019) ............................................................................................................................. 8

*Lopez v. Cookies SF, LLC*, No. 21-CV-05002 (RA), 2022 U.S. Dist. LEXIS 171710 (S.D.N.Y.
Sep. 22, 2022) .............................................................................................................................. 8

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 2010 U.S. Dist. LEXIS 85266 (N.D. Cal.,
Mar. 19, 2010)............................................................................................................................... 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L.
Ed. 2d 781 (2005) ...................................................................................................................... 27

*Omega SA v. 375 Canal, LLC*, 984 F.3d 244 (2d Cir. 2021).................................................. 7, 15

*Omega SA v. 375 Canal, LLC*, No. 12-CV-6979, 2013 U.S. Dist. LEXIS 71473 (S.D.N.Y. May
20, 2013) .................................................................................................................................... 17

*Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648 (S.D.N.Y. 1994).........................7

*Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376 (S.D.N.Y. 2016) ..................... 23, 24, 27

*Slep-Tone Entm't Corp. v. Golf 600 Inc.*, 193 F.Supp.3d 292 (S.D.N.Y. 2016) ..........................8

*Slep-Tone Entm't Corp. v. Golf 600 Inc.*, 193 F. Supp. 3d 292 (S.D.N.Y. 2016).........................9

*Smith v. BarnesandNoble.com*, LLC, 143 F. Supp. 3d 115 (S.D.N.Y. 2015) (internal citations omitted)..........................................................................................................................9

*Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755 (C.D. Cal. 2015) ................... 4, 11, 19

*Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-KAW, 2016 U.S. Dist. LEXIS 143530 (N.D. Cal. Oct. 14, 2016)....................................................................................... 9, 10, 11

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008) ..................................... 6, 7

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................... 6, 8, 15, 17

*Twitter, Inc v. Taamneh*, 598 U.S. __, 143 S. Ct. 1206 (2023) ................................................... 20

*Umg Recording v. Escape Media Grp.*, 2014 U.S. Dist. LEXIS 137491 (S.D.N.Y. Sep. 29, 2014) ...................................................................................................................................... 27

*Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610 (S.D.N.Y. 2013)................................ 20

## GLOSSARY

| Term | Definition | Docket Entry Number |
|------|-----------|---------------------|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC | N/A |
| **Merchant Defendants** | alialialiLL Store, baby -shopping Store, Bazinga Store, BBOTTRUOYS Toy Store, boboniu Store, chenwanju Store, Children Growing Tree Store, Chinese Plush Toy Store, Dongguan Shengen Hardware Plastic Co., Ltd., Dongguan Woodfield Baby Products Company Limited, Dongguan Xingke Gift Co., Ltd., Dropshipping-Toys Store, Fairylands Toy Store, FCOT Store, Fourtry Store, Francis 001 Store, Fun Game Fun Store, Guangdong Sansan Supply Chain Co., Ltd., Guangzhou Little Talent Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hangzhou Agreat Import & Export Co., Ltd., Hebei Kuni Animation Industry Co., Ltd., Henan Yinghuozhiguang Culture Media Co., Ltd., Mikecrack Store, Monster Jellie Culture Co., Ltd., Moving Dreaming Store, Nanjing Ruifutong Arts And Toys Manufacturing Co., Ltd., QWJA Store, Shanghai Qianjiu Trading Co., Ltd., Shenzen Tongfei International Trade Co., Ltd., Shenzhen Hechun Technology Co., Ltd., Shenzhen Qinghong Toys Co., Ltd., Shop5477120 Store, Shop910893006 Store, SI TING Store, SZ Gteak Technology Co., Limited, TC XRC Store Store, TIKTOK IP Store, VL Store, Xinxiang Puruige Import And Export Trading Co., Ltd., YaMong Store, Yangzhou Aixini International Trade Import And Export Co., Ltd., Yangzhou Aorunju Gifts Co., Ltd., Yangzhou Babyjoy Arts & Crafts Co., Ltd., Yangzhou Cuteshoot Plushies Co., Ltd., Yangzhou Dulala Crafts Ltd., Yangzhou Kingstone Toys Co., Ltd., Yangzhou Marisa Toy Gifts Co., Ltd., Yangzhou SCS Hometextile Co., Ltd., Yangzhou Weihu Handicraft Co., Ltd., Yangzhou Wosen Toys Co., Ltd., Yiwu Chuanyu Import And Export Firm, Yiwu Duotong E-Commerce Co., Ltd., Yiwu Fuguan Household Supplies Co., Ltd., Yiwu Haiping Bag Factory, Yiwu Quanfa Import & Export Company Limited, Yiwu | N/A |

| Term | Definition | Docket Entry Number |
|------|-----------|---------------------|
|  | Victory Import & Export Co., Ltd., Yiwu Xintu Import And Export Co., Ltd., Yiwu Yinwei Household Products Co., Ltd., Yiwu Zhengzhi Qin Trading Firm and Zhanjiang Dynamic Point Network Technology Co., Ltd. |  |
| Alibaba Defendants | Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd. | N/A |
| Defendants | Merchant Defendants and Alibaba Defendants | N/A |
| Alibaba | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York, and provides services in participation with the same | N/A |
| AliExpress | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York, and provides services in participation with the same | N/A |
| Alibaba Platforms | Alibaba, AliExpress, 1688.com, Taobao.com and Tmall.com | N/A |
| Alibaba Websites | Alibaba.com and AliExpress.com | N/A |
| Epstein Drangel | Epstein Drangel LLP, counsel for Plaintiff | N/A |
| New York Address | 244 Madison Ave, Suite 411, New York, NY 10016 | N/A |
| Complaint | Plaintiff's Complaint filed on October 13, 2021 | 8 |
| FAC | Plaintiff's First Amended Complaint filed on July 31, 2023 | 81 |
| Application | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Merchant Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery filed on October 13, 2021 | 14-16 |
| Kelly Dec. | Declaration of Jonathan Kelly in Support of | 15 |

| Term | Definition | Docket Entry Number |
|------|-----------|---------------------|
| | Plaintiff's Application | |
| Futterman Dec. | Declaration of Danielle S. Futterman in Support of Plaintiff's Application | 17 |
| TRO | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on October 25, 2021 | 17 |
| PI Show Cause Hearing | November 12, 2021 hearing to show cause why a preliminary injunction should not issue | N/A |
| PI Order | Preliminary Injunction Order entered on November 12, 2021 | 10 |
| Squishmallows Application | U.S. Trademark Serial Application No.: 90/676,140 for "ORIGINAL SQUISHMALLOWS," for goods in Class 28 | N/A |
| Squishmallows Registrations | U.S. Trademark Registration Nos.: 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28 | N/A |
| Squishmallows Marks | The marks covered by the Squishmallows Registrations and Squishmallows Application | N/A |
| Squishmallows Works | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint | N/A |
| Squishmallows Products | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys, and have expanded to other styles including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows. | N/A |
| Counterfeit Products | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works | N/A |

| Term | Definition | Docket Entry Number |
|------|-----------|---------------------|
| | and/or products that are identical or confusingly or substantially similar to the Squishmallows Products | |
| Infringing Listings | Merchant Defendants' listings for Counterfeit Products | N/A |
| Merchant User Accounts | Any and all websites and any and all accounts with online marketplace platforms such as the Alibaba Platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| Merchant Storefronts | Any and all Merchant User Accounts through which Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| Merchant Defendants' Assets | Any and all money, securities or other property or assets of Merchant Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| Merchant Defendants' Financial Accounts | Any and all financial accounts associated with or utilized by any Merchant Defendants or any Merchant User Accounts or Merchant Storefront(s) (whether said accounts are located in the U.S. or abroad) | N/A |
| Financial Institutions | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), Alipay.com Co., Ltd. and Ant Financial Services Group (collectively "AliPay") and PingPong Global Solutions, Inc. ("PingPong") | N/A |
| Service Providers | Online marketplace platforms, including, without limitation, the Alibaba Platforms, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are | N/A |

| Term | Definition | Docket Entry Number |
|---|---|---|
| | hereinafter identified as a result of any order entered in this action, or otherwise | |
| **Permanent Injunction Order** | Order and Opinion adopting Magistrate's Report and Recommendations and granting Plaintiff's Motion for Default Judgment and a Permanent Injunction entered on June 9, 2022 | 40 |
| **Contempt Motion** | Plaintiff's motion requesting to (1) direct certain Defendants to comply with the directives of the Permanent Injunction Order; (2) direct Alibaba Defendants to cease aiding and abetting Defendants in continuing to engage in their illegal counterfeiting activities in violation of the Permanent Injunction Order; and (3) hold certain Merchant Defendants, Alibaba Defendants in contempt for their continuing violations of the Permanent Injunction Order and aiding and abetting of the same filed on April 28, 2023 | 41-43 |
| **Previous Actions** | *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021) ("*Squishmallows I*"); *Kelly Toys Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., et al.*, Case No. 21-cv-6029 (LGS) (S.D.N.Y. 2021) ("*Squishmallows II*") | N/A |

Plaintiff[1], through its undersigned counsel, hereby respectfully submits this Memorandum of Law in Opposition to Alibaba Defendants' Motion to Dismiss the FAC (hereinafter, "Opposition", and "MTD", respectively). (Dkt. 86).

