## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>                              Plaintiff,<br><br>vs.<br><br>ALIALIALILL STORE, et al.,<br><br>                              Defendants. | Civil No. 21-cv-08434 (AKH) |

---

### ALIBABA DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
### MOTION TO DISMISS THE AMENDED COMPLAINT

---

Jared R. Friedmann
Sarah Ryu
Elizabeth McLean

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
jared.friedmann@weil.com
sarah.ryu@weil.com
elizabeth.mclean@weil.com


*Attorneys for Alibaba.com Singapore E-Commerce
Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.   Plaintiff's Contributory Trademark Infringement Claim Fails Under *Tiffany v. eBay* ........................................................................................................................... 2

        A.   Plaintiff Fails To Allege The Requisite Knowledge ............................................ 2

            1.   The *Tiffany* Knowledge Standard Is Applicable To The Alibaba Platforms ..................................................................................................... 2

            2.   Specific Knowledge Of Infringement Is Not "Imputed" By Control Over The Platform ....................................................................................... 5

            3.   Plaintiff's Allegations Of Purported Knowledge Are Insufficient ............ 6

                a)   Plaintiff Has Not Plausibly Alleged The Alibaba Defendants Have Contemporaneous Knowledge Of Specific Infringing Listings That Were Unaddressed ...................................................... 6

                b)   The Court Should Ignore Plaintiff's New And Contradictory Allegations Raised For The First Time In Its Opposition ................. 9

            4.   Plaintiff Has Not Pled Willful Blindness ................................................. 13

        B.   Plaintiff Fails To Allege Direct Control For Purposes Of Contributory Trademark Infringement ................................................................................... 14

    II.   Plaintiff's Contributory Copyright Infringement Claim Fails .................................... 15

        A.   Plaintiff Fails To Allege That The Alibaba Defendants Had The Requisite Knowledge of Infringing Content ...................................................... 15

        B.   Plaintiff Fails To Allege Material Contribution Or Substantial Participation In The Alleged Infringement ........................................................ 16

    III.   Plaintiff Fails To Plead Vicarious Copyright Liability .............................................. 19

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Recs. LLC v. Lime Group*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011).........................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................20

*Baidu, Inc. v. Register.com, Inc.*,
  760 F. Supp. 2d 312 (S.D.N.Y. 2010)...........................................................................4

*Bus. Casual Hldgs., LLC v. YouTube, LLC*,
  No. 22-3007-cv, 2023 WL 6842449 (2d Cir. Oct. 17, 2023) .................................17

*Bus. Casual Hldgs., LLC v. YouTube, LLC*,
  No. 21-cv-3610 (JGK), 2022 WL 17177970 (S.D.N.Y. Nov. 22, 2022) ...............19

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014)............................................................................21

*Capitol Recs. LLC v. ReDigi*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013)....................................................................17, 18

*Capitol Recs., LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016)............................................................................................16

*Rams v. Def Jam Recordings, Inc.*,
  202 F. Supp. 3d 376 (S.D.N.Y. 2016) ........................................................................18

*Fadem v. Ford Motor Co.*,
  352 F. Supp. 2d 501 (S.D.N.Y. 2005)...........................................................................9

*Faulkner v. Nat'l Geographic Soc'y*,
  211 F. Supp. 2d 450 (S.D.N.Y. 2002)..........................................................................16

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  206 F. Supp. 3d 869 (S.D.N.Y. 2016)...........................................................................4

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982)....................................................................................................5, 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*,
  545 U.S. 913 (2005)......................................................................................................19

*Lopez v. Bonanza.com, Inc.*,
No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019)......................3, 4, 14

*Omega SA v. 375 Canal, LLC*,
984 F.3d 244 (2d Cir. 2021).............................................................................................13, 14

*Row, Inc. v. Hotels*,
No. 15 Civ. 4419 (JFK), 2018 WL 3756456 (S.D.N.Y. 2018).................................................4

*Sellify Inc. v. Amazon.com, Inc.*,
No. 09 Civ. 10268 (JSR), 2010 WL 4455830 (S.D.N.Y. Nov. 4, 2010) ...................................3

*Slep-Tone Entertainment Corporation v. Golf 600 Inc.*,
193 F. Supp. 3d 292 (S.D.N.Y. 2016) ......................................................................................7

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
163 F. Supp. 3d 755 (C.D. Cal. 2015) ......................................................................................8

*Spy Phone Labs LLC v. Google Inc.*,
No. 15-cv-03756-KAW, 2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ...................................8

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) ............................................................................... *passim*

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 463 (S.D.N.Y. 2008)..............................................................................3, 4, 5

*Worldwide Media, Inc. v. Twitter, Inc.*,
No. 17-cv-07335-VKD, 2018 WL 5304852 (N.D. Cal. 2018).................................................4

**Statutes**

17 U.S.C. § 512..................................................................................................................16