## I.    **INTRODUCTION**

Alibaba Defendants define the FAC as "a second bite at the apple" after this Court failed to hold "the Alibaba Defendants liable as non-parties for purportedly aiding and abetting the Merchant Defendants' violations of the permanent injunction". What the Alibaba Defendants fail to recall is that this Court encouraged Plaintiff to consider suing the Alibaba Defendants: "I think the next course you ought to take, and I think you should have taken it long before, is to direct your anger against Alibaba itself. Find the right party, and sue it…" (May 30, 2023 Hearing Transcript ("Hearing Tr."), 45:15-18). (Dkt. 60). Thereafter, on July 26, 2023, this Court granted Plaintiff's request to reopen the action and amend the pleadings. (Dkt. 74). Moreover, a holding of contempt for aiding and abetting is a whole different apple than claims for contributory infringement--rather than a bite at the same one—and here, the FAC clearly sufficiently alleges Plaintiff's contributory infringement claims.

Alibaba Defendants' MTD, which reads like a summary judgment motion in its utter disregard of the well-pled facts in the FAC and inclusion of facts that are outside of the FAC, also misapplies procedural and substantive law. Alibaba Defendants spend an exorbitant amount of time attempting to establish the "facts" regarding what Plaintiff failed to, chose to or choose not to do to protect its brand on the Alibaba Platforms and what Alibaba Defendants do generally for brand owners to combat infringement on the Alibaba Platforms, specifically claiming that Plaintiff could have "simply provid[ed] notice to the Alibaba Defendants of allegedly infringing listings"

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary and First Amended Complaint.

1

as opposed to filing a lawsuit seeking injunctive relief. MTD, p. 6. What Alibaba Defendants fail to understand or acknowledge is that their Three Strike Policy is ineffective to curtail counterfeiting on the Alibaba Platforms and, more noteworthy, the services they provide have not only encouraged, but assisted the proliferation of counterfeit products available on the Alibaba Platforms – a fact that is confirmed by the Alibaba Platforms' inclusion on the Notorious Market List issued by the U.S. government for two years running.[2]

With clear knowledge through, at the very least, Alibaba Defendants' receipt of service of the TRO, PI Order and Permanent Injunction Order and at least two (2) Previous Actions, Alibaba Defendants encouraged and assisted, Merchant Defendants' counterfeiting activities by (1) continuing to provide Merchant Defendants with the services necessary to operate Merchant Defendants' User Accounts and Merchant Storefronts, thereby supporting Merchant Defendants in selling Counterfeit Products in violation of the Permanent Injunction Order; (2) promoting the sale of at least one Merchant Defendant's Counterfeit Products on Alibaba and AliExpress via email marketing; (3) providing "Gold Supplier" services to Merchant Defendants, *i.e.* known counterfeiters, who are selling Counterfeit Products, in exchange for a fee; (4) bidding and paying for keywords on Google.com to promote the sale of Counterfeit Products on the Alibaba Platforms; and (5) providing access to Merchant Defendants to bid and pay for keywords on the Alibaba Platforms to promote the sale of Counterfeit Products on the Alibaba Platforms – all for Alibaba Defendants' clear financial benefit.

Alibaba Defendants have additionally substantially supported Merchant Defendants'

---

[2] *Michelle Toh, The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html; *USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.

(among other merchants) counterfeiting activities by, *inter alia*, refusing to cease providing services to Merchant Defendants, even after Plaintiff has presented them with evidence of Merchant Defendants' violations of restraining orders in this action and similarly filed actions, which has made it nearly impossible for Plaintiff and other brand owners to stop repeat offenders from engaging in illegal counterfeiting on the Alibaba Platforms. Because of the Alibaba Defendants' refusal to, for example, restrain Defendants' Merchant Storefronts in actions filed subsequently to this one in violation of multiple temporary restraining orders and preliminary injunctions, in March of 2022, Epstein Drangel requested a call with Alibaba Defendants' outside counsel to discuss the repercussions of the Alibaba Defendants' failure to restrain Merchant Defendants' Merchant Storefronts and knowingly continue to provide services to Merchant Defendants after being put on notice of this Court's injunctions. (FAC, ¶ 65). Namely, Epstein Drangel discovered that numerous Merchant Defendants continued to sell Counterfeit Products despite having injunctions entered against them in previously filed lawsuits. *Id*., ¶¶ 70-71, 83. In fact, Epstein Drangel discovered that out of the four (4) Merchant Defendants in this action who were offering for sale and selling Counterfeit Products on the Alibaba Platforms after the entrance of the Permanent Injunction Order, Alibaba Defendants are providing Gold Supplier services to two (2) of these Merchant Defendants in exchange for a fee. *Id.* at ¶¶ 97-99. Additionally, after specifically receiving notice of the TRO, PI Order and Permanent Injunction Order, Alibaba Defendants promoted Merchant Defendants' Counterfeit Products via email advertisements, including Merchant Defendant BBOTTRUOYS Toy Store, who was specifically identified in the Contempt Motion. *Id.*, ¶ 124. Providing services to Merchant Defendants and advertising known counterfeiters' Counterfeit Products after being put on notice of the Permanent Injunction Order amounts to the Alibaba Defendants' aiding and abetting of Merchant Defendants' counterfeiting

operations.[3]

If anything, as more than adequately alleged in the FAC, Alibaba Defendants' conduct has gotten worse, not better, since 2015 when the Court in *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 766 (C.D. Cal. 2015) soundly held that the plaintiff could pursue its claims for contributory trademark infringement and denied Alibaba.com Hong Kong Ltd.'s motion to dismiss where Alibaba.com Hong Kong Ltd.:

> continued to supply its services to an entity it knew was engaging in trademark infringement. Also, because Defendant was allegedly capable of removing this user from its website service, Defendant had 'direct control and monitoring of the instrumentality used' by that party to infringe Plaintiff's trademarks. Because Plaintiff claims that Defendant knowingly allowed the infringing seller to continue listing counterfeit Spy merchandise and that Defendant controlled the platform the seller used to infringe Plaintiff's trademark, Plaintiff sufficiently states a claim for contributory trademark infringement.

While *Spy Optic* confirms that it only takes a single instance for Alibaba Defendants to be liable, here, Alibaba Defendants fail to acknowledge Plaintiff's robust allegations that at least four (4) Merchant Defendants posted new Infringing Listings for Counterfeit Products **after** Alibaba Defendants had been placed on notice of Merchant Defendants and their Infringing Listings on **multiple occasions**.

The MTD is nothing more than an insufficient attempt to shield Alibaba Defendants' ongoing illegal activities from their consumers and the public and avoid discovery into such activities while continuing to profit off the same, and this Court must not sanction this conduct. For the reasons set forth herein, Plaintiff respectfully requests that the Court deny the MTD.

---

[3] Notably, Alibaba Defendants have repeatedly ignored their own "three-strike policy" which clearly states that where a merchant on Alibaba engages in three "serious infringements", the penalty is account termination. https://rulechannel.alibaba.com/icbu?type=detail&ruleId=2043&cId=763#/rule/detail?cId=763&ruleId=2043. Epstein Drangel specifically reminded Alibaba Defendants of their own policy in an email to Alibaba Defendants' outside counsel. FAC, ¶¶ 66-68.