Defendants Alibaba.com Singapore E-Commerce Pte. Ltd. ("Alibaba.com Singapore") and AliExpress E-Commerce One Pte. Ltd. ("AliExpress E-Commerce One," and together, the "Alibaba Defendants") respectfully submit this reply in further support of their Motion to Dismiss claims VII (contributory trademark infringement and counterfeiting), VIII (contributory copyright infringement), and IX (vicarious copyright infringement) of Kelly Toys Holdings LLC's ("Plaintiff") Amended Complaint (the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiff's Opposition underscores its flawed theory of liability: Plaintiff contends that because the Alibaba Defendants were aware that the Merchant Defendants allegedly infringed in the past, the Alibaba Defendants have "knowledge" that all 61 Merchant Defendants will infringe in the future. And, in light of that so-called knowledge, Plaintiff claims that the Alibaba Defendants should be held secondarily liable for trademark and copyright infringement because, over a year after the initial infringements were reported to them, six of the 61 Merchant Defendants posted new (and different) allegedly infringing listings. In essence, Plaintiff claims that after being put on notice of an initial infringement by a Merchant Defendant, the Alibaba Defendants' legal responsibility did not end with just promptly removing the identified listing (which Plaintiff does not dispute the Alibaba Defendants did in every instance after learning of such listings). Instead, Plaintiff contends that after learning of the initial infringements, in order to avoid contributory and vicarious liability, the Alibaba Defendants had to either (i) terminate the Merchant Defendants' storefronts entirely (so as to ensure they could not infringe again in the future); or (ii) take on the burden to continuously and indefinitely monitor those storefronts and independently identify and remove any future infringing listings. *See* Dkt. No. 93 ("Opp.") at 10-11.

Plaintiff does not, however, plausibly allege that the Alibaba Defendants have the necessary information, technological ability, or clairvoyance to know which of the Merchant

Defendants will post infringing listings in the future, much less which future listings will infringe one of Plaintiff's 3,000 different stuffed toys.  Plaintiff's theory of liability also ignores binding Second Circuit precedent by seeking to shift the burden of policing Plaintiff's intellectual property to the Alibaba Defendants based on generalized knowledge of infringement—here, that these 61 Merchant Defendants each previously posted an allegedly infringing listing.  But under *Tiffany v. eBay,* Plaintiff must police its own intellectual property, and the Alibaba Defendants cannot be held liable for third-party infringements unless they are on notice of specific infringements and fail to remove them.

Plaintiff attempts to bolster its deficient pleading by using its Opposition brief to improperly assert a litany of new factual allegations, many of which are either inconsistent with the Amended Complaint or belied by the prior record in this case.  Plaintiff's new allegations cannot be considered on a motion to dismiss, and, in any event, only demonstrate that further amendment would be futile.

## **ARGUMENT**

I. **Plaintiff's Contributory Trademark Infringement Claim Fails Under *Tiffany v. eBay***

A. **Plaintiff Fails To Allege The Requisite Knowledge**

1. **The *Tiffany* Knowledge Standard Is Applicable To The Alibaba Platforms**

As discussed in the Alibaba Defendants' moving brief, Plaintiff's contributory trademark and copyright infringement claims fail because Plaintiff does not allege that the Alibaba Defendants had any contemporaneous knowledge of *specific* infringing listings that they failed to address.  *See* Dkt. No. 92 ("MTD") at 14-21.[1]  Contrary to Plaintiff's assertion, this specific

---

[1] Plaintiff concedes that the knowledge standard for contributory copyright infringement is the same as for contributory trademark infringement.  *See* Opp. at 20 n.22.

knowledge requirement is not a "new heightened knowledge standard." Opp. at 8. It is binding Second Circuit law. In *Tiffany (NJ) Inc. v. eBay Inc.*, the Second Circuit unequivocally held that, "[f]or contributory trademark infringement to lie," the plaintiff must allege that the defendant service provider had "[s]ome *contemporary* knowledge of which *particular* listings are infringing or will infringe in the future," not just "a general knowledge or reason to know that its service is being used to sell counterfeit goods." 600 F.3d 93, 107 (2d Cir. 2010) (emphasis added); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 474 (S.D.N.Y. 2008), ("the law demands . . . specific knowledge as to which items are infringing and which seller is listing those items" before a service provider must take action and remove infringing content), *aff'd in relevant part* 600 F.3d 93 (2d Cir. 2010).

Plaintiff tries to evade this binding precedent claiming that the *Tiffany* decision applies only to "**online auction sites**, that exert no more control over [third-party sellers] and their infringing activities than eBay, which is essentially a passive marketplace." Opp. at 7 (emphasis in original). But *Tiffany* does not so limit its holding, instead referring to "service provider[s]" broadly. *See* 600 F.3d at 107.[2] Subsequent courts have applied *Tiffany* to cases involving all types of online service providers, most of which are not auction sites. *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *15-16 (S.D.N.Y. Sept. 30, 2019) (following *Tiffany* and dismissing claims against Microsoft, Hostway, GoDaddy, and Shopify for failure to allege specific knowledge); *Sellify Inc. v. Amazon.com, Inc.*, No. 09 Civ. 10268 (JSR), 2010 WL

---

[2] Plaintiff's emphasis on the "auction" aspect of eBay is unwarranted. As noted by the *Tiffany* district court, although "eBay is perhaps best known for auction-style listings, sellers can also choose to sell their goods through fixed price or 'Buy It Now' listings." *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 474.

4455830, at *4 (S.D.N.Y. Nov. 4, 2010) (applying *Tiffany* particularized knowledge standard to Amazon).

As for the purported distinction between eBay and the Alibaba Defendants on the basis that eBay "is essentially a passive marketplace" (Opp. at 7), the district court's decision in *Tiffany* noted that eBay not only "provid[ed] the venue" for sales on its platform, but also processed transactions through its PayPal payment service, and worked closely with sellers by offering marketing advice and data and research analytics to help increase sales. *See* 576 F. Supp. 2d at 475. eBay also provided "more assistance and benefits" to high-quantity sellers known as "PowerSellers." *Id.* at 476. Accordingly, the types of seller services provided by eBay closely align with those the Alibaba Defendants allegedly provide to third-party sellers on their platforms. *See* Am. Compl. ¶ 92 (referring to the Alibaba Defendants' "data analytic and data management capabilities"); ¶ 195 (alleging that the Alibaba Defendants offer "marketing, advertising [and] payment processing . . . services"); ¶ 103 (referring to the Alibaba.com Verified Supplier "membership tier for high-quality sellers").