## II.    <u>LEGAL STANDARD</u>

A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to make a claim "plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible, and thus, should not be dismissed, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Graham Hanson Design LLC v. 511 9th LLC*, 2011 U.S. Dist. LEXIS 18623, *5 (S.D.N.Y. Feb. 24, 2011). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011). A court must not weigh the evidence, but instead must merely "determine whether the complaint itself is legally sufficient." *Id.* at 545.

Plaintiff is not required to defend the merits of its claims at the pleading stage or develop its legal theories before discovery in this matter. The MTD is rife with unsupported factual arguments, which are disputed by Plaintiff, and inappropriately asks this Court to make determinations of fact, conclusions of law, and weigh the sufficiency of Alibaba Defendants' defenses.

## III.    <u>ARGUMENT</u>

## A. PLAINTIFF ADEQUATELY PLED ITS CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT AGAINST ALIBABA DEFENDANTS

### 1.  <u>Contributory Trademark Infringement Under *Inwood* and *Tiffany II*</u>

The doctrine of contributory trademark infringement is a judicially constructed doctrine articulated by the Supreme Court in *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982), wherein the Supreme Court held that:

> if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer

5

> or distributor is contributorily responsible for any harm done as a result of the deceit.

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 502 (S.D.N.Y. 2008) ("*Tiffany I*") (quoting *Inwood*, 456 U.S. at 854) (emphasis added).

Without definitively deciding that *Inwood's* test for contributory infringement governs, in *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ("*Tiffany II*"), the Second Circuit applied the Supreme Court's *Inwood* framework in the context of "online marketplace", or specifically, an **online auction site**, for the first time. *See Tiffany II*, 600 F.3d at 106 . In doing so, the Court found that Tiffany's general allegations of counterfeiting occurring on eBay.com ("eBay") failed to provide eBay with the requisite knowledge for liability for contributory trademark infringement under *Inwood*, holding that, "[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany II*, 600 F.3d at 107-109.

Courts extending contributory infringement under *Inwood* to service providers require the defendant service provider (e.g., ISPs[4], online payment processors[5], b2b website operators[6],

---

[4] *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 2010 U.S. Dist. LEXIS 85266, at \*36 (N.D. Cal., Mar. 19, 2010) (finding defendants were contributorily liable when they were in a position to directly control and monitor the instrumentality used by direct infringers).
[5] *See Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010) (finding that even though a provider of credit card processing/electronic payment services for online merchants could not shut down the websites selling the counterfeit products, defendants' provision of such services provided sufficient control to hold them liable for contributory infringement because the websites could not sell and ship the counterfeit goods without the same).
[6] *Chloe SAS v. Sawabeh Information Services Co.*, 2013 U.S. Dist. LEXIS 187398, at \*21 (C.D. Cal. Oct. 8, 2013) (finding an operator of one of the world's largest business-to-business websites had the requisite control because, "[Defendant] monitors and controls every aspect of its website and all of its members' listings," and, specifically, "prevent[s] members from making any changes to listings," and found Defendants contributorily liable).

landlords[7], express delivery companies[8], etc.) to have "direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark," to impose liability. *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010) (internal quotation omitted); *see also Tiffany I.*, 576 F.Supp.2d at 505 ("The relevant inquiry is, instead, 'the extent of control exercised by the defendant over the third party's means of infringement.'"). Accordingly, even to the extent that the holding in *Tiffany II* extends *Inwood* to "online marketplace[s]", or more accurately to ***online auction sites***, similarly situated to eBay (which Alibaba Defendants are not), in order to escape liability under *Tiffany II,* Alibaba Defendants would have to prove that the Alibaba Platforms are indeed "online marketplace[s]", or more accurately ***online auction sites***, that exert no more control over the Merchant Defendants and their infringing activities than eBay, which is essentially a passive marketplace. The allegations of the FAC, which must be taken as true at this phase, demonstrate that Alibaba Defendants cannot do so. *See* Section III(A)(3) *infra*.

## 2.   Plaintiff Has Sufficiently Pled Alibaba Defendants' Requisite Knowledge

Alibaba Defendants spend an inordinate amount of time arguing that Plaintiff failed to plead that they had the requisite knowledge of specific infringing activity. MTD, pp. 14.-21 Plaintiff submits that knowledge of specific infringing activity is not required under *Inwood* or *Tiffany II* and, instead, the requisite knowledge is imputed to Alibaba Defendants based on the near complete control that they have over the Merchant Defendants' instrumentality of the infringement.[9]

---

[7] *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) (owner/operator of a flea market whose vendors were alleged to have sold infringing t-shirts); *Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648, 650 (S.D.N.Y. 1994) (lessor of premises to retailers selling counterfeit goods in New York City's Chinatown area).

[8] *Hand & Nail Harmony, Inc. v. Lenguyen*, No. SACV 13-1021 JLS, 2013 WL 7389424 (C.D. Cal. Nov. 19, 2013).

[9] In *Inwood*, the Supreme Court did not address the "knows or had reason to know prong", as it held that "the Court of Appeals erred in setting aside findings of fact that were not clearly erroneous", *Inwood*, 456 U.S. at 857, thereby accepting the test for knowledge that was used by the lower courts, including those considering general knowledge.

Nevertheless, Plaintiff has pled more than sufficient facts that Alibaba Defendants (1) "knew or had reason to know" of the rampant infringement occurring on Alibaba.com/Aliexpress.com under *Inwood*; (2) had "contemporary knowledge of which particular listings are infringing or will infringe in the future" under *Tiffany II*; and (3) "***willfully shut[] [their] eyes to the infringing conduct***…". *Gucci Am.,* 721 F. Supp. 2d 228 (emphasis added); *see also Tiffany II* at 109-10 ("When [a service provider] has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way.").

### i.    ***Plaintiff Has Sufficiently Pled Alibaba Defendants' Contemporary Knowledge***

In the MTD, Alibaba Defendants seem to suggest a new heightened knowledge standard based on language in *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715, at *15-16 (S.D.N.Y. Sept. 30, 2019)[10], claiming that, "the defendant must have 'actual or constructive knowledge of *specific and identifiable infringements of individual items*.'" MTD, p. 15. Alibaba Defendants further mistakenly contend that "the law requires notice of specific infringing content" (MTD, p. 16) and that Plaintiff's identification of the Merchant Defendants in Previous Actions and the instant action does not plausibly allege knowledge of subsequent infringements (*see generally* MTD, pp. 16-17). However, the foregoing position is directly belied by courts within this Circuit interpreting *Tiffany II*, including *Slep-Tone Entm't Corp. v. Golf 600 Inc.*, 193 F.Supp.3d 292, 298 (S.D.N.Y. 2016), which held that the defendant's relationship with

---

[10] Alibaba Defendants rely heavily on this case where, in stark contrast to the instant action, the *pro se* plaintiff that has brought a litany of lawsuits in this district against various corporate entities for alleged Lanham Act claims and has consistently failed to properly allege such claims, attempted to allege claims for contributory infringement, and only alleged that defendants "continu[ed] to provide" services to third parties known "to be engaged in infringing activities against Plaintiff's trademarks," but did not allege particular infringing acts. *Lopez*, 2019 U.S. Dist. LEXIS 170715 (granting motion to dismiss); *See also e.g.*, *Lopez v. Cookies SF, LLC*, No. 21-CV-05002 (RA), 2022 U.S. Dist. LEXIS 171710, at *3 (S.D.N.Y. Sep. 22, 2022); *Lopez v. Adidas Am.*, No. 19-cv-7631 (LJL), 2020 U.S. Dist. LEXIS 88375 (S.D.N.Y. May 19, 2020) (granting motion to dismiss); *Lopez v. BigCommerce, Inc.*, No. 16-cv-8970 (JPO), 2017 U.S. Dist. LEXIS 120842 (S.D.N.Y. Aug. 1, 2017) (same).

"identified individuals known by it to be engaging in continuing infringement" constituted more than "general knowledge". *See also Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-KAW, 2016 U.S. Dist. LEXIS 143530, at *21 (N.D. Cal. Oct. 14, 2016) (declining to dismiss a contributory infringement claim where the plaintiff had alleged that on at least one occasion, the defendant had allowed ***a known infringer*** to continue using its website to post infringing products, even after the plaintiff alerted the defendant that the seller was infringing).