Plaintiff also attempts to distinguish *Tiffany* on the basis that it was decided after a bench trial with a full factual record. *See* Opp. at 14-15. However, courts have relied on *Tiffany* at the motion to dismiss stage to dismiss contributory trademark infringement claims where, as here, plaintiffs have failed to allege any knowledge of specific infringing content. *See, e.g.*, *Lopez*, 2019 WL 5199431, at *15-16; *Row, Inc. v. Hotels*, No. 15 Civ. 4419 (JFK) 2018 WL 3756456, at *6 (S.D.N.Y. 2018); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 906-07 (S.D.N.Y. 2016); *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 321 (S.D.N.Y. 2010); *see also Worldwide Media, Inc. v. Twitter, Inc.,* No.17-cv-07335-VKD, 2018 WL 5304852, at *3 (N.D. Cal. 2018).

2.  **Specific Knowledge Of Infringement Is Not "Imputed" By Control Over The Platform**

In further resisting the specific knowledge requirement for contributory trademark infringement, Plaintiff erroneously argues that "the requisite knowledge is *imputed* to [the] Alibaba Defendants based on the near complete control that they have over the Merchant Defendants' instrumentality of the infringement." Opp. at 7 (emphasis added). The "control" Plaintiff alleges is that the "Alibaba Defendants offer an array of marketing, advertising, logistics, shipping, payment processing, fulfillment and other essential services" to the Merchant Defendants. *Id*. at 17. But Plaintiff neither alleges in its Amended Complaint nor explains in its Opposition how the provision of these services to the Merchant Defendants would give the Alibaba Defendants knowledge of which specific listings infringe Plaintiff's intellectual property.

This argument instead appears to rely on a misreading of *Tiffany*. In *Tiffany*, the question of whether eBay "exercise[d] sufficient control" over the "instrumentality" of the infringing conduct was only relevant at the district court level, where eBay had argued that the *Inwood* test for contributory trademark infringement did not apply to it "because it supplies a *service* while *Inwood* governs only manufacturers and distributors of *products*." *See Tiffany*, 600 F.3d at 105 (emphasis added).[3] In rejecting eBay's argument, the district court held that the *Inwood* test also applies to service providers who "exercise[] sufficient control over the means of the infringing conduct" (in eBay's case, its website)—but it did not find that such control, by itself, establishes contributory infringement. *See id.*; *see also Tiffany*, 576 F. Supp. 2d at 518. On appeal, eBay no longer contested that *Inwood* applied, and so the Second Circuit's decision on contributory

---

[3] The *Inwood* test states that contributory trademark infringement exists "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it ***knows or has reason to know is engaging*** in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982) (emphasis added).

trademark liability did not turn on the issue of eBay's control. *See Tiffany*, 600 F.3d 93 at 105-06. Instead, assuming that *Inwood* applied, the Second Circuit held that only *specific*—not general—knowledge satisfies the "knows or has reason to know" prong of *Inwood*. *See id.* at 107-09. Accordingly, under *Tiffany*, merely alleging control of the "instrumentality" is not enough to establish contributory trademark infringement; Plaintiff must still sufficiently allege specific knowledge that seller is engaging in infringement, which it failed to do here.

### 3. Plaintiff's Allegations Of Purported Knowledge Are Insufficient

#### a) Plaintiff Has Not Plausibly Alleged The Alibaba Defendants Have Contemporaneous Knowledge Of Specific Infringing Listings That Were Unaddressed

Beyond Plaintiff's misguided attempts to distinguish *Tiffany* and misconstrue its holding, at bottom, Plaintiff contends it has sufficiently pled that the Alibaba Defendants had knowledge of infringement because of its allegations that: (i) the Alibaba Defendants were on notice through Prior TRO Actions and communications between counsel that certain Merchant Defendants had infringed in the past (Opp. at 9); (ii) the Alibaba Defendants were on notice that the Merchant Defendants each posted an allegedly infringing listing as set forth in the TRO in this case (*id.*); and (iii) the Alibaba Defendants were told that no sales of Plaintiff's stuffed toys are authorized on the Alibaba Defendants' platforms (*id.* at 10). The Alibaba Defendants already explained at length in their moving brief why each of these allegations is insufficient to establish the requisite knowledge (*see* MTD at 16-21), but Plaintiff is apparently unable to identify anything else in the Amended Complaint to support its assertion. Rather, Plaintiff claims that even though these "notices" did not identify any specific infringing listings that the Alibaba Defendants failed to promptly remove, they collectively demonstrate that the Alibaba Defendants at least had specific knowledge of *future* infringing listings. *See* Opp. at 9. But that is plainly implausible.

First, as explained in the Alibaba Defendant's moving brief, knowledge that a Merchant Defendant previously had an infringing listing on its storefront—whether through Prior TRO Actions, communications between counsel, or the court filings in this action—does not indicate with any reliability that the Merchant Defendant will subsequently post another infringing listing in the future. *See* MTD at 17. In fact, for 55 of the 61 Merchant Defendants, Plaintiff does not allege that the Merchant Defendant posted *any* infringing listings since the ones identified in the TRO back in 2021. *See id.* And it certainly does not provide knowledge of which specific listings will infringe one of Plaintiff's 3,000 stuffed toys in the future.