Plaintiff's burden, at the motion to dismiss phase, is to ***plead***, not *prove*, that the Alibaba Defendants had knowledge of Merchant Defendants' and their infringing and counterfeiting activities. *See, e.g.*, *Graham Hanson Design*, 2011 U.S. Dist. LEXIS 18623. Plaintiff not only identified specific Counterfeit Products and Infringing Listings, but also specific Merchant Defendants listing the Counterfeit Products[11] on multiple occasions including: (1) in two (2) Previous Actions (FAC, ¶¶ 62, 63); (2) via e-mail in the April 14, 2022 Communication (FAC, ¶¶ 67-68); (3) when the Complaint in this action was filed (Complaint, Ex. D); (4) when the TRO, PI Order and Permanent Injunction Order were entered in this action (FAC, ¶¶ 73-74, 76-77, 80-81); and (5) when Plaintiff filed its Contempt Motion (FAC, ¶ 84).[12] With the foregoing specific knowledge, the Alibaba Defendants, by way of an illustrative example, sent an email advertisement promoting Merchant Defendant BBOTTRUOYS Toy Store's Counterfeit Products.

---

[11] *See, e.g. Slep-Tone Entm't Corp.*, 193 F. Supp. 3d at 298 (finding that defendant had requisite knowledge based on two warning letters that placed it on notice of the direct infringer's trademark infringement and informed defendant that its continued relationship with the direct infringer subjected it to liability).

[12] Alibaba Defendants' contention that Plaintiff only makes conclusory allegations that Alibaba Defendants knew or should have known of the specific infringements through "press coverage" is patently false. First, Plaintiff in no way alleges that the sole basis for Alibaba Defendants' knowledge is "press coverage". Second, "[e]vidence of actual and constructive knowledge may be found in 'cease-and-desist letters, officer and employee statements, promotional materials, and industry experience.'" *See Smith v. BarnesandNoble.com*, LLC, 143 F. Supp. 3d 115,124 (S.D.N.Y. 2015) (internal citations omitted); *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011); *also Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-1272 (DRH)(SIL), 2016 U.S. Dist. LEXIS 36249, at *9 (E.D.N.Y. Mar. 21, 2016) (finding plaintiff's allegations that its trade dress is "well known to the consuming public and trade" was sufficient at the pleading stage to create the plausible inference that defendant had constructive knowledge of the direct infringer's purported infringement).

In claiming that they did not have knowledge of the specific listings that would infringe, Alibaba Defendants disingenuously focus only on knowledge of particular listings that Plaintiff identified that *are* infringing or *were* infringing at the time that Plaintiff placed Alibaba Defendants on notice of the same,[13] but conveniently completely ignore the knowledge that Plaintiff has alleged Alibaba Defendants have of those listings that ***will infringe in the future***.

With respect to the notice provided to Alibaba Defendants via the Previous Actions[14], which were served on Alibaba Defendants, as alleged in the FAC, ***prior*** to the filing of the instant action, the complaints in each and every one of those Previous Actions alleged that:

> Defendants ***are not, and have never been***, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Squishmallows Products or to use the Squishmallows Marks and/or Squishmallows Works, or any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and Squishmallows Works.[15]

In addition, Alibaba Defendants were provided with specific Infringing Listings, links to Merchant Defendants' Merchant Storefronts, and registrations for the Squishmallows Marks and Squishmallows Works.[16] Complaint, ¶¶ 6, 15, 18; FAC, ¶¶ 62, 65. Accordingly, Alibaba Defendants were on notice that all Merchant Defendants (among other defendants) named in the

---

[13] As discussed in further detail below, Plaintiff has specifically alleged in the FAC that Alibaba Defendants knew that ***none*** of the Merchant Defendants identified to Alibaba Defendants on multiple occasions were authorized to sell Squishmallows Products or use the Squishmallows Marks or Squishmallows Works. Complaint, ¶ 34; FAC, ¶ 47.

[14] *Ferring B.V. v. Fera Pharms., LLC*, 2015 U.S. Dist. LEXIS 100553 at *11 (E.D.N.Y. July 6, 2015) (sustaining a contributory trademark infringement claim against manufacturers on the grounds that one defendant had "continued to provide infringing products, labels, packaging, and advertising" to the other *after the plaintiff had commenced administrative and legal proceedings for trademark infringement*).

[15] This is also alleged in the Complaint and FAC in the instant action. Complaint, ¶ 34; FAC, ¶ 47.

[16] The specificity, and detail, of the notice that Alibaba Defendants were given here is more robust than any notice Alibaba Defendants would have received via their notice and takedown system. While Alibaba Defendants feign ignorance on the basis that the complaints in the Previous Actions and the Complaint in the instant action only identify a single listing for most of the Merchant Defendants, the number of specific listings that Plaintiff identifies is irrelevant where, as here, Plaintiff identified the specific infringers on multiple occasions and on each occasion identified additional listings that infringed. *See Spy Phone Labs LLC*, 2016 U.S. Dist. LEXIS 143530, at *21 (Plaintiff does at this stage allege a claim as to apps from developers that Plaintiff had previously reported to have infringed on its trademark).

Previous Actions were not authorized to sell Squishmallows Products or use the Squishmallows Marks or Squishmallows Works, and of examples of listings for Counterfeit Products offered by such defendants. Based on this allegation alone, Alibaba Defendants were on notice that ***any subsequent use*** of the Squishmallows Marks or Squishmallows Works by the Merchant Defendants named in this Previous Actions ***would be infringing in the future***.

The instant action is akin to *Spy Optic* wherein the Court refused to dismiss a plaintiff's contributory infringement claim against Alibaba Defendants' predecessor where on one occasion, Alibaba.com allowed the infringing vendor to post "multiple infringing products" after the plaintiff identified the trademark infringement. *Spy Optic*, 163 F. Supp. 3d at 766. Likewise, in *Spy Phone*, the Court denied a motion to dismiss where the plaintiff alleged that Google allowed a vendor to release an infringing app after being placed on notice that the vendor's released app was infringing Spy Phone's trademark. 2016 U.S. Dist. LEXIS 143530 at *6.

In light of *Spy Optic* and *Spy Phone,* the allegations made against the Alibaba Defendants in the FAC with respect to Merchant Defendant Yiwu Fuguan Household Supplies Co., Ltd. ("Yiwu Fuguan") alone, would be sufficient to survive the MTD.[17] Per the FAC, Alibaba Defendants were placed on notice of Defendant Yiwu Fuguan, who is also a "Gold Supplier", and its specific counterfeiting activities when the TRO was initially entered in the instant action. Despite receiving notice of the TRO, PI Order, Permanent Injunction Order and Contempt Motion, Yiwu Fuguan was listing Counterfeit Products for sale on May 23, 2023 and again on July 10, 2023. *Id*., ¶¶ 87, 89, 99.  In fact, Yiwu Fuguan is presently egregiously listing twelve (12) Infringing Listings for Counterfeit Products (with each Infringing Listing offering numerous

---

[17] Importantly, in order for Plaintiff to have a viable claim of contributory infringement, it need not demonstrate that Alibaba Defendants are secondarily liable for the conduct of each and every Merchant Defendant.

variations of Counterfeit Products for sale at wholesale quantities)[18] despite the five (5) explicit

notifications Plaintiff has given the Alibaba Defendants of Yiwu Fuguan's counterfeiting

activities.[19] Furthermore, Alibaba Defendants feign an "impairment" to removing Yiwu Fuguan's

Infringing Listing, claiming they did not have the URL or any "detail regarding the purported

listings". MTD. p. 13. Yet Alibaba Defendants, with knowledge that Yiwu Fuguan was offering

Counterfeit Products for sale when Plaintiff filed the Contempt Motion and FAC, never asked

Plaintiff for further details or URLs for the Infringing Listings.  Likewise, some of Yiwu Fuguan's

present Infringing Listings use one or more of the Squishmallows Marks and/or are identical to