To support its argument that alleging knowledge of a particular infringer (as opposed to knowledge of specific content) is sufficient, Plaintiff relies on *Slep-Tone Entertainment Corporation v. Golf 600 Inc.*, but that reliance is misplaced. *See* Opp. at 8-9. In *Slep-Tone*, a bar contracted with a karaoke company that used unlicensed karaoke tracks bearing the plaintiff's trademark. 193 F. Supp. 3d 292, 295 (S.D.N.Y. 2016). The court granted plaintiff's unopposed summary judgment motion because there was no dispute that the bar knew the karaoke company was using the unlicensed tracks at issue, the bar took no action in response to multiple warning letters from the plaintiff, and the bar continued to host karaoke events with the karaoke company, thereby "benefiting from the ongoing infringement." *Id.* at 292, 294-95, 297-98 (S.D.N.Y. 2016). Here, Plaintiff does not plausibly allege that the Alibaba Defendants had contemporaneous knowledge that any particular Merchant Defendant was again engaging in infringement, nor does Plaintiff allege that the Alibaba Defendants continued to benefit from the Merchant Defendants' infringement after receiving notice of specific infringing listings. Plaintiff does not dispute that upon learning of the infringing listings, the Alibaba Defendants promptly removed them. *See generally* Am. Complaint and Opp.; *see also* Dkt. No. 54 ("Order") at 3; Am. Compl. ¶ 85.

The out-of-Circuit *Spy Phone Labs LLC v. Google Inc.* and *Spy Optic, Inc. v. Alibaba.com, Inc.* cases are also inapposite.  In both cases, the plaintiffs alleged that they had submitted takedown notices identifying *specific content* through Google and Alibaba's designated reporting channels.  *See Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-KAW, 2016 WL 6025469, at *2 (N.D. Cal. Oct. 14, 2016); *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 761 (C.D. Cal. 2015). [4]  Here, there are no allegations that Plaintiff provided the Alibaba Defendants with notice of specific infringement that went unaddressed, which is necessary for a contributory trademark infringement claim.  *See Tiffany*, 600 F.3d at 109 ("for Tiffany to establish eBay's contributory liability, Tiffany would have to show that eBay knew or had reason to know of specific infringement *beyond those that it addressed upon learning of them*") (emphasis added) (internal quotation marks omitted).

<u>Second</u>, Plaintiff's allegation that it told the Alibaba Defendants that there are no authorized sales of Plaintiff's stuffed toys on the Alibaba Defendants' platforms (*see* Opp. at 10-11, 14) does not plausibly provide the Alibaba Defendants with a basis to know or have reason to know that any future listing purporting to offer any one of Plaintiff's 3,000 stuffed toys is infringing.  As explained in the Alibaba Defendants' moving brief (*see* MTD at 19-20), even assuming the Alibaba Defendants could identify a listing as one of Plaintiff's stuffed toys, this ignores the first sale doctrine, which permits even unauthorized resales of authentic goods.

Moreover, it is simply not plausible that the Alibaba Defendants are somehow "in the *unique* position of having sufficient information to identify [alleged] Counterfeit Products." Opp. at 19 (emphasis added) (citing Am. Compl. ¶¶ 196, 207).  As an initial matter, several of the

---

[4] *Spy Phone* is also distinguishable because it involved only one product (as opposed to 3,000) and one trademark at issue (as opposed to six trademark registrations and 136 copyright registrations at issue here).  *See Spy Phone*, 2016 WL 6025469, at *1; Am. Compl. Exs. B, D.

allegedly infringing listings identified in declarations submitted by Plaintiff's counsel in connection with the Order to Show Cause proceedings this past May, do not even include any variation of Plaintiff's registered trademarks.  *See* Dkt. No. 42-4 (Decl. of Danielle Futterman, Ex. D); Dkt. No. 52 (Decl. of Ashly Sands & Ex. B).  And, without question, Plaintiff, as the manufacturer and distributer of some 3,000 different stuffed toys (*see* Am. Compl.  ¶¶ 11, 13; Opp. at 14), is best positioned to police its own intellectual property—which is why the law requires it to do so.  *See* MTD at 15-16; *see also* McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed.) ("The law imposes on trademark owners the duty to be pro-active and to police the relevant market for infringers.").  Plaintiff's theory of liability would shift the burden to the Alibaba Defendants to monitor each of the Merchant Defendants' storefronts and somehow independently identify new infringing listings.  But the Amended Complaint does not plausibly allege that the Alibaba Defendants have the necessary information or technology to do so.

### b)  The Court Should Ignore Plaintiff's New And Contradictory Allegations Raised For The First Time In Its Opposition

In a desperate attempt to salvage its contributory infringement claims, Plaintiff claims that its allegations relating to a single Merchant Defendant, Yiwu Fuguan Household Products Co. Ltd. ("Yiwu Fuguan"), are sufficient to survive a motion to dismiss.  *See* Opp. at 11.  But, to support its claim with respect to Yiwu Fuguan, Plaintiff improperly includes a slew of new allegations— many of which are belied by the Amended Complaint or the record in this case—that this Court should ignore.  *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) (refusing to consider facts raised for the first time in an opposition and noting, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs").

Plaintiff's Opposition first identifies twelve specific allegedly infringing listings on Yiwu Fuguan's storefront that were not included in the Amended Complaint (or alleged to have been previously shared with the Alibaba Defendants). *See* Opp. at 11-12.[5] Plaintiff's Opposition then claims that it previously notified the Alibaba Defendants of Yiwu Fuguan's alleged counterfeiting activities <u>five</u> separate times (*see id.* at 12 & n.18), but that new assertion is inconsistent with Plaintiff's allegations in the Amended Complaint.