---

[18] Yiwu Fuguan's current twelve (12) Infringing Listings for Counterfeit Products can be accessed at the following links: (1) https://www.alibaba.com/product-detail/Top-Fashion-2022-Hot-Selling-Kawaii_1600828796959.html?spm=a2700.shop_plgr.41413.20.1c24616ePRdsB1 (2) https://www.alibaba.com/product-detail/Wholesale-Cartoon-Rainbow-Cow-Cute-Kawaii_1600834690669.html?spm=a2700.shop_plgr.41413.88.1c24616ePRdsB1 (3) https://www.alibaba.com/product-detail/8-12-16-Inch-Animal-Axolotl_1600835510618.html?spm=a2700.shop_plgr.41413.98.1c24616ePRdsB1 (4) https://www.alibaba.com/product-detail/2023-New-20cm-Plush-Toy-Bee_1600835581490.html?spm=a2700.shop_plgr.41413.108.1c24616ePRdsB1 (5) https://www.alibaba.com/product-detail/Most-Popular-Custom-High-Quality-Cartoon_1600845744481.html?spm=a2700.shop_plgr.41413.236.1c24616ePRdsB1 (6) https://www.alibaba.com/product-detail/Top-Fashion-2022-Hot-Selling-Kawaii_1600828796959.html?spm=a2700.shop_pl.41413.48.22b3616eHgIjNe (7) https://www.alibaba.com/product-detail/Custom-Super-Soft-Elastic-Squishy-Xmas_1600832928785.html?spm=a2700.shop_pl.41413.68.22b3616eHgIjNe (8) https://www.alibaba.com/product-detail/Wholesale-Cartoon-Rainbow-Cow-Cute-Kawaii_1600834690669.html?spm=a2700.shop_pl.41413.116.22b3616eHgIjNe (9) https://www.alibaba.com/product-detail/8-12-16-Inch-Animal-Axolotl_1600835510618.html?spm=a2700.shop_pl.41413.126.22b3616eHgIjNe (10) https://www.alibaba.com/product-detail/2023-New-20cm-Plush-Toy-Bee_1600835581490.html?spm=a2700.shop_pl.41413.136.22b3616eHgIjNe (11) https://www.alibaba.com/product-detail/Most-Popular-Custom-High-Quality-Cartoon_1600845744481.html?spm=a2700.shop_pl.41413.184.22b3616eHgIjNe (12) https://www.alibaba.com/product-detail/Cute-Cartoon-Dumb-Fudge-Series-Chubby_1600851860272.html?spm=a2700.shop_pl.41413.310.22b3616eHgIjNe (each last accessed October 25, 2023). The Alibaba Defendants are presently allowing Yiwu Fuguan to sell Counterfeit Products despite receiving, at minimum, the following five (5) notices of its counterfeiting activities: (1) the TRO; (2) the PI Order; (3) the Permanent Injunction Order; (4) the Contempt Motion; and (5) Plaintiff specifically highlighting Yiwu Fuguan as an example in the FAC.
[19] In the MTD, Alibaba Defendants claim that "Plaintiff and its counsel elected to withhold evidence of these infringements rather than submit takedown notices to Alibaba Defendants"; however, there is no affirmative obligation under the law to use Alibaba Defendants' takedown system in lieu of, or prior to seeking relief from this Court; and as discussed *supra*, the notice provided by Plaintiff is actually more substantial than that which would have been provided under Alibaba Defendants' takedown scheme.

Yiwu Fuguan's previous Infringing Listings, thus making it abundantly clear to the Alibaba
Defendants that such listings are infringing.

| Yiwu Fuguan's Infringing Listing Discovered During Epstein Drangel's April 26, 2023 and May 23, 2023 Investigations | Yiwu Fuguan's Infringing Listing Discovered by Epstein Drangel on October 25, 2023 |
|---|---|
|  | |

The Alibaba Defendants' references to the fact that Merchant Defendants' Infringing
Listings in Previous Actions "bear no resemblance" to the Infringing Listings subsequently
identified in the instant action and that Plaintiff "misleadingly uses the term re-list" are of no
moment. First because, as evidenced above by Merchant Defendant Yiwu Fuguan's Infringing
Listings, some Merchant Defendants are in fact relisting **_identical_** Infringing Listings and
Counterfeit Products. Regardless, Alibaba Defendants improperly treat the term "relist" as though
it is a term of art. Plaintiff repeatedly claimed that the Alibaba Defendants aided and abetted
Merchant Defendants in continuing to sell and/or relist *Counterfeit Products*, which are defined in
the glossaries of the Complaint, FAC, TRO, PI Order (among other documents filed in this action)
as:

> Products bearing or used in connection with the Squishmallows Marks and/or
> Squishmallows Works, and/or products in packaging and/or containing labels

and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products

Plaintiff never represented to the Court that Merchant Defendants relisted *Infringing Listings* (which was defined in the various glossaries as "Defendants' listings for Counterfeit Products"), but instead clearly argued that Merchant Defendants relisted *Counterfeit Products*, which they unequivocally did. The Alibaba Defendants are unquestionably aware, and explicitly acknowledge that the Squishmallows Products encompass a wide range of characters protected by numerous trademarks and copyrights. (MTD, p. 4, Alibaba Defendants acknowledging that there are close to 3,000 types of Squishmallows Products on the market). Thus, a Merchant Defendant offering for sale and/or selling a Counterfeit Product purporting to be any of the 3,000 variations of the Squishmallows Products constitutes an infringement and/or counterfeiting.  In fact, to the extent that the Alibaba Defendants were unaware of whether a particular Squishmallows Work was infringed, each of the examples referenced on page 18 of the MTD clearly uses one or more of the Squishmallows word marks in the respective Infringing Listing titles, which should be easily identifiable for the Alibaba Defendants. The Alibaba Defendants knew that ***none*** of the Merchant Defendants identified to Alibaba Defendants on multiple occasions were authorized to sell Squishmallows Products or use the Squishmallows Marks or Squishmallows Works. Complaint, ¶ 34; FAC, ¶ 47. Regardless of whether or not the items looked similar, Alibaba Defendants were specifically made aware that none of the defendants in Previous Actions or Merchant Defendants had authorization to use any of the Squishmallows Marks in connection therewith. *See id.*

Finally, there is simply no good faith argument that *Tiffany II* stands for the broad immunity that Alibaba Defendants seek here. In *Tiffany II,* after a week-long bench trial, with a well-

14

developed factual record before it, the Court held that eBay was not liable for infringement "***under these facts of this case***".[20] *Id*. at 600 F.3d at 108. The facts, and procedural posture of this case are starkly different, and as such, Alibaba Defendants' attempt to liken itself to eBay is disingenuous, at best.

### ii.   *Plaintiff Has Sufficiently Pled Alibaba Defendants' Willful Blindness*

While it is clear from the foregoing that Plaintiff has sufficiently alleged Alibaba Defendants' contemporary knowledge, Plaintiff has also sufficiently alleged that Alibaba Defendants were willfully blind to Merchant Defendants infringing conduct. FAC, ¶¶ 197, 208. In *Tiffany II*, the Second Circuit acknowledged that a defendant could be found to "know or ha[ve] reason to know" of trademark infringement where a defendant "had reason to suspect that counterfeit . . . goods were being sold through its website, and ***intentionally shielded itself from discovering the offending listings*** or the identity of the sellers behind them . . . ." 600 F.3d at 109. (emphasis added). Thus, "[a] service provider is not . . . permitted willful blindness. When it has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way." *Id*.; *see also Gucci Am., Inc.*, 721 F. Supp. 2d at 249 ("Even if a defendant does not seek out and intentionally induce a third-party to commit trademark infringement, it may still be held liable for the infringement if it supplied services with knowledge or by willfully shutting its eyes to the infringing conduct, while it had sufficient control over the instrumentality used to infringe.").

In reliance on *Tiffany II*, the Second Circuit, in *Omega SA*, 984 F.3d at 254 - 55, expanded

---

[20] While irrelevant for a motion to dismiss, notably, in *Tiffany II*, upon receiving generalized notice of infringements, eBay took many proactive actions, e.g. took down challenged listings promptly, warned sellers and buyers, canceled fees it earned, and directed buyers not to consummate the sale of the disputed item. 600 F.3d at 106. In contrast, here, Alibaba Defendants merely argue that their standard takedown system is sufficient, and regardless, as alleged in the FAC, Alibaba Defendants did not, in fact, take any of the same actions that eBay did in *Tiffany II*.

on the willful blindness standard, explaining that:

> a defendant may be held liable for contributory [ ] infringement despite not knowing the identity of a specific vendor who was selling counterfeit goods, as long as the lack of knowledge was due to willful blindness. . . . [W]here a defendant knows or should know of infringement, whether that defendant may be liable for contributory infringement turns on what the defendant does next. If it undertakes bona fide efforts to root out infringement, . . . that will support a verdict finding no liability, even if the defendant was not fully successful in stopping infringement. But if the defendant decides to take no or little action, it will support a verdict finding liability.