The Amended Complaint alleges that the first time Plaintiff notified the Alibaba Defendants of specific allegedly infringing listings posted by Yiwu Fuguan was in the TRO filed in this action on October 25, 2021. *See* Am. Compl. ¶¶ 73-74; Dkt No. 8-4 (Compl., Ex. D). And the only other time Plaintiff alleges that it notified the Alibaba Defendants of any other specific allegedly infringing listings on Yiwu Fuguan's storefront was in connection with the order to show cause proceedings in May 2023. *See* Dkt. No. 52); Am. Compl. ¶ 87.[6] Aside from those two instances, however, the only other notification of any kind regarding Yiwu Fuguan was a vague allegation in the Amended Complaint which merely states that, "[o]n July 10, 2023, Epstein Drangel discovered that Yiwu Fuguan is still offering Counterfeit Products for sale," but fails to identify which *specific listings* were infringing. Am. Compl. ¶ 89; *see also* MTD at 27.

Not only does Plaintiff misstate the number of times that it notified the Alibaba Defendants of specific alleged infringements on Yiwu Fuguan's storefront, its Opposition also falsely asserts (in another new allegation) that the Alibaba Defendants "never asked Plaintiff for further details or URLs for the infringing listings." Opp. at 12. But this is belied by the prior record in this case.

---

[5] Because these specific listings were not alleged in the Amended Complaint, the Court should not consider them now.

[6] As discussed above, Plaintiff does not allege that the Alibaba Defendants failed to promptly remove the specific allegedly infringing listings identified in the TRO or in connection with the Order to Show Cause proceedings. *See supra* Section I(A)(3)(a).

After receiving the draft Amended Complaint in connection with Plaintiff's motion for leave to amend, on July 10, 2023 (the same day Plaintiff alleges the infringing listings were discovered), counsel for the Alibaba Defendants wrote to Plaintiff's counsel and explicitly requested, "to the extent you are aware of Merchant Defendants who are presently selling Counterfeit Products, can you please identify those infringing listings so that Alibaba can take them down." *See* Dkt No. 71-2 at 1. But Plaintiff only provided specific listings for the first time in its Opposition brief. *See* Opp. at 12 n.18.[7]

In the Opposition, Plaintiff also claims—in yet another new allegation—that some of the 12 newly identified listings of Yiwu Fuguan are "identical" to previously identified listings. *See* Opp. at 12-13. As support, Plaintiff includes a chart comparing an image from one such "listing" allegedly discovered by Plaintiff's counsel in October 2023 (the "MTD Opposition Listing") to a "listing" that Plaintiff's counsel claims to have previously discovered during their April and May 2023 so-called investigations (which appears to be an image extracted from the listing identified in Plaintiff's order to show cause reply papers) (the "OTSC Reply Listing"). *See id.* at 13. Plaintiff's chart, however, does not reflect the listings in full, thereby concealing the fact that the two listings were *not* identical and, in fact, were quite different. As highlighted in the chart below, the product name for the MTD Opposition Listing was not only completely different from the product name for the OTSC Reply Listing, but it also did not include Plaintiff's registered trademarks or any variation thereof. In addition, the product image that Plaintiff included in its chart was not the cover image of either listing; rather, as highlighted below, the allegedly

---

[7] The listings identified in Plaintiff's Opposition have all been removed, which this Court can take judicial notice of by clicking on the links in footnote 18 of the Opposition. Before removing the twelve allegedly infringing listings, counsel for the Alibaba Defendants took screenshots of each of these listings.

overlapping image was the second image in the OTSC Reply Listing and the *sixth* image in the MTD Opposition Listing. Again, the Amended Complaint contains no allegations demonstrating that the Alibaba Defendants have either the technological or practical ability to identify a future infringing listing that does not use Plaintiff's trademarks and contains multiple listing images.[8]



[8] Plaintiff also purports to defend its use of the term "relisting" by citing to its glossary definitions in the Amended Complaint. *See* Opp. at 13-14. The fact remains that Plaintiff's Amended Complaint does not allege that the Merchant Defendants "re-listed" any infringing listings that the Alibaba Defendants removed from their platforms—Plaintiff has only alleged subsequent, and in most cases markedly different, listings. *See* MTD at 10-12.

### 4. Plaintiff Has Not Pled Willful Blindness

Plaintiff's novel theory of willful blindness does not remedy its failure to allege specific knowledge of infringement.  To establish willful blindness, Plaintiff would have to allege that Alibaba "intentionally shielded itself from discovering . . . offending listings," *Tiffany*, 600 F.3d 93 at 109, which it has not pled.  Instead, Plaintiff claims that because the Alibaba Defendants allowed Merchant Defendants that previously posted an infringing listing to continue operating their storefronts, the Alibaba Defendants were "willfully blind" to the possibility that those Merchant Defendants might at some point in the future post another infringing listing.  *See* Opp. at 16-17.  But, as noted above, of the 61 Merchant Defendants, ***only six*** posted another allegedly infringing listing since the October 2021 TRO.  *See* Am. Compl. ¶¶ 83, 86-89.  Failing to anticipate which of the 61 Merchant Defendants would subsequently post an infringing listing is not "willful blindness," nor is the Alibaba Defendants' inability to independently and preemptively identify listings that might infringe any of Plaintiff's 3,000 different stuffed toys.