In *Omega*, the Court concluded that the plaintiff had "introduced evidence from which a jury could find that [the defendant property owner] had a history of turning a blind eye toward counterfeiting at [the property] and that [it] had taken insufficient steps to root out the counterfeiting it knew or should have known was occurring." *Id.* at 244-45.

Here, in the face of the foregoing standard, Alibaba Defendants argue that the "Amended Complaint does not allege that Plaintiff has ever used the Alibaba Defendants' designated IP reporting channels to report infringing listings, including any listings posted by the Merchant Defendants." MTD, p. 6. Alibaba Defendants' choice to only recognize notice through their "designated IP reporting channels" alone is the perfect example of willful blindness. Further, Alibaba Defendants' inaction upon receiving Plaintiff's notice(s), *i.e.*, not recognizing an infringement identified in a TRO as a "strike", is just the sort of "turning a blind eye" that the Second Circuit found to give rise to liability. As addressed above, not only did Plaintiff identify specific Counterfeit Products and Infringing Listings, but also specific Merchant Defendants listing the Counterfeit Products on multiple occasions including (1) in Previous Actions (FAC, ¶¶ 62-63, 69-70, 71); (2) via e-mail in the April 14, 2022 Communication (FAC, ¶¶ 67-68); (3) when the Complaint in the instant action was filed; (4) when the TRO, PI Order and Permanent Injunction Order were served on the Alibaba Defendants in this action (FAC, ¶¶ 74, 77, 80-81,

194); and (5) in the Contempt Motion (FAC, ¶¶ 84-85). Alibaba Defendants were made aware that ___any___ subsequent listing by Merchant Defendants purporting to be a Squishmallows Product or using/containing any of the Squishmallows Marks or Squishmallows Works would be infringing. Yet, as alleged in the FAC, Alibaba Defendants allowed Merchant Defendants, who were known, and in some cases repeat, infringers to re-list Infringing Listings **on the same Merchant Storefront and using the Squishmallows Marks (and in some instances the same Squishmallows Works)**, thereby demonstrating, at the very least, Alibaba Defendants' decision to shield themselves from "discovering the offending listings", *i.e.*, willful blindness. *Tiffany II*, 600 F.3d at 109; *see also Omega SA v. 375 Canal, LLC*, No. 12-CV-6979, 2013 U.S. Dist. LEXIS 71473 at *4 (S.D.N.Y. May 20, 2013) (rejecting the property owner's interpretation of *Tiffany II* as requiring knowledge of **specific, identified infringers**, finding that, "[n]otice as to the sale of a particular type of good, by an (unnamed) individual, at a specific location is comparable to the 'listings' required in Tiffany").

### 3. Plaintiff Has Sufficiently Pled Alibaba Defendants' Direct Control

In *Tiffany II*, the Second Circuit looked to the Ninth Circuit's ruling in *Lockeed Martin Corp. v. Network Solutions, Inc.*, 194 F 3d. 980, 984 (9th Cir. 1999) that a service provider may be liable for contributory infringement only when it has "[d]irect control… of the instrumentality used by a third party to infringe" on the plaintiff's trademark. 600 F.3d at 104-05.

In contrast to eBay, and as alleged in great detail in the FAC, Alibaba Defendants are "leaders in China's e-commerce and digital retail market" (*see* FAC, ¶ 31). And, unlike eBay, Alibaba Defendants offer an array of marketing, advertising, logistics, shipping, payment processing, fulfillment and other essential services, without which their Merchant Defendants would not be able to sell their Counterfeit Products. *See* FAC, ¶¶ 91-98, 103, 108. Merchant Defendants "rely on [the Alibaba Group's] platform for a range of essential support services to

operate their businesses…[including] [w]be based and mobile interfaces to manage listings, orders and customer relationships as well as cloud computing services for their enterprise resource planning…and client relationship management…" FAC, ¶ 91. Alibaba Defendants additionally provide services, including data analytics to help anticipate buyer needs and tailor product offerings (FAC, ¶ 92), P4P marketing where merchants can bid for keywords, including those comprised of the Squishmallows Marks, on the Alibaba Websites (FAC, ¶¶ 94, 108), Gold Supplier premium membership services that allow merchants to avail themselves of Alibaba Defendants' value-added services, such as managing product listings, facilitating transaction processes, trade assurance and fulfillment services (FAC, ¶ 97). Alibaba Defendants also promote Merchant Defendants' Counterfeit Products via daily promotional emails (FAC, ¶ 124). Beyond providing the aforementioned services to Merchant Defendants, Alibaba Defendants promote their merchants' Infringing Listings by bidding themselves bidding on and/or purchasing keywords on Google.com using Plaintiff's Squishmallows Marks. FAC, ¶¶ 112-123. The fact that all of these services are offered to all merchants on the Alibaba Platforms, as the Alibaba Defendants contend, is of no consequence, as without Alibaba Defendants' provision of such services, the Merchant Defendants would be unable to sell Counterfeit Products via the Alibaba Platforms. Ultimately, for purposes of the MTD, the FAC unequivocally alleges that Alibaba Defendants offer, and more importantly, control, an array of marketing, advertising, logistics, shipping, payment processing, fulfillment and other essential services, without which their Merchant Defendants would not be able to sell their Counterfeit Products.

In *Spy Optic*, a case against Alibaba Platforms containing substantially similar facts, the court found that because, "[p]laintiff claims that Defendants knowingly allowed the infringing seller to continue listing counterfeit products and that Defendant controlled the platform that the

seller used to infringe Plaintiff's trademark, Plaintiff sufficiently states a claim for contributory trademark infringement." 163 F. Supp. 3d at 766. Likewise, here, the FAC sufficiently alleges that "[b]y providing essential services relating to the Alibaba Platforms to the Merchant Defendants and other merchants, Alibaba Defendants supplied and controlled, and continue to supply and control, the instrumentality for the Merchant Defendants' and other merchants' infringing and counterfeiting activities…" (FAC, ¶ 198; *see also* ¶¶ 90-100; 103, 108, 110-127; 195); and that Alibaba Defendants "were, and are, in the unique position of having sufficient information to identify Counterfeit Products as well as merchants, including the Merchant Defendants responsible therefor, with specificity, and to ***control and monitor the Merchant Defendants' and other merchants' listings***" FAC, ¶¶ 196, 207 (emphasis added). Similar allegations were found to be sufficient to survive a motion to dismiss in *BMW of N. Am., LLC v. S.F. Express Corp.*, Case No. 2:20-cv-01574-AB-JPRx, 2020 U.S. Dist. LEXIS 257520, *12 (C.D. Cal. Aug. 6, 2020) ("Because Plaintiffs plausibly allege that Defendant continued to supply its services to an entity that it knew or should have known was infringing the BMW Trademarks, and that Defendant had direct control and monitoring of the instrumentality used by that entity, Defendant's motion to dismiss Plaintiffs' contributory trademark infringement claim is DENIED.").

## B. PLAINTIFF HAS ADEQUATELY ALLEGED ITS CLAIMS FOR CONTRBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

1. <u>**Plaintiff Sufficiently Alleges that Alibaba Defendants Are Liable for Contributory Copyright Infringement**</u>[21]

"A defendant may be held liable for contributory copyright infringement if, 'with knowledge of the infringing activity[22],' it 'materially contributes to the infringing conduct of another.'" *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (internal quotation omitted). "Two types of activities that lead to contributory liability are: (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement.". *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 355-56 (S.D.N.Y. 2014) (internal quotation omitted). Any "authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002). "To qualify as material contribution, the defendant's support must be 'more than a mere quantitative contribution to the primary infringement ... [it] must be substantial.'" *Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 U.S. Dist. LEXIS 157035, 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) (internal quotation omitted). To show substantial participation a plaintiff must make "fact-based allegations" that a defendant "authorized, or played [a] part . . . in the alleged infringement." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 619 (S.D.N.Y. 2013).[23]

---

[21] Alibaba Defendants contend, in a passing footnote, and in an entirely self-serving manner, that they are insulated by the DMCA, should this case progress beyond the pleadings phase. MTD, p. 25, Note 7. They do not spend time analyzing how they are able to avail themselves of the DMCA. Given that Alibaba Defendants do not flesh out this argument, and appear to concede that it is inappropriate for resolution on a motion to dismiss, Plaintiff will not belabor the point herein, but submits that, as made plain by the robust allegations set forth in the FAC, Alibaba Defendants are not shielded by the DMCA's safe harbor protections, given, among other things, their failure to reasonably implement a repeat infringer policy, and clear knowledge of Merchant Defendants' infringing conduct.