In connection with its willful blindness argument, Plaintiff's Opposition alleges (again for the first time) that the "Alibaba Defendants' choice to only recognize notice through their 'designated IP reporting channels'" and the "Alibaba Defendants' inaction upon receiving notice" amount to willful blindness.  Opp. at 16.  But these puzzling new allegations are directly belied by the record in this case.  This Court found that in response to notices provided by Plaintiff through TROs, complaints, and declarations supporting Plaintiff's motion for an order to show cause—none of which are the Alibaba Defendants' designated IP reporting channels—the Alibaba Defendants "have promptly removed all infringing listings by [Merchant] Defendants when notified by Plaintiff."  Order at 3.

Plaintiff's citation to *Omega SA v. 375 Canal, LLC* further highlights that the facts pled

here do not support a claim of willful blindness.  *See* Opp. at 15-16 (citing *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 254 (2d Cir. 2021)).  In *Omega*, the Second Circuit found that plaintiff had introduced evidence from which the jury could find that a landlord "had a history of turning a blind eye toward counterfeiting" on its premises, including the landlord's insufficient action after it learned of a specific counterfeit watch sold on its premises.  *See id.* at 254.  Here, however, Plaintiff does not allege that the Alibaba Defendants failed to address alleged infringement upon learning of a specific infringing listing.  To the contrary, the Alibaba Defendants promptly removed every infringing listing upon notice.  *See* Order at 3.  Moreover, in *Omega*, the Second Circuit also affirmed that, under *Tiffany*, "[t]here is no inherent duty to look for infringement by others on one's property."  *Omega*, 984 F.3d at 255.

### B.    Plaintiff Fails To Allege Direct Control For Purposes Of Contributory Trademark Infringement

In addition to knowledge of particular infringing content, a contributory trademark infringement claim requires Plaintiff to allege the Alibaba Defendants either "intentionally induce[d] another to infringe a trademark" or had "sufficient control over infringing activity to merit liability."  MTD at 26 (quoting *Lopez*, 2019 WL 5199431, at *14).  There is no dispute that the Amended Complaint does not plead that the Alibaba Defendants "intentionally induced" infringement.  And in support of its claims about the Alibaba Defendants' direct control, Plaintiff relies only on conclusory allegations that the Alibaba Defendants "supplied and controlled" the instrumentality for infringing activities and that they "control and monitor the Merchant Defendants' and other merchants' listings."  Opp. at 19 (citing Am. Compl. ¶¶ 196, 206, 215) (emphasis removed).  But, as discussed in the Alibaba Defendants' moving brief, these naked recitations of legal standards are insufficient to allege control.  *See* MTD at 26 (citing *Lopez*, 2019 WL 5199431, at *16).

14

The remainder of Plaintiff's argument rests on false distinctions between the platforms of the Alibaba Defendants and of eBay (discussed in Section I(A) *supra*) and cases outside this circuit with distinguishable facts.  Plaintiff cites *BMW of North America v. S. F. Express Corp.*, where the court found that the defendant interacted directly with alleged counterfeit merchandise, *i.e.*, the defendant stored, warehoused, and distributed counterfeit merchandise to consumers.  No. 20-cv-01574-AB-JPRx, 2020 WL 10486758, *1-2 (C.D. Cal Aug. 6, 2020).  But here, there are no allegations that the Alibaba Defendants exercised such direct control over the alleged counterfeit activities.  The Amended Complaint does not allege that the Alibaba Defendants ever interacted with the Merchant Defendants about the items the Merchant Defendants independently selected to list for sale nor that the Alibaba Defendants ever reviewed, stored, or shipped the items themselves.

## II.    Plaintiff's Contributory Copyright Infringement Claim Fails

### A.    Plaintiff Fails To Allege That The Alibaba Defendants Had The Requisite Knowledge of Infringing Content

In response to the Alibaba Defendants' argument that Plaintiff failed to plead the requisite knowledge for contributory copyright infringement, Plaintiff's only response is to acknowledge that "the knowledge standard is the same . . . as it is for . . . contributory trademark infringement." Opp. at 20 n.22.  Accordingly, because Plaintiff's contributory trademark infringement claim does not sufficiently allege that the Alibaba Defendants had contemporaneous knowledge of specific infringing listings that they failed to address, Plaintiff's contributory copyright infringement claim fails on that same basis.

Moreover, Plaintiff's suggestion that the requisite knowledge to establish contributory copyright infringement can arise from a single notice that a Merchant Defendant infringed on one prior occasion is inconsistent with the framework of the DMCA.  Congress enacted the DMCA to strike a "compromise, which, on the one hand augments the protections available to copyright

15

owners, and, on the other, insulates service providers from liability for infringements of which they are unaware." *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 82 (2d Cir. 2016). And a threshold requirement for the safe harbor protections of the DMCA is that the Alibaba Defendants implement a policy to terminate users who *repeatedly* infringe (*see* 17 U.S.C. § 512(i)), not users who are alleged to have infringed just one time. The DMCA also explicitly "relieves the service provider of obligation to monitor for infringements posted by users on its website." *Capitol Recs.*, 826 F.3d at 98 (citing 17 U.S.C. § 512(m)).[9] This undermines Plaintiff's theory that once a third-party merchant has infringed, the Alibaba Defendants are contributorily liable if they do not either (i) terminate the Merchant Defendants' storefronts entirely (so as to ensure they could not infringe again in the future); or (ii) take on the burden to continuously and indefinitely monitor those storefronts and independently identify and remove any future infringing listings. *See* Opp. at 10-11.