[22] "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (internal quotation omitted). Accordingly, since the knowledge standard is the same here as it is for the contributory trademark infringement, as discussed in Section III(A)(2) *supra*, Plaintiff has also adequately pled sufficient knowledge for contributory copyright infringement.

[23] Alibaba Defendants' reliance on *Twitter, Inc v. Taamneh*, 598 U.S. __, 143 S. Ct. 1206 (2023) is entirely misplaced.

First, Alibaba Defendants seem to suggest that Plaintiff's allegations with respect to Alibaba Defendants' services provided to Merchant Defendants are insufficient to demonstrate material contribution merely because such services are "incidental to having storefronts on Alibaba.com and AliExpress", and not solely provided to Merchant Defendants, but others as well. MTD, pp. 23-24. Yet, there is simply no support in the law for Alibaba Defendants' erroneous conclusion. In fact, one of the cases that Alibaba Defendants cite, namely, *Capitol Recs. LLC v. ReDigi*, 934 F. Supp. 2d 640, 659 (S.D.N.Y. 2013), which notably found liability on summary judgment, supports that the array of services that Alibaba Defendants provide (and in some cases, enhanced services – e.g. "Gold" or "Verified" suppliers ), and continued to provide, to Merchant Defendants whose identities and infringing activities were repeatedly made known to Alibaba Defendants, can give rise to contributory liability. Like ReDigi's services, Alibaba Defendants' services "[were] the hub and heart of [Merchant Defendants'] infringing activity". *Capitol Recs.*, 934 F. Supp. 2d at 659.

Moreover, in the FAC, Plaintiff alleges that the "Verified Supplier" designation "is meant to create more trust amongst buyers", "allows these suppliers to become 4 of 5 star suppliers and receive a traffic boost on featured products for 6 months" and "receive 60 showcase spots to boost product listings in the search results". FAC, ¶ 103. With respect to "Gold Suppliers", in the FAC, Plaintiff alleges that they "are provided with comprehensive ways to promote their products, maximizing product exposure and increasing return-on-investment," "may purchase additional value-added services to manage product listings and facilitate transaction processes, such as upgraded storefront management tools, CRM SaaS services, P4P marketing services, trade

---

*See* MTD., p. 25. *Twitter* is based on the interpretation of the term "knowing" in the Anti-Terrorism Act, 18 U.S.C. § 2222, and concerns an entirely distinguishable internet platform, Twitter.com, which merely provides "communication services".

assurance and fulfillment services, mainly including logistics and custom clearing services," and "are provided with services including connect[ing] Chinese and overseas suppliers to overseas wholesale buyers, who are typically trade agents, wholesalers, retailers, manufacturers and SMEs engaged in the import and export business, and provides sourcing, online transaction, digital marketing, digital supply chain fulfillment and financial services to them" FAC, ¶¶ 96-98. Regardless of whether such "arm's-length services" are offered to all merchants on the Alibaba Platforms or whether Merchant Defendants paid to opt-in and/or for such designations, the FAC clearly alleges that Alibaba Defendants *continued* to highlight and give preferential treatment and placement to Merchant Defendants, their Infringing Listings and Counterfeit Products through these programs, and promoted the sale of known Merchant Defendants' Counterfeit Products, despite having specific knowledge of their infringing activities. FAC, ¶¶ 99, 101, 106, 108, 110, 124-126. Even more compelling is the fact that Alibaba Defendants are continuing to ignore the counterfeiting activities of these "Verified Suppliers" and "Gold Suppliers" in favor of enjoying the financial benefits of their membership in these programs. *See, e.g.*, FAC, ¶ 99, 106, 110.

Conveniently, Alibaba Defendants also ignore the many allegations of the FAC regarding Alibaba Defendants' own engagement in the advertising of the Merchant Defendant's Counterfeit Products and/or direction of customers to Merchant Defendants' storefronts to purchase Counterfeit Products, despite having knowledge that such Merchant Defendants have infringed the Squishmallows Marks and the Squishmallows Works, including by: (1) featuring Merchant Defendants' Counterfeit Products on the Alibaba.com homepage (FAC, ¶¶ 100-101); (2) promoting Merchant Defendants' Counterfeit Products through targeted and/or sponsored advertisements on Alibaba.com and Aliexpress.com (FAC, ¶ 124); and/or (3) themselves purchasing the Squishmallows Marks as keywords on Google, thereby directing the purchasing

public to Merchant Defendants' Infringing Listings and Counterfeit Products (FAC, ¶¶ 112-124).[24]
*See Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 384 (S.D.N.Y. 2016) (*Faulkner*, 211
F. Supp. 2d at 473-74) ("[a]dvertising or otherwise promoting an infringing product or service may
be sufficient to satisfy the material contribution prong" of a contributory infringement claim.).

    In light of the above, Alibaba Defendants' reliance on *Business Casual Hldgs., LLC v.
YouTube, LLC*, 21-cv-3610 (JGK), 2022 WL 17177970 (S.D.N.Y. Nov. 22, 2022), affirmed by
*Bus. Casual Holdings, LLC v. YouTube, LLC*, 2023 U.S. App. LEXIS 27511 (2d Cir. N.Y., Oct.
17, 2023) is misguided. In *Business Casual Hldgs.*, the Court found the plaintiff had failed to state
a claim for contributory and vicarious copyright infringement because YouTube promptly and
permanently removed the infringing videos from its platform, thereby precluding the inference
that it acted in concert with the defendant. The Second Circuit recently affirmed said decision, and
in doing so, partially premised its decision on the fact that there was not a "single allegation in the
amended complaint that YouTube had any knowledge of TV-Novosti's use of the three allegedly
infringing videos until YouTube received Business Casual's notifications of claimed infringement,
commonly known as 'takedown notices' under the DMCA",[25] and once the infringing content was
known, it remained unavailable. *Bus. Casual Holdings, LLC*, 2023 U.S. App. LEXIS 27511, *4-
5. Distinguishably, here, as already noted herein, the FAC is replete with allegations regarding
Alibaba Defendants' knowledge of the Merchant Defendants' *continued* infringing conduct, as
well as not only their failure to stop it, but also their promotion thereof. *See, e.g.*, FAC ¶¶ 65-72,
83, 86-90. Further, unlike in *Bus. Casual Holdings, LLC*, the infringing conduct has continued.

---

[24] Such statements are surely sufficient allegations that Alibaba Defendants "encourage" Merchant Defendants'
infringing conduct in order to survive a motion to dismiss. *See BWP Media USA, Inc.*, 69 F. Supp. 3d at 357
[25] The district court likewise noted that, unlike here, there was "no allegation that YouTube knew of the allegedly
infringing TV-Novosti videos before Business Casual lodged its DMCA takedown notices" since the defendant took
steps to evade YouTube's detection, and the videos remained down. *Business Casual Hldgs., LLC v. YouTube, LLC*,
21-cv-3610 (JGK), 2022 U.S. Dist. LEXIS 212212, at *17-18 (S.D.N.Y. Nov. 22, 2022).

While Alibaba Defendants contend that "based on Plaintiff's own allegations, 55 of the 61 Merchants Defendants appear not to have posted any infringing content during the nearly two years since the initial complaint" (MTD, p. 24), they thereby concede that, per the allegations of the FAC, six (6) Merchants Defendants have in fact re-posted infringing content.[26] As already noted *supra* (Note 17), in order for Plaintiff to plead a viable claim of contributory infringement, it need not demonstrate that Alibaba Defendants are secondarily liable for the conduct of each and every Merchant Defendant.

**2. Plaintiff Sufficiently Alleges that Alibaba Defendants Are Liable for Vicarious Copyright Infringement**

"To state a claim for vicarious infringement, a plaintiff need only allege that a defendant has declined to exercise the right and ability to supervise or control the infringing activity and enjoys a direct financial benefit from the infringing activity." *Rams*, 202 F. Supp. 3d at 385 (internal citation omitted).