**B.    Plaintiff Fails To Allege Material Contribution Or Substantial Participation In The Alleged Infringement**

Plaintiff acknowledges that to satisfy the material contribution prong of a contributory copyright infringement claim, the Alibaba Defendants' alleged "authorization or assistance must bear a direct relationship to the infringing acts, and the [Alibaba Defendants] must have *acted in concert* with the direct infringer." Opp. at 20 (quoting *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002)) (emphasis added). As the Second Circuit's recent decision in *Business Casual Holdings v. YouTube* confirmed, the prompt removal of infringing content—as the Alibaba Defendants did upon notice of specific infringing listings—does not permit an

---

[9] As noted in the Alibaba Defendants' moving brief (*see* MTD at 25 n.7), should this matter proceed beyond the pleadings stage, the Alibaba Defendants will be covered by the safe harbor in section 512(c) of the DMCA and can therefore not be held liable for contributory or vicarious copyright infringement.

inference that a service provider acted in concert with the infringing user.  *See Bus. Casual Hldgs. v. YouTube, LLC*, No. 22-3007-cv, 2023 WL 6842449, at *2 (2d Cir. Oct. 17, 2023) (finding that YouTube's removal of infringing material "did not materially contribute to, but rather acted to remedy, [a YouTube User's] alleged infringement").

Plaintiff attempts in vain to distinguish *Business Casual Holdings* by claiming that it has adequately alleged the Merchant Defendants' continued infringing conduct after removal of prior allegedly infringing listings.  *See* Opp. at 23.  But the *Business Casual Holdings* plaintiff, too, alleged that the YouTube channel at issue featured additional infringing videos after prior videos had been removed.  *See* ECF No. 56-1 (Proposed Am. Compl.) ¶ 165, *Bus. Casual Hldgs., Inc. v. YouTube LLC*, No. 21:cv-03610-JGK (S.D.N.Y. July 12, 2022) (alleging that thousands of other infringing videos were available as of March 31, 2021, after YouTube had removed three reported infringing videos as of March 4, 2021).  The Second Circuit, however, found the allegation insufficient to support the plaintiff's contributory copyright claim because the proposed Amended Complaint failed to identify which specific videos were the "specific additional acts of infringement." *Bus. Casual Hldgs.*, 2023 WL 6842449, at *2 n.4.  Similarly, Plaintiff here alleges that certain Merchant Defendants have subsequently posted infringing content after their initial listings were removed, but Plaintiff does not allege that it provided the Alibaba Defendants with notice of those specific infringing listings—prior to identifying them in court filings—and in its Amended Complaint, Plaintiff again failed to specifically identify the additional infringing listings that it discovered.  *See* Am. Compl. ¶¶ 86-89.

Plaintiff also seeks to demonstrate material contribution by identifying an array of services offered by the Alibaba Defendants and arguing that these services are the "hub and heart" of the Merchant Defendants' infringing activity.  *See* Opp. at 23-24 (citing *Capitol Recs. LLC v. ReDigi*,

934 F. Supp. 2d 640, 659 (S.D.N.Y. 2013)).   Specifically, Plaintiff alleges that the Alibaba Defendants offer "marketing, shipping, payment processing, fulfillment . . . cloud computing . . . [and] data analytics" services.  Opp. at 17-18.  But, as discussed in the Alibaba Defendants' moving brief, Plaintiff fails to allege that any of these arm's-length services encouraged the Merchant Defendants to infringe or directly assisted the alleged infringing activity.  *See* MTD at 23.  Plaintiff seeks to compare these services to those offered by the online music platform in *ReDigi*.  But in *ReDigi*, the court found that the platform operator's "Media Manager" tool "ensured that *only* infringement occurred" on the platform.  *ReDigi*, 934 F. Supp. 2d at 659 (emphasis in original). The court further found that the platform operator was "intimately involved in examining the content that will be sold and supervising the steps involved in making the content available for sale and selling it."  *Id.*  Here, Plaintiff does not allege that the Alibaba Defendants' platforms are used *only* for infringement, nor does Plaintiff allege that the Alibaba Defendants have any control over the Merchant Defendants' storefronts or what items they choose to list for sale.

Plaintiff also cites to *Rams v. Def Jam Recordings, Inc.*, but that case is also easily distinguishable.  In *Rams*, the plaintiffs sued music recording labels and an associated recording artist for using a copyrighted photograph on marketing materials, including the artist's album cover.  202 F. Supp. 3d 376, 381 (S.D.N.Y. 2016).  Denying the artist's motion to dismiss the contributory copyright infringement claim, the court held it was "plausible" that the artist "would have reason to know of the [infringement] on his own album cover," and that it also was "reasonable to infer that to distribute and perform his music, [the artist] would actively promote his music, which includes the album whose cover is the Subject Image."  *Id.* at 383-84.

Here, there are no allegations that the keyword advertisements, emails, or other purported promotion of Counterfeit Products by the Alibaba Defendants (*see* Am. Compl. ¶¶ 108, 109, 124)

involved a deliberate choice by the Alibaba Defendants to feature infringing content or that the Alibaba Defendants even knew that those materials contained infringing content. In fact, the only allegation purporting to connect any type of advertisement to a specific Merchant Defendant is Plaintiff's allegation that its counsel received two emails promoting the same allegedly infringing listing on BBOTTRUOYS Toy Store's storefront in April 2023. *See* Am. Compl. ¶ 124. But both of these emails were sent *before* Plaintiff provided notice of the infringement to the Alibaba Defendants so that the listing could be removed. *See id.* ¶¶ 84, 124. Accordingly, at that time, the Alibaba Defendants did not yet have knowledge of the specific infringing listing, nor does Plaintiff allege that the Alibaba Defendants deliberately selected the listing to include in the email. Notably, the Amended Complaint does not allege that the Alibaba Defendants promoted or advertised *any* of the infringing listings *after* they received notice that the listing was infringing.