In the FAC, Plaintiff alleges that Alibaba.com and AliExpress.com are "are owned, controlled and operated by Alibaba.com Singapore and AliExpress E-Commerce, respectively". FAC, ¶ 30. Plaintiff further alleges that "the Alibaba Defendants had the legal right and ability to control and supervise the Merchant Defendants' and other merchants' unlawful and infringing activities occurring on the Alibaba Platforms" (FAC, ¶ 215); and "[d]espite having such a right and ability to control and supervise Merchant Defendants' and other merchants' infringing activities occurring on the Alibaba Platforms, and/or committed with the aid of the Alibaba Defendants' essential services, the Alibaba Defendants either refused and/or failed to exercise their right and ability to stop or limit Merchant Defendants' and other merchants' unlawful infringing

---

[26] Contrary to what Alibaba Defendants contend, Plaintiff does not seek to transform the Alibaba Defendants' failure to comply with the DMCA's safe harbor provisions into an independent cause of action (MTD, pp. 24-25), but instead, Alibaba Defendants' failure to appropriately take action against known, repeat offenders, demonstrates, at the very least, that Alibaba Defendants should have objectively known of such offenders' direct infringement.

activities, and as a direct and proximate result of Alibaba Defendants' failure to do the same, Merchant Defendants and other merchants are continuing to infringe Plaintiff's Squishmallows Works." FAC, ¶ 217. Moreover, as fully fleshed out in Sections III(A)(3), in the FAC alleges that Alibaba Defendants offer an array of marketing, advertising, logistics, shipping, payment processing, fulfillment and other essential services, without which the Merchant Defendants would not be able to sell their Counterfeit Products. *See generally* FAC, ¶¶ 91-94, 97-98, 103, 108, 110; *see also Arista*, 784 F. Supp. 2d at 435 (finding right to supervise where P2P file sharing system could filter content and regulate users and rejecting the argument that because the system was capable of non-infringing uses vicarious liability must fail on a motion for summary judgment).

While Alibaba Defendants attempt to distinguish cases such as *BWP Media USA, Inc.,* 69 F. Supp. 3d at 357 on the basis that "the mere ability to block infringers—a standard capability for any e-marketplace—is just evidence, and by no means dispositive, of the ability to supervise" (MTD. p. 28, FN. 9), courts systematically have found that, "a defendant's 'ability to block infringers' access to a particular environment for any reason' constitutes proof of its right and ability to supervise and control the infringing activities." *BWP Media USA, Inc*, 69 F. Supp. 3d at 357 (quoting *Arista Records, Inc. v. MP3Board, Inc.,* 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165, at *33-34 (S.D.N.Y. Aug. 28, 2002) (finding that "[t]he facts have shown that MP3Board had the right and ability to police those who posted links to the site, as well as the ability to delete the links themselves from being displayed to users") (collecting cases)).

For example, in *BWP*, the Court found the allegations sufficient to survive a motion to dismiss where the complaint alleged that defendants maintained the right of full control over the websites, had sole discretion to refuse or remove content on the websites, and possessed simple measures to prevent infringement, but failed to do so. Here, Plaintiff alleges in the FAC, and the

MTD confirms, that Alibaba Defendants had the ability to remove Infringing Listings, cherry-picked which Infringing Listings to remove in their discretion, despite numerous court orders preventing them from aiding and abetting Merchant Defendants from violating the same by continuing to offer for sale and/or sell Counterfeit Products (FAC, ¶¶ 73-90; MTD, pp. 10-11), and had the ability to remove sellers that violated their three-strike policies, but chose not to remove certain sellers that were reported to them on three or more occasions (FAC, ¶¶ 66-72, 125, 193).

Alibaba Defendants also claim that the "right and ability to control" prong "typically examines whether the defendant has a sufficiently strong relationship with a direct infringer" (MTD. p. 28). In support of that proposition, Alibaba Defendants cite to *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) where the direct infringer was defendant's licensee, and vicarious infringement was found. *Shapiro* is not necessarily outcome determinative here, given that, as the Second Circuit acknowledged in its opinion, the analysis of the right and ability to control hinges on the specific factual circumstances. Nevertheless, the rationale of *Shapiro* is equally applicable here, as the Court found that finding vicarious liability under those circumstances, like here, encouraged the vicarious infringer, with the power to police, to do so, "thus placing responsibility where it can and should be effectively exercised". *Id.* at 308.[27]

Moreover, Alibaba Defendants' suggestion that the allegations regarding their contributory and vicarious liability are "inconsistent" with the allegations of Merchant Defendants' direct infringement is ridiculous (MTD, p. 30), since it is well-settled law that there cannot be a finding

---

[27] The Second Circuit also noted that "[e]ven if a fairly constant system of surveillance is thought too burdensome, [the contributory infringer] is in the position to safeguard itself in a less arduous manner against liability resulting from the conduct of its concessionaires. It has in fact done so, by incorporating a save-harmless provision in its licensing agreements". *Id.* at 309.

of contributory or vicarious copyright infringement without a finding of direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

With respect to the financial benefit element of vicarious infringement, "[Plaintiff] must allege a 'causal relationship between the infringing activity and any financial benefit the defendant reaps,' but the '***financial benefit need not be tied directly to sales of the infringing goods***." *BWP Media USA, Inc.*, 69 F. Supp. 3d at 358 (emphasis added) (internal quotations and citations omitted). Alibaba Defendants' position that Plaintiff only made a single conclusory allegation with respect to this prong (MTD., p. 31) is unequivocally negated by the allegations set forth in the FAC (*see, e.g.,* ¶¶ 93-97). Moreover, Alibaba Defendants' claim that Plaintiff's reliance on the AGHAR is insufficient because, "[t]he report…says nothing about commissions received from ***Alibaba.com*** transactions" (MTD p. 31, emphasis in original), ignores the fact that, "[t]he financial benefit need not be tied directly to sales of the infringing goods, nor must it be substantial" *Rams*, 202 F. Supp. 3d at 385  (internal quotation marks and citations omitted).[28] The causal relationship between the infringing activity and any financial benefit is established when the infringing material acts as a draw to attract users to a defendant's service. *Umg Recording v. Escape Media Grp.*, 2014 U.S. Dist. LEXIS 137491, at *64 (S.D.N.Y. Sep. 29, 2014) (internal citation omitted). Alibaba Defendants have overlooked Plaintiff's allegations that the availability of the Counterfeit Products acted as a draw to attract customers to all of the Alibaba Platforms. In the FAC, Plaintiff alleges that Plaintiff's Squishmallows Products were "Toy of the Year" (FAC, ¶¶ 15-16); Merchant Defendants were not authorized to sell Squishmallows Products (FAC, ¶¶ 29, 47), and Alibaba

---

[28] Alibaba Defendants likewise inappropriately take liberties with what this Court stated at the May 30, 2023 Hearing. This Court did not affirmatively find that "the sale of counterfeit goods generally only account for a 'fraction[al] element of [the Alibaba Defendants'] income' so 'it's hard to say Alibaba was an aider and abettor." MTD p. 32 citing Hearing Tr. 12:14-15. Rather, the Court generally stated "[i]f you are supplying a marketplace and it's a fraction element of your income, it's hard to say that Alibaba was an aider and abettor." Hearing Tr. 12:13-15.

Defendants themselves engage in the promotion of Merchant Defendants' Infringing Listings and Counterfeit Products (FAC ¶¶ 90-125). *See BWP Media USA, Inc.*, 69 F. Supp. 3d at 358 (finding allegations of the complaint sufficient to survive a motion to dismiss where the complaint "alleges that [a]lmost all, if not all, of the photographs that appear on Defendants' websites are stolen and that the websites "contain paid advertisements."). Thus, it is clear that Plaintiff has adequately pled its vicarious copyright infringement claim against both Alibaba Defendants.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Alibaba Defendants' MTD in its entirety.

Dated: October 27, 2023                    Respectfully submitted,
New York, New York

                                            BY: s/ Ashly E. Sands
                                            Ashly E. Sands (AS 7715)
                                            asands@ipcounselors.com
                                            Danielle S. Futterman (DY 4228)
                                            dfutterman@ipcounselors.com
                                            Jason M. Drangel (JD 7204)
                                            jdrangel@ipcounselors.com
                                            60 East 42nd Street, Suite 2520
                                            New York, NY 10165
                                            Telephone:     (212) 292-5390
                                            Facsimile:     (212) 292-5391
                                            *Attorneys for Plaintiff*