## III.    Plaintiff Fails To Plead Vicarious Copyright Liability

Plaintiff's Opposition makes clear that it cannot overcome the Amended Complaint's failure to allege either the "right and ability to control" prong or the "direct financial benefit" prong of a vicarious copyright liability claim—or put simply, that the Alibaba Defendants "'profit[ed] from [the] direct infringement while declining to exercise a right to stop or limit it.'" *Bus. Casual Hldgs., LLC v. YouTube, LLC*, No. 21-cv-3610 (JGK), 2022 WL 17177970, at *6 (S.D.N.Y. Nov. 22, 2022) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 930 (2005)), *aff'd* 2023 WL 6842449 (2d Cir. Oct. 17, 2023).

The recently affirmed district court's decision in *Business Casual Holdings* held that YouTube's removal of infringing content "foreclose[d] an inference that YouTube declined to exercise its right to stop [] alleged infringement." *Id.*[10]  Accordingly, because this Court already

---

[10] Plaintiff does not address this holding or the *Business Casual Holdings* decision at all in its arguments discussing its vicarious liability claim. It does, however, mention the case, including

found that the Alibaba Defendants promptly removed infringing content upon receiving notice of the specific infringements (Order at 3), and Plaintiff does not allege otherwise, this Court can dismiss the vicarious infringement claim on that basis alone.

In an effort to satisfy the "right and ability to control" prong of a vicarious copyright infringement claim, Plaintiff points to paragraphs 215 and 217 of the Amended Complaint, which state that "the Alibaba Defendants had the legal right and ability to control and supervise the Merchant Defendants' . . . unlawful and infringing activities" and "[d]espite having such a right and ability to control and supervise . . . the Alibaba Defendants either refused and/or failed to exercise their right and ability." Opp. at 24-25. However, those are merely "legal conclusion[s] couched as a factual allegation" that the Court need not accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff also invokes the same allegations concerning the "array" of platform services that the Alibaba Defendants provide to all third-party sellers on their platforms (Opp. at 25), but those allegations do not demonstrate the Alibaba Defendants' right and ability to control *infringing* activity. As discussed in the Alibaba Defendants' moving brief, there are no allegations that the Alibaba Defendants examined alleged counterfeit products, pre-screened or approved the content of listings, or were involved in buyer communications. *See* MTD at 30. Nor do the facts alleged suggest that the e-commerce platforms operated by the Alibaba Defendants are comparable to the platforms at issue in the cases Plaintiff relies on, which were found to be solely, or at least predominantly, used to sell counterfeits. *See Arista Recs. LLC v. Lime Group*, 784 F. Supp. 2d 398, 434 (S.D.N.Y. 2011) (finding the P2P file-sharing system to be used "overwhelmingly for

the fact that it was recently affirmed by the Second Circuit, in its discussion of its contributory copyright infringement claim. *See* Opp. at 23.

infringement"); *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 348 (S.D.N.Y. 2014) (finding defendants' "'entire business' [was allegedly] sustained by displaying 'stolen' or improperly licensed photographs").[11]

With respect to the "direct financial benefit" prong of a vicarious copyright liability claim, Plaintiff is unable to cure the glaring deficiency that the Amended Complaint contains *no* allegations about any financial benefit to Defendant Alibaba.com Singapore. Plaintiff claims, without any legal support, that an alleged direct financial benefit received by a different Alibaba entity, which is not alleged to be an alter ego, somehow constitutes a direct financial benefit received by Alibaba.com Singapore. *See* Opp. at 27-28. But the Court can easily reject that unsupported and meritless assertion.

Plaintiff also contends that, instead of a financial benefit arising directly from the infringing activity at issue, there need only be a general "causal relationship between the infringing activity and any financial benefit the defendant reaps." Opp. at 27 (citing *BWP Media*, 69 F. Supp. 3d at 358). But Plaintiff is unable to point to any non-conclusory allegations in the Amended Complaint of a causal relationship between the Merchant Defendants' infringement and any financial benefits reaped by *either* of the Alibaba Defendants. *See* MTD at 31-32. Instead, Plaintiff argues that the causal relationship between the infringing activity and a purported direct financial benefit "is established when the infringing material acts as a draw to attract users to a defendant's service." Opp. at 27. But the Amended Complaint does not allege that users are drawn to Alibaba.com or AliExpress because of the availability of products *that infringe* Plaintiff's intellectual property,

---

[11] Plaintiff also argues that Alibaba had the "right and ability to control" because the Alibaba "cherry-picked which Infringing Listings to remove in their discretion" (Opp. at 26), but this is yet another instance of Plaintiff adding a new allegation not found in the Amended Complaint, and, in any event, it is unclear what this is even referring to.

and Plaintiff cannot allege that now.  In short, Plaintiff's allegations fall far short of what is needed to establish a plausible vicarious copyright infringement claim.

## <u>CONCLUSION</u>

For the reasons set forth above, the Alibaba Defendants respectfully request that this Court dismiss Claims VII-IX of Plaintiff's Amended Complaint.


Dated:  New York, New York
        November 13, 2023

                                        Respectfully submitted,

                                        /s/ *Jared R. Friedmann*
                                        Jared R. Friedmann
                                        Sarah Ryu
                                        Elizabeth McLean
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        jared.friedmann@weil.com
                                        sarah.ryu@weil.com
                                        elizabeth.mclean@weil.com

                                        *Attorneys for Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.